# EXHIBIT A

**Paul Akeo et al vs PALACE RESORTS, LLC et al**

**Local Case Number:** 2025-015958-CA-01

**State Case Number :** 132025CA01595801GE01

**Consolidated Case No. :** N/A

**Case Status :** CLOSED

**Filing Date:** 08/15/2025

**Judicial Section :** CA08 - Downtown Miami - Judge Watson, Robert

**Court Location :** 2025-015958-CA-01

**Case Type :** Libel / Slander

# RELATED CASES

| Case Number | Filing Date | Case Type |
|---|---|---|
| There is no data to show you right now. | | |

# PARTIES

| Party Description | Party Name | Attorney Information | Other Attorney |
|---|---|---|---|
| Plaintiff | Akeo, Paul | 548421 | N/A |
| Plaintiff | Akeo, Christy | 548421 | N/A |
| Defendant | PALACE RESORTS, LLC | N/A | N/A |
| Defendant | PR GLOBAL RESERVATIONS, LLC | N/A | N/A |
| Defendant | PALACE ELITE, a Mexican corporation | N/A | N/A |
| Defendant | PALACE ELITE RESORTS S.A. de C.V., a Mexican corp | N/A | N/A |
| Defendant | GIBRAN CHAPUR DAJER, JOSE | N/A | N/A |
| Defendant | PALACE COMPANY HOLDINGS | N/A | N/A |

# HEARING DETAILS

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|
| There is no data to show you right now. | | | | |

# DOCKETS

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|-----|------|-----------|--------------|------------|----------|
| 24 | 08/19/2025 | N/A | Notice of Filing: | Event | SECOND SUPPLEMENTAL EVIDENCE IN SUPPORT OF PLAINTIFFS' RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |
| 23 | 08/19/2025 | N/A | Notice of Filing: | Event | SUPPLEMENTAL EVIDENCE IN SUPPORT OF PLAINTIFFS' RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |
| 22 | 08/19/2025 | N/A | Notice of Removal to Federal Court | Judgment | N/A |
| 21 | 08/19/2025 | 34904/1906 | Notice of Removal to Federal Court | Event | N/A |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 20 | 08/19/2025 | N/A | ESummons 20 Day Issued | Event | Re: Index # 12. |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 19 | 08/19/2025 | N/A | ESummons 20 Day Issued | Event | Re: Index #11. |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 18 | 08/19/2025 | N/A | ESummons 20 Day Issued | Event | Re: Index # 10. |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 17 | 08/19/2025 | N/A | ESummons 20 Day Issued | Event | Re: Index # 9. |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 16 | 08/19/2025 | N/A | ESummons 20 Day | Event | Re: Index # 8. |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | | | Issued | | |
| N/A | 08/19/2025 | N/A | 20 Day Summons Issued | Service | N/A |
| 15 | 08/19/2025 | N/A | ESummons 20 Day Issued | Event | Re: Index # 7. |
| 13 | 08/19/2025 | N/A | Receipt: | Event | Receipt#:3270110 Amt Paid:$60.00 Name:KAUFMAN, PETER LAWRENCE 11111 SANTA MONICA BLVD STE 700 LOS ANGELES CA 90025-3341 Comment: Allocation Code Quantity Unit Amount 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 Tender Type:eFilings Tender Amt:$60.00 Receipt Date:08/19/2025 Register#:327 Cashier:EFilingUser EFiling #:229567864 |
| 14 | 08/18/2025 | N/A | Emergency Motion | Event | FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST ARBITRATION INITIATED BY DEFENDANTS |
| 12 | 08/18/2025 | N/A | (M) 20 Day (P) Summons (Sub) Received | Event | N/A |
| 11 | 08/18/2025 | N/A | (M) 20 Day (C) Summons (Sub) Received | Event | N/A |
| 10 | 08/18/2025 | N/A | (M) 20 Day (C) Summons (Sub) Received | Event | N/A |
| 9 | 08/18/2025 | N/A | (M) 20 Day (C) Summons (Sub) Received | Event | N/A |
| 8 | 08/18/2025 | N/A | (M) 20 Day (C) Summons (Sub) Received | Event | N/A |
| 6 | 08/18/2025 | N/A | Order: | Event | DENYING PLAINTIFFS EMERGENCY MOTION FOR TEMPORARY INJUNCTION |
| 3 | 08/16/2025 | N/A | Receipt: | Event | Receipt#:3290250 Amt Paid:$403.50 Name:KAUFMAN, PETER LAWRENCE 11111 SANTA MONICA BLVD STE 700 LOS ANGELES CA 90025-3341 Comment: Allocation Code Quantity Unit Amount |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | | | | | 3100-Circuit Filing Fee 1 $401.00 $401.00 3102-Multiple Defendant 1 $2.50 $2.50 Tender Type:eFilings Tender Amt:$403.50 Receipt Date:08/16/2025 Register#:329 Cashier:EFilingUser EFiling #229559379 |
| 7 | 08/15/2025 | N/A | (M) 20 Day (C) Summons (Sub) Received | Event | N/A |
| 5 | 08/15/2025 | N/A | Emergency Motion | Event | FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| 2 | 08/15/2025 | N/A | Complaint | Event | N/A |
| 1 | 08/15/2025 | N/A | Civil Cover Sheet - Claim Amount | Event | N/A |

Filing # 229559379 E-Filed 08/15/2025 04:53:21 PM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Paul Akeo, Christy Akeo</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>PALACE RESORTS, LLC, PR GLOBAL RESERVATIONS, LLC, PALACE ELITE, a Mexican corporation, PALACE ELITE RESORTS S.A. de C.V., a Mexican corp, JOSE GIBRAN CHAPUR DAJER, PALACE COMPANY HOLDINGS</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- □  $8,000 or less
- □  $8,001 -$30,000
- □  $30,001- $50,000
- □  $50,001- $75,000
- □  $75,001 -$100,000
- KI over $100,000.00

**III.    TYPE OF CASE**     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

-2-

**CIRCUIT CIVIL**

□ Condominium
□ Contracts and indebtedness
□ Eminent domain
□ Auto negligence
□ Negligence—other
    □ Business governance
    □ Business torts
    □ Environmental/Toxic tort
    □ Third party indemnification
    □ Construction defect
    □ Mass tort
    □ Negligent security
    □ Nursing home negligence
    □ Premises liability—commercial
    □ Premises liability—residential
□ Products liability
□ Real Property/Mortgage foreclosure
    □ Commercial foreclosure
    □ Homestead residential foreclosure
    □ Non-homestead residential foreclosure
    □ Other real property actions

□ Professional malpractice
    □ Malpractice—business
    □ Malpractice—medical
    □ Malpractice—other professional
Kl Other
    □ Antitrust/Trade regulation
    □ Business transactions
    □ Constitutional challenge—statute or ordinance
    □ Constitutional challenge—proposed amendment
    □ Corporate trusts
    □ Discrimination—employment or other
    □ Insurance claims
    □ Intellectual property
    K Libel/Slander
    □ Shareholder derivative action
    □ Securities litigation
    □ Trade secrets
    □ Trust litigation

**COUNTY CIVIL**

□ Small Claims up to $8,000
□ Civil
□ Real property/Mortgage foreclosure

-2-

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ⊠

**IV.   REMEDIES SOUGHT** (check all that apply):
⊠ Monetary;
⊠ Nonmonetary declaratory or injunctive relief;
⊠ Punitive

**V.   NUMBER OF CAUSES OF ACTION: [   ]**
(Specify)

   5

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐ yes
   ⊠ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ⊠ no
   ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ⊠ yes
   ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
   ☐ yes
   ⊠ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Peter Lawrence Kaufman        Fla. Bar # 548421
       Attorney or party                 (Bar # if attorney)

Peter Lawrence Kaufman              08/15/2025
 (type or print name)            Date

Filing # 229559379 E-Filed 08/15/2025 04:53:21 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.

PAUL AKEO and CHRISTY AKEO,

            Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

            Defendants.

## **COMPLAINT**

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through undersigned counsel, file this complaint against Defendants Palace Resorts, LLC, Palace Elite Resorts, PR Global Reservations, LLC, José Gibrán Chapur Dájer, Palace Elite Resorts S.A. de C.V. (collectively, "Defendants" or "Palace Resorts") and allege as follows:

### **PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs Paul and Christy Akeo are a married couple residing in the State of Michigan.

2.      Defendant PR Global Reservations LLC is a Florida limited liability company authorized to conduct business in Florida, with its headquarters in Miami-Dade County. Defendant PR Global Reservations LLC is the entity whom the Plaintiffs made reservations

related to the Palace Elite Resorts membership rights described herein.  Jurisdiction is proper over PR Global Reservations LLC because Defendant PR Global Reservations LLC (2) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State, (2) had an office in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State.

3.      Palace Elite Resorts is a Mexican company headquartered in Cancun, Mexico. Jurisdiction is proper over Palace Elite Resorts because Defendant Palace Elite Resorts (1) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State through its agents, (2) had an agency in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic marketing, promotion, and sales of Palace Elite membership rights and bookings for Palace Elite members in this State.

4.      Palace Elite Resorts S.A. de C.V. is a Mexican company headquartered in Cancun, Mexico.  Jurisdiction is proper over Palace Hotels because Defendant Palace Elite Resorts S.A. de C.V. (1) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State through its agents, (2) had an agency in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic marketing, promotion, and sales of Palace Elite membership rights and bookings for Palace Elite members in this State.

5.      Defendant José Gibrán Chapur Dájer is an individual with a permanent residence and domicile in the State of Florida.  Mr. Chapur was at all relevant times the chief executive

2

officer of Palace Resorts.  Jurisdiction is proper over Mr. Chapur because he (1) operated, conducted, engaged in, or carried on a business in this State by continuing the captivity of the Akeos in Mexican jail while located in this State as well as conducting operations of the Palace Resorts in this State, (2) had an office in this State, (3) committed a tortious acts within this State, including making or authorizing the making of defamatory statements and instituting, continuing or authorizing the institution or continuation of the malicious prosecution referenced herein while physically located in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic conduct of business in this State, ownership of property in this State, and residence and domiciliary in this State.

6.      Venue is proper in Miami-Dade County under Fla. Stat. § 47.011 because the cause of action accrued in part in this county and at least one Defendant has its principal U.S. office here.

## GENERAL ALLEGATIONS

7.      On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun.  They were then forced to spend a month in detention in a maximum security prison in Cancun Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

8.      The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown.  Palace Resorts had waged a secret lawfare campaign against the Akeos in Mexico in retaliation for the Akeos' success in persuading four separate American credit card companies that Palace Resorts breached its agreements with the Akeos.  Those credit card companies sided with the Akeos and refunded them over a hundred thousand dollars.

9.      The arrest came as a complete surprise to the Akeos.  Sitting in Mexican jail, separated from each other, under the control of a foreign and notoriously corrupt judicial system, the Akeos languished for a month without knowing if they would spend the next decade or

lifetime in Mexico prison.  Worse, the Mexican prison CERESCO is one of the most dangerous prisons in Mexico, notable for its inhumane conditions, violence, and crime.  Paul and Christy Akeo were hardworking Americans with a family.  Paul Akeo was a Navy veteran who continued his public service after discharge by working for the Michigan State Police.

10. How the Akeos landed in Mexico jail is a long, twisted saga going back nearly a decade.  The Akeos have entered into six separate membership interest agreements with Palace Resorts beginning in February 2016.  Palace Resorts expressly considered and described the Akeos as "socios mayoristas" and "membresia mayorista" – "wholesale customers" and "wholesale members."  Palace Resorts sold the Akeos membership interest agreements at exorbitant prices with huge wholesaler volumes knowing that the Akeos would resell bookings to third parties, as long as the Akeos did not do so through third-party booking agencies.  The most recent contract, for example, dated November 21, 2021 was for 1,217 bookings for $1,369,850.  Obviously, that enormous capacity of bookings – amounting to 23 years of stays at the all-inclusive hotels – far exceeds the volume of hotel bookings any single family could ever make.  And Palace Resorts was blatantly honest about the fact that the Akeos were wholesalers of bookings.  The highest level executive for Palace Elite memberships, Juan Carlos Zahoul, approved this specific contract to upgrade the membership status of "socios mayoristas Akeo" (i.e. wholesale customers Akeo) in an internal private text message.  Furthermore, Palace Resorts incentivized wholesalers like the Akeos by giving them bonus stays through its Referral Program Plus.  The more "referrals" the Akeos made of guests staying at the hotel, Palace Resorts was required to grant the Akeos "bonus stays" – even more weeks than originally granted.

11. Indeed, Palace Resorts gave the Akeos "special authorization" for addenda to the standard referral program that was required to be kept "confidential."  These "special authorizations" created incentives for the Akeos to "refer" guests in mass quantities by selling as a wholesaler those bookings.

12. When the Akeos made bookings for their referrals, the bookings were made in the name of the guests and under the guests' credit card numbers.

13.     The financial benefit to Palace Resorts was that the Akeos paid it millions of dollars in downpayments and regular monthly payments over a six year period.  In addition to that sum, the Palace Resorts reaped over $4 million in bookings that were paid to Palace Resorts directly as a result of the Akeos' membership.

14.     After selling an upgrade to the "socios mayoristas Akeo" (i.e. wholesale customers Akeo) on November 21, 2021, the Akeos did what Palace Resorts knew and encouraged them to do: continued to wholesale the bookings it paid upfront for to third parties. Palace Resorts sold the Akeos the upgrade and took their money, but then sought to renege on the agreement within months.

15.     On March 10, 2022, Palace Resorts' general counsel, Isaac Carrasco Martinez, sent the Akeos a "cease and desist letter" to the Akeos in the United States.  In the letter, Mr. Martinez claimed that the Akeos had breached their membership agreement by publishing with the intent to profit the rates and benefits offered to the Akeos.  Mr. Martinez also claimed that the Akeos used the trademarks, logos, typography, and commercial brand of the Palace Elite without authorization.  Of course, Palace Resorts not only knew, but encouraged and intended for the Akeos to use the massive volume of weeks sold to them in this way as "socios mayoristas."  Mr. Martinez ignored these facts in his letter, as well as the clear express provision in the Referral Program Plus that "rewards nights are transferable" to other people.

16.     Mr. Martinez also ignored that the Akeos had been told at multiple "sales update meetings" with Palace Resorts where employees expressly told the Akeos they can use Facebook to advertise to help offset monthly payments to Palace Resorts.  Other people were told by Palace as well that this was a way to help finance the membership.

17.     Mr. Martinez claimed to have given "formal notice" that "Palace Elite has proceeded to definitely, immediately and irrevocably terminate the following benefits: (i) Unlimited Referral Program, (ii) Regular Referral Program and; (iii) Bonus weeks, which were part of the Agreement."  In other words, Mr. Martinez unilaterally cancelled benefits that Palace Resorts gave Plaintiffs to induce them to upgrade their "wholesale" membership back in

November 2021.

18. The Akeos had outstanding reservations for their referrals at the time. The Akeos told the Palace Resorts that they had done nothing wrong to breach the contract but felt that the Palace had given them no other option but to sign a waiver of benefits. To protect those bookings for their guests, the Akeos requested that all outstanding bookings be honored.

19. On April 7, 2022, Palace Resorts promised to honor the outstanding reservations of the guests under the referral program.

20. On April 8, 2022, having extended their benefits to guests and referrals, the Akeos were coerced into signing a "waiver of benefits" that waived all unlimited referral and regular referral benefits as well as any bonus weeks. But in exchange, Palace Resorts promised to "respect and honor all Bonus Weeks that were already generated by the use of the aforementioned Referral Programs that, as of this date, have already been booked."

21. After receiving the Akeos' signature, on April 16, 2022, Palace Resorts began breaching its initial agreement and the coerced second addendum. Palace Resorts gave notice to the Akeos that it will revoke the promise to honor the outstanding bookings by unilaterally deciding to downgrade all the reservations without the benefits the Akeos had paid for and were promised.

22. Then, six weeks later, Palace Resorts simply cancelled the outstanding bookings entirely, without notice or justification.

23. On June 2, Christy called Palace Resorts to inquire and was told to contact the legal department. The legal department told Christy it could not help her and she should contact member services. Member services refused to permit Christy to speak to a supervisor and referred her back again to legal. The legal department stopped responding to Christy. On June 6, a supervisor at member services told Christy that the legal department instructed member services to cancel all rooms on June 1, including those promised to be honored.

24. On August 23, 2022, the Akeos, through counsel they had to retain, made a request for a refund from Palace Resorts given its breach of the agreement. The Akeos received

no response.

25.     After receiving no response to these inquiries, the Akeos were left with no choice but to dispute the charges with the credit card companies on the basis that the Akeos paid for a service that Palace Resorts had not provided.

26.     The Akeos disputed the charges the basis that the goods and services were not provided.  The Akeos never told the credit companies that they did not recognize the charges or that the charges were fraudulent.  Below is a screenshot of the copy of an exemplar credit card dispute form completed by the Akeos:



27.     As described above, the express basis of the dispute was that the "product or service had not been received," and the Akeos clearly stated this was not a "fraud" case, i.e. charges fraudulently made by a third party.

28.     Upon information and belief, the credit card companies provided copies of the credit card disputes made by the Akeos to Palace Resorts or otherwise notified Palace Resorts that the Akeos challenged the charges by Palace Resorts on the basis that the services were not provided as agreed-upon.  Upon information and belief, the credit card companies gave Palace Resorts an opportunity to respond to the Akeos' claims in the dispute resolution process.

29.     At no time did the Akeos ever claim that they did not recognize these charges, as

though some third-party fraudulently made the charges.  Upon information and belief, at no time did the credit card companies ever tell Palace Resorts that the basis of the Akeos' dispute of the charges was that they did not recognize the charges.

30.     Upon information and belief, Palace Resorts either provided information to the credit card companies showing that Palace Resorts had cancelled the guest reservations in violation of its agreement with the Akeos or simply did not respond to the charges as requested by the credit card companies.  Upon information and belief, in the event Palace Resorts did not respond, it was because Palace Resorts knew the basis of the disputes (i.e. services were not rendered as agreed upon) was true and had no legitimate, good-faith response.

31.     After completing the formal dispute resolution process, in or around October 2022, the credit companies sided with Akeos and refunded the Akeos $116,587.84 they previously paid Palace Resorts.  These credit card companies sided with two individuals who make personal charges over, upon information and belief, a giant, multi-billion dollar corporation that conducts hundreds of millions of dollars in credit card transactions with the credit card companies every year.

32.     Of note, these payments all relate to the November 2021 membership agreement, which is the ones that Akeos claimed Palace Resorts did not honor.  The Akeos did not dispute charges related to payments under other membership agreements.

33.     In response to the chargebacks, the Palace Resorts began a secret lawfare campaign based on defamatory and malicious accusations against the Akeos.

8

34.      In or around March 2023, Palace Resorts filed a false accusation against Plaintiffs with the public prosecutor.  Palace Resorts falsely accused the Akeos of fraud on the basis that the Plaintiffs disputed the credit card charges as "unrecognized":[1]

QUINTO: Ahora, entre el 31 de agosto y el 4 de noviembre de 2022 se nizo del conocimiento de mi representada por medio de la Institucidn Financiers American Express, la notfficacion de 13 contracargos respects 13 pages realizados a mi representada, [os cuales fueron realizados en razon de 13 disputes presentadas por el investigado Paul K Akeo ante American Express, mediante los cuales desconoce 13 pages realizados con una tarjeta de la referida institucion de la cual es titular el investigado y pagos que fueron autorizados a favor de mi represeniada. contracargos denominados en dblares amerfcanos (rnoneda de curso legal de les Estados Unides de America) que se describen a continuacibn:

35.      In the criminal complaint, Palace Resorts acknowledged the difference between civil and criminal fraud, specifically that criminal fraud requires intentional deception for the public at large.  In support of its accusation of intentional deception necessary to support the crime of fraud, Palace Resorts falsely alleged that "[O]nce the benefits were received, [Paul Akeo] later notified American Express that they were unaware of the charge and, under the pretense of non-compliance, filed a dispute with American Express."

36.      At the same time, the Palace Resorts began to slander the Akeos to guests of the hotel.  On May 17, 2023, the Akeos, through their legal representative, sent a cease and desist

---

[1] Roughly translated to: "FIFTH: Now, between August 31 and November 4, 2022, my client was notified by American Express Financial Institution of 13 chargebacks regarding payments made to my client, which were made due to disputes filed by American Express, of 13 chargebacks regarding 13 payments made to my client, which were made due to 13 disputes filed by the investigated party, Paul K Akeo, with American Express, through which he *did not recognize* 13 payments made with a card from the aforementioned institution of which he is the holder and payments that were authorized in favor of my client, chargebacks denominated in US dollars (legal tender of the United States of America) which are described below:

letter to Palace Resorts, demanding that they cease slandering the Akeos.  The Akeos explained that if Palace Resorts continues to slander the Akeos to guests, the Akeos would have no choice but to publicly defend themselves by presenting their side of the story.

37.     Palace Resorts did not respond to the letter.

38.     In or around the beginning of 2023, Christy Akeo joined a private Facebook group to learn from others what Palace Resorts was doing to others.  At the time she joined it, there were approximately 200-300 members.  The founder of the Facebook group asked Christy to become an administrator of the group.  The Facebook group rapidly attracted thousands of similar victims of the Palace Resorts' coercive and aggressive timeshare tactics.  Christy was transparent about the purpose of the group: If members were happy with their contracts, great, but if members were unhappy with their contracts, Christy's goal was to tell her side of the story and help others facing coercive and aggressive timeshare tactics by Palace Resorts.

39.     Palace Resorts was rattled by the success of Christy's Facebook group and began a lawfare campaign to retaliate against the Akeos.

40.     Upon information and belief, shortly after Christy Akeo's Facebook group and after nearly a year of making its criminal complaint, Palace Resorts  pressured the Public Prosecutor to obtain an arrest warrant for the arrest of the Akeos in retaliation for her transparency and disclosure efforts.  In fact, on the very first day that the Akeos were in Mexico court on March 5, 2025, a Palace Resorts official said to the Akeos that all the Akeos needed to do to avoid criminal charges was to remove the Facebook group Palace Resorts detested so much.

41.     On March 24, 2024, Mexican authorities issued a warrant for the arrest of the Akeos.

42.     On September 5, 2024, Palace Resorts sent a cease and desist letter from its location in Florida to the Akeos in Michigan.  In the letter to the Akeos, Palace Resorts was aware of the criminal complaint it made and the arrest warrant that was issued against the Akeos, both based on false accusations, but concealed those facts from the Akeos.  Upon information

and belief, Palace Resorts' purpose in concealing that information was to lure the Akeos down to Mexico, procure their unlawful arrest, and then extract revenge and retribution against them.

43. On March 3, 2025, Interpol published a red notice for the arrest of Paul Akeo at the request of Mexican authorities. An Interpol notice is required to summarize the facts of the case, including a succinct and clear description of the criminal activities of the wanted person, including the time and location of the alleged criminal activity. The Interpol notice repeated Palace Resorts' false accusation, namely that Akeo fraudulently cancelled American Express charges for his Palace membership as "desconocidas" (i.e. "unknown") to Akeo.

44. On March 4, 2025, as the Akeos were passing through Mexican immigration, they were apprehended by Mexico authorities and thrown in jail – all on the basis of Palace Resorts' false accusations of credit card fraud.

45. To keep them in jail, the public prosecutor then relied upon Palace Resorts' false accusations as the basis of bringing the charges against, arresting, and detaining the Akeos. Specifically, the public prosecutor based the fraud charges on Palace Resorts' false allegation that Paul Akeo disputed the charges as "desconocidas por el titular de la cuenta" (i.e. the charges were unknown to the owner of the credit card). The Public Prosecutor publicly repeated this allegation as the core basis of the criminal charges, accusing the Akeos of fraud for "stating that said charges were unknown" (which is false), or they were "unaware of the charges" (which is also false), or that the Akeos "noted that these [charges] were not recognized by the cardholder" of the American Express.

46. There was a media firestorm in the United States after news of Palace Resorts' efforts to jail the Akeos became public.

47. The Akeos languished in maximum security prison in Cancun, Mexico, separate and apart from each other, unable to speak with each other or console one another. The prison conditions were horrific. The walls were rubbled and run down, the prison was overcrowded with violent criminals, the toilets didn't flush, and the food was untouchable. Worse, they were scared, terrified, and frightened that they may never go home again. They were terrified they

would never be repatriated to the United States or see their children again.

48.     President Donald J. Trump assigned his Special Envoy for Hostage Affairs Adam Boehler to work to obtain the release of the Akeos from their unlawful detention. Congressmember Tom Barrett of Michigan flew down to Cancun to assist with the Akeos' release from Mexico prison after their deteriorating physical condition.  Congressmember Barrett spoke out publicly about the unlawful detention of the Akeos, describing the claims by Palace Resorts as a "contract dispute over a timeshare."

49.     But Palace Resorts had weaponized the Cancun judiciary against the Akeos based on a knowingly false accusation.  Place Resorts' false accusations against the Akeos were voluntarily made to the Public Prosecutor prior to the institution of any criminal charges.  At the time Palace Resorts made the false accusations, there were no judicial proceedings at all, nor was there even a criminal investigation pending against the Akeos.

50.     In response to the firestorm, Palace Resorts defamed the Akeos in media outlets throughout the United States.  Palace Resorts began to repeat its false accusation, telling American media outlets that the Akeos had "fraudulently disputed legitimate credit card charges" and had undertaken "fraudulent actions that included unjustifiably disputing credit card payments."  Palace Resorts knew full well that the credit card companies had sided with the Akeos in their dispute.  Mexican authorities also repeated the falsehood to the American media, saying that the credit card disputes were done "maliciously by [claiming] not recognizing the charges."

51.     After being jailed for 30 days in Mexico maximum security prison, the Akeos were released after dismissal of criminal charges.  As a condition to agreeing to drop its false accusations against the Akeos, Palace Resorts coerced the Akeos to enter into an invalid contract requiring the Akeos to make a payment to Palace Resorts' foundation and to keep what happened secret.  The contract is clearly invalid, as it was entered into by the Akeos – American citizens in maximum security prison in a foreign country whose native language is not English who were induced to sign this agreement to procure their freedom – under clear duress.  It is textbook

duress.

52.     Palace Resorts CEO José Gibrán Chapur Dájerwas directly responsible for all aspects of the negotiation for the release of the Akeos.  Chapur negotiated the conditions for the release of the Akeos directly with United States government officials, essentially holding the Akeos hostage in exchange for his pound of flesh.

53.     Chapur made clear to U.S. government officials that he would not consent to the release of the Akeos absent a contractual agreement with the Akeos to remove the Facebook group and posts and agree to nondisparagement and confidentiality.  Chapur also personally negotiated the amount the Akeos would be required to repay as a condition to their release from Mexico jail.  These negotiations were not in the public interest, but were corruptly solely for the direct private benefit of Palace Resorts and Chapur.

54.     After the Akeos' daughter persuaded the administrator of the Facebook group to delete it to save the Akeos, their daughter started a Facebook group called "Free the Akeos" to advocate for the release of her parents.  Over 8,000 people joined that Facebook group in 10 days.  Palace Resorts insisted as a condition to their release from Mexico maximum security prison that the Akeos' daughter permanently disband the "Free the Akeos" Facebook group.

55.     This contract between the Akeos and Palace Resorts was not a plea agreement, admission of guilt, or any plea for mercy.  The Akeos expressly maintained their innocence in the contract.  The Akeos signed the contract under duress.

56.     The contract was the product of Palace Resorts' malicious efforts to weaponize the Mexican criminal prosecution system against the Akeos – based entirely on false accusations – for retaliation and private gain.  It was a private contract signed by the Akeos under duress, literally while they were in a foreign maximum security prison, after being released of handcuffs solely to sign, by a Mexican federal police officer with a gun by his side.  Palace Resorts told the Akeos that their signature on the private contract between Palace Resorts and the Akeos was an express condition to be free from jail.

57.     After securing this private agreement in favor of a wealthy and powerful Mexican

business, the public prosecutor formally abandoned the criminal proceedings against the Akeos and the charges were dismissed.

## FIRST CLAIM FOR RELIEF

### (DEFAMATION)

58.    Plaintiffs reallege and incorporate all allegations into this claim for relief.

59.    Palace Resorts published false statements of fact concerning Plaintiffs to one or more third parties, specifically:

a.    Palace Resorts falsely accused Plaintiffs of disputing the credit card charges placed by Palace Resorts on the basis that such charges were "not recognized."

b.    Palace Resorts falsely accused Plaintiffs of disputing the credit card charges without justification or unjustifiably.

60.    These statements were published and repeated on numerous occasions, specifically:

a.    Palace Resorts' criminal complaint with the Public Prosecutor's Office

b.    Palace Resorts' witness interviews by Public Prosecutor's Office

c.    The Interpol Red Notice

d.    Press releases by the Palace Resorts distributed to the media during the unlawful detention of the Akeos

e.    Direct statements or comments to media outlets nationwide by the Palace Resorts during and subsequent to the unlawful detention of the Akeos.

61.    These statements are actually false as the Akeos never disputed credit card charges on the basis that such charges were not recognized.  In addition, the gist of the public statements made by Palace Resorts in March 2022 that the credit card disputes were without justification or unjustifiably were false as the gist of those statements conveyed a materially different meaning than the truth, specifically that the Akeos disputed the charges through legitimate means, Palace Resorts responded, and the credit card companies sided with the Akeos, determining the disputes were justified and reversing the charges.

14

62.     These statements were not privileged and were published with actual malice. Specifically, Palace Resorts maliciously made a criminal complaint with the Public Prosecutor to institute a criminal proceeding against the Akeos for the primary purpose of injuring and retaliating against the Akeos.  In doing so, Palace Resorts also acted recklessly and without regard for whether the proceeding was justified on the basis that Palace Resorts concocted and fabricated a criminal fraud claim by alleging that the Akeos disputed the credit card transactions on the basis of not recognizing the charges.  Palace Resorts knew this allegation was false based on documents it had received from the credit card companies.  Palace Resorts lacked probable cause to institute or continue the proceedings because Palace Resorts knew it had lied to the Public Prosecutor in order to initiate and continue criminal proceedings.  Palace Resorts' complaint also acknowledged that the factor that singlehandedly distinguished civil fraud from criminal fraud with respect to the Akeos' conduct was the false accusation that the Akeos did not recognize the charges, making them seem like they are con-artists and fraudsters who pose a danger to the general public.  Palace Resorts sought to retaliate against the Akeos for legitimately disputing the credit card charges placed by Palace Resorts.  The statements made to the press after the arrest of the Akeos were also made with malice and/or negligently.

63.     The false statements were defamatory per se.  The false statements also tended to subject Plaintiffs to contempt, ridicule, and disgrace and otherwise injure Plaintiffs' reputation. The defamatory statements harmed Plaintiffs' reputation and caused actual damages, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

64.     Plaintiffs also seek an award of punitive damages for the malicious defamatory statements, costs, and all other relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (MALICIOUS PROSECUTION)

65.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

66.     Palace Resorts acted with malice and without probable cause in making a criminal

15

complaint against Plaintiffs with the Public Prosecutor's office and continuing the accusations against Plaintiffs.

67.     Palace Resorts filed and continued the complaint against the Plaintiffs for the primary purpose of injuring the Plaintiffs and recklessly and without regard to whether the proceeding was justified.  In fact, Palace Resorts' accusations were demonstrably false and were made with the intent of bringing the full weight of the Mexican criminal justice system down on the Plaintiffs as punishment, retaliation, and retribution for Plaintiffs' success in their credit card disputes.

68.     At the time Palace Resorts made the criminal complaint and all relevant times it continued the criminal complaint against the Akeos, Palace Resorts did not have knowledge of facts or circumstances sufficiently strong to support a reasonable belief that the Akeos had committed a criminal offense.  In fact, Palace Resorts had to concoct and fabricate a lie about the conduct of the Akeos in order to support the claim that a crime had occurred.

69.     Palace Resorts instituted and continued the criminal proceedings against the Akeos because such criminal proceedings resulted directly and in the natural and continuous sequence from its actions, so that it reasonably can be said that, but for his or her actions, the proceeding would not have been instituted or continued.

70.     The criminal proceedings terminated in favor of Plaintiffs, as the Public Prosecutor formally abandoned the claims without a conviction or a sentence and Plaintiffs never admitted to any crime.

71.     The malicious institution and continuation of criminal proceedings directly and in natural and continuous sequence produced or contributed substantially to producing loss, injury, or damage, specifically emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

72.     Plaintiffs also seek an award of punitive damages for the malicious prosecution, costs, and all other relief the Court deems just and proper.

## THIRD CLAIM FOR RELIEF

### (ABUSE OF PROCESS)

73.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

74.     Palace Resorts made an illegal, improper, or perverted use of process against the Plaintiffs by making false accusations against the Plaintiffs in order to procure their arrest and detention and then conditioning their freedom and release from detention on Plaintiffs' agreement to contractual terms without any regard to the actual charges that benefit Palace Resorts.  For example, Palace Resorts conditioned the release and freedom of Plaintiffs from maximum security prison on Plaintiffs' agreement (1) to keep confidential the criminal proceedings against the Plaintiffs, (2) not to make or publish any statements (even ***non-***disparaging ones) regarding Palace Resorts, essentially conditioning their freedom on a complete gag order, (3) release all claims against Palace Resorts of any kind, and (4) to remove any statements Plaintiffs ever made regarding Palace Resorts from any website, webpage, blog or other website.  These agreements had absolutely nothing to do with the criminal fraud claim Palace Resorts instituted and continued against the Akeos, which rested on the false premise that the Akeos disputed credit card charges on the basis of not recognizing those charges.  The criminal complaint did not involve criminal defamation (if such a thing exists) or any civil disputes between the parties.  Palace Resorts insisted that Plaintiffs remove Facebook posts, delete a Facebook group for Palace Resort members, and remove members from the Facebook group as a condition to their freedom from maximum security prison.

75.     Palace Resorts had an ulterior motive or purpose in exercising the illegal, improper, or perverted process by seeking to institute and continue the criminal process in order to extract private gain and financial benefits and to suppress negative statements the Akeos had a right to make about the company.  The ulterior motive or purpose is clear from the fact that Palace Resorts extracted a private gain or benefit as a condition to Plaintiffs' freedom from maximum security Cancun prison.

76.     As a result of Defendant's clearly improper, illegal, and perverted actions,

17

Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

77.     Plaintiffs also seek an award of punitive damages for the malicious prosecution, costs, and all other relief the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

78.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

79.     Defendants acted extremely and outrageously in:

a.     Making false accusations against Plaintiffs as described herein to the Mexico prosecutor;

b.     Continuing to press the criminal charges against Plaintiffs knowing that the basis of the Interpol Notice and the criminal charges was false;

c.     Insisting that Plaintiffs affix their signatures on the Agreement under physical duress as a condition to their release from Mexico prison;

d.     Inflicting emotional distress on the Plaintiffs by continuing to press the criminal charges, knowing that doing so keeps Plaintiffs imprisoned, in order to extract private benefits and personal gain; and

e.     Seeking to enforce the Agreement knowing that Plaintiffs' signatures were procured by physical duress.

80.     The aforementioned conduct goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable in a civilized community.

81.     As a result of Defendants' conduct, Plaintiffs have suffered severe emotional distress, having survived 30-days in maximum security prison in a foreign country next to drug dealers and violent criminals.

82.     As a result of Defendant's clearly improper, illegal, and perverted actions, Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

83.     Plaintiffs also seek an award of punitive damages for intentional infliction of emotional distress, costs, and all other relief the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (DURESS)

84.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

85.     On April 4, 2024, Plaintiffs were imprisoned in Mexico.  An officer with a gun carried Plaintiffs to a room.  Plaintiffs understood that Palace Resorts threatened Plaintiffs with criminal prosecution unless Plaintiffs sign each and every provision of a Mutual Release and Settlement Agreement.  Neither Mexico nor any subdivision thereof was a party to this Agreement.  Neither Mexico or any subdivision thereof, or the Mexican public, received any benefit from the Agreement.  The sole party to receive a benefit from the Agreement was Palace Elite and its affiliates.

86.     Palace Resorts had wrongfully threatened Plaintiffs with continuing and maintaining their criminal prosecution based on their false accusations in order to obtain Plaintiffs' signature on the Agreement.  Palace Resorts said that unless Plaintiffs affix their signature on the Agreement, Palace Resorts will continue to pursue their false accusations against Plaintiffs.

87.     Plaintiffs were physically forced to affix their signature to the Agreement.  At the time of signing, Plaintiffs were in handcuffs and escorted in custody by an officer with a gun to a room in the prison.  Plaintiffs were told that they must sign the Agreement in order to be released from prison.  The officer took off the handcuffs to enable Plaintiffs to affix their signature. Plaintiffs were told that they would return to their Mexico jail cell if they did not sign the Agreement.  Plaintiffs affixed their signature without actually manifesting their consent out of

19

their own free will.

88.     In addition, Plaintiffs were improperly threatened by Palace Resorts in order to induce their manifestation of assent.  Palace Resorts expressly insisted that Plaintiffs sign the Agreement as a condition to their release from Mexico prison.  Plaintiffs had no reasonable alternative but to manifest their assent to each and every provision of the Agreement.  If Plaintiffs did not affix their signature on the Agreement that was put in front of Plaintiffs, Palace Resorts threatened Plaintiffs with criminal prosecution and with remaining in Mexico prison – a foreign non-English-speaking country away from their home and family.  Palace Resorts told Plaintiffs and their representatives, as well as officials of the United States, that their signature on the Agreement was a condition to being released from Mexico prison.

89.     Palace Resorts' threats to maintain the criminal prosecution unless the Akeos sign the Agreement were the misuse, for personal gain, of power intended for public benefit.

90.     At the time Plaintiffs put their signature on the Agreement, they were in Mexico jail, in custody of a Mexico officer carrying a gun on his leg, in handcuffs, and under threat of criminal prosecution.  Plaintiffs were told that if they sign the Agreement, the criminal prosecution will be dropped, they will be released from prison and be free to leave Mexico and return home.

91.     In addition, the Agreement is void for public policy on the grounds that part of the consideration given to the Akeos was the suppression of criminal prosecution.

92.     As a result of Defendant's clearly improper, illegal, and perverted actions, Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

93.     Plaintiffs also seek a declaratory judgment that the Agreement, including each and every subpart, is void ab initio as a result of duress.

94.     Plaintiffs also seek a preliminary and permanent injunction against Defendants barring Defendants from enforcing the Agreement in any respect, including the arbitration or

20

delegation clause therein.

## PRAYER FOR RELIEF

95.    WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, as follows:

  a.    Awarding compensatory damages in an amount to be proven at trial;

  b.    Awarding punitive damages for willful and malicious conduct;

  c.    Awarding Plaintiffs' costs and reasonable attorneys' fees (if permitted by statute);

  d.    Declaring the Agreement to be void and invalid;

  e.    Enjoining the Defendants from enforcing the Agreement in any respect; and

  f.    Granting all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 15, 2025

/s/ Peter Kaufman

Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

22

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 2025-015958-CA-01

PAUL AKEO and CHRISTY AKEO,

          Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

          Defendants.

## PLAINTIFF'S VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and states:

### INTRODUCTION

1. This is an action for malicious prosecution, defamation, abuse of process, intentional infliction of emotional distress, and duress.  Plaintiffs Christy and Paul Akeo are a

1

married couple.[1]  This application is an emergency because the deadline to answer the unlawful arbitration and request for emergency orders filed by the Defendants without prior notice ***today,*** August 15, 2025, is purportedly <u>August 18, 2025.</u>

2.       Plaintiffs are about to state something that is unbelievable, but indisputably true: (i) Shackled in handcuffs (removed only to sign), (ii) in the custody of a Mexico maximum security prison, (iii) having survived thirty days there next to drug dealers, cartel members, and murderers, in constant fear for their personal safety and security, (iv) next to men carrying machine guns, and (v) under threat of criminal prosecution that could lock them up in Mexico maximum security prison for up to six years, Plaintiffs were forced under duress by Defendants to affix their signature on a Mutual Release and Non-Disparagement Agreement (attached as <u>Exhibit A,</u> the "Settlement Agreement" or the "Agreement") in order to secure their release from maximum security Mexico prison.  At the time, Defendants threatened Plaintiffs with continuing a criminal prosecution based on false accusations, misusing for personal gain the power of the public prosecutor.  The Settlement Agreement contained an arbitration clause purporting to set the place of arbitration in Vancouver, Canada -  2,500 miles away from Plaintiffs' Michigan home.

3.       Plaintiffs seek immediate injunctive relief under Fla. R. Civ. P. 1.610 and Fla. Stats. § 682.03(2) (i) to restrain Defendants from seeking to enforce the Settlement Agreement (including its arbitration and delegation clauses, to the extent therein) that Defendants unlawfully

---

[1] In the complaint, Plaintiffs allege the Defendants made a blatantly false accusation with the Mexico criminal authorities in order to induce Mexico authorities to jail and confine them and thereby coerce the Akeos into giving Defendants money American credit companies refunded to the Akeos and shutting down a Facebook group regarding Defendants' business practices that the Akeos didn't even control.  They refer to the unverified complaint filed in this action for a more detailed description of the allegations regarding the long-running saga between them and Defendants.

procured through duress and (ii) to stay the pending arbitration proceeding Defendants have requested under the Agreement, to which Plaintiffs never voluntarily consented and affixed their signatures under clear physical duress, in the International Court of Arbitration ("ICA") in Vancouver, Canada.  Absent this relief, Plaintiffs will suffer irreparable injury in being forced to arbitrate in Vancouver, Canada under an agreement procured by physical duress.  Forcing Plaintiffs to do so would usurp this Court's express statutory function and role to decide: (1) whether any agreement to arbitrate exists (including a delegation clause) and (2) the validity of the foregoing.  Fla. Stat. §§ 682.02, 682.03.

4.     Plaintiffs' counsel has emailed a copy of this temporary restraining order to counsel for the Defendants in the ICA arbitration, David M. Orta (davidorta@quinnemanuel.com), Kirsten R. Nelson (kirstennelson@quinnemanuel.com), Ana Paula Luna Pino (analuna@quinnemanuel.com), Natalia Salinas (nataliasalinas@quinnemanuel.com), David M. Orta (davidorta@quinnemanuel.com), and Jaime Luis Lopez (jaimelopez@quinnemanuel.com).  Plaintiffs' counsel will attempt personal service of this Motion to the extent practicable.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the subject matter pursuant to Article V, § 5(b) of the Florida Constitution and Fla. Stat. § 26.012.

6.     Venue is proper in this Court because at least one defendant PR GLOBAL RESERVATIONS, LLC resides in this County according to its filings with the Florida Department of State.

7.     This Court has jurisdiction over the Defendants as they claim to be the primary marketer of room nights and integrated hotel services at The Palace Group hotels, both in the

3

United States and elsewhere, selling nights through various commercial segments, such as tour operators, online travel agencies, other groups, websites, and Palace Elite affiliates, through which guests can book stays at Palace entity-operated hotels. PR Global also recognizes Palace Elite memberships and sells stays at the applicable discounted rates to members.

8.      The Akeos made their booking reservations as described in their complaint at Palace Resorts through PR Global and its representatives in Miami-Dade County.

9.      The Federal Arbitration Act does not apply as the Agreement is not a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, as the Agreement was procured as a condition to the dropping of criminal prosecution and release from imprisonment, as hereinafter detailed.  *See Breazeale* v. *Victim Servs., Inc.,* 878 F.3d 759 (9th Cir. 2017) (agreements entered into in connection with a criminal prosecution do not come within the Federal Arbitration Act and then holding agreement is contrary to public policy, denying motion to compel).

## FACTS SUPPORTING RELIEF

10.      On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun.  They were then forced to spend a month in detention in a maximum security prison in Quintana Roo, Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

11.      The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown.  In reality, after a long-running dispute described in the complaint, the Akeos had disputed the charges with the credit card companies based on the fact that the charges were for "services or products not received."  The credit card companies received information from both sides and ultimately sided

4

with the Akeos, refunding them approximately $116,000.

12.     While the allegations are lengthy in the complaint, for purposes of this temporary restraining order, the relevant facts relate to the circumstances resulting in the Akeos' signing a Mutual Release and Nondisparagement Agreement.  After being arrested, the Akeos were held in maximum security Mexico prison based on the false accusations.  Christy was placed in a holding cell for two weeks with a non-flushable toilet.  Paul was placed in a jail cell with roughly 35 other guys.  On the first night, the guards had pepper sprayed the fan in Paul's room to calm down agitated prisoners.

13.     On March 5, Paul approached a corporate representative of the Palace Resorts at a court hearing to say he was sorry this went as far as it did.  The corporate representative of Palace Resorts told Paul that Palace Resorts had spoken to the American consulate and told the American consulate Palace Resorts was willing to drop the criminal charges only in exchange for a settlement agreement.  The corporate representative told the Akeos that the settlement agreement proposed by Palace Resorts was "not about the money, it was about the Facebook group."  The Akeos do not know the name of the corporative representative, but have met him before at the Palace Resorts and know what he looks like.  The corporative representative had laughed at the Akeos when the Akeos walked into the courtroom in shackles.

14.     On March 10, Christy and Paul were told by Mexico authorities that they were going to be held for at minimum six months to enable Palace Resorts to gather more information on the case and, if found guilty, up to three to six years.

15.     After two weeks in the holding cell, Christy was placed into general population at the maximum security prison in a room with five other women.  Christy learned that three of the women were there for murder and two were there for drug-related charges.

16.     Paul was transferred to different jail cells for his safety.  In the first two weeks, Paul was in the general lock up cell next to individuals who were there for drug dealing, armed robbery, and murder.  In the next cell, Paul learned that he was with individuals who had been detained for two or three years.  In the final cell he was transferred to, Paul learned that he was with individuals who were members of the Mexico cartel and had killed people, armed robbery, rape, or stealing (each of the foregoing were separate individuals).  Both Akeos feared for their personal security and safety the entire time in prison.  The Akeos understood that nobody spoke English.  Inmates had told Paul they recognized him "from the TV."  Paul was afraid the inmates knew he worked for the Michigan State Police.  During the first week, Paul pulled drywall screws from the wall and slept with them for protection.  Each night, up to ten new people would be placed in the holding cell with him.  Paul was sleeping shoulder-to-shoulder with other inmates on the floor.

17.     On Friday, April 3, at approximately 12:30 PM, guards at the prison came to the Akeos' cells and asked the Akeos to come out. The Akeos had no idea what was happening. Christy asked where she was going, but the guard did not speak English and gave no explanation. Christy was escorted down to the prison garage in shackles. Shortly after, Paul arrived, also shackled.

18.     The warden, Gustavo, then appeared and told the Akeos they were going to the courthouse for a hearing to get some "good news."

19.     The Akeos arrived at the courthouse at about 1:00 PM for what they were told was a 2:00 PM hearing. The Akeos were placed in separate, filthy basement holding cells — each in shackles — and could not see one another. There was no water in Christy's cell and the toilet, out in the open, was not working.

20. The Akeos were the only ones in these separate holding cells, and they were left there for hours. The Akeos could talk to each other by shouting back and forth, but could not see one another.

21. As time passed, the Akeos became increasingly anxious. The hearing time came and went. At around 3:00 PM, Christy asked one of the guards why they had not yet been taken to the hearing, but the guard did not speak English. None of the other guards could understand Christy either.

22. By this point, the Akeos had been waiting for over three hours — two hours past our scheduled hearing time. The repeated delays made the Akeos fear something had gone wrong and that they would not be going home that day. The Akeos kept asking for their lawyers and for Congressman Tom Barrett, the U.S. House of Representative for the Akeos' daughter's district, but no one could help the Akeos or even understand their requests. Christy was also growing more anxious because of the lack of water and the unusable toilet in the open in my cell. It was open air, so it was very hot down there.

23. Finally, around 4:00 PM, guards came to take the Akeos to the hearing. The Akeos were escorted by three armed guards carrying machine guns.

24. Inside the courtroom were: (a) U.S. Congressman Tom Barrett, (b) Kyle VonEnde, Chief of Staff to Congressman Barrett, (c) Consul General Justen Thomas, U.S. Embassy in Merida, (d) Wyatt Duea, Chief of American Citizen Services, U.S. Embassy in Merida, (e) Justen Thomas' bodyguard (name unknown), (f) the Akeos' attorney, Jaime Cherem, (g) the Akeos' attorney, Alonso Brigas, (h) Kevin (an attorney for Palace), (h) the same corporative representative who told the Akeos they needed to settle their civil claims to get out of prison, and (i) a woman from Palace, believed to be Palace lawyer Jordans Astid Lorenzo

Rodriguez, who glared at Christy throughout the proceeding.

25. There was an interpreter sent for the Akeos, but she could not speak English well enough.

26. Two or three additional armed guards with machine guns were present next to the Akeos.

27. Once seated, Congressman Barrett told the Akeos that the Akeos needed to sign paperwork to be free from prison and had no choice to sign unless they wished to remain in prison. All the Akeos wanted to do was sign and leave. The Akeos were just so scared as to what was happening and why it was delayed for so long.

28. The Akeos' lawyers also told the Akeos they needed to sign the Mutual Release and Nondisparagement Agreement in favor of Palace Elite to be released.

29. The Akeos signed the Agreement where they were told to by their lawyers. While signing the Agreement, Palace lawyer Kevin was standing over the Akeos glaring at them.

30. This was the first the Akeos ever saw the Agreement. At the time of signature, to the Akeos' understanding, Palace Resorts continued to threaten the Akeos with imprisonment (where their physical safety and security were jeopardized) and criminal prosecution if they do not sign the Agreements.

31. The Akeos left the courthouse to return to the prison. Based on statements made to the Akeos, everybody around them distrusted Palace Resorts and were afraid that the Akeos were not going to be released from prison. As a result, Congressmember Barrett, the Consular General, and members of their staff followed in their own armored vehicle the Mexican authority's annored guard vehicle transporting the Akeos back to prison. The Akeos believed their safety and security remained in jeopardy as they were told that Palace Resorts may file

8

additional criminal charges to detain them before their departure from Mexico.  This threat was so real and imminent that they were told their lawyers filed a case with a court seeking an injunction.

32.     After they were released from Mexico maximum security prison, Congressmember Barrett and the Consular General transported the  Akeos with police escorts bearing *machine guns* to the airport.  Congressmember Barrett and the Consular General told the Akeos that they were so concerned for their physical safety and security as a result of the Palace Resorts' conduct that they were going to wait until their plane actually took off.  The Akeos were also procured a private jet to prevent any opportunity for detention at a commercial airport.

33.     Throughout the signing process, the Akeos were threatened with imprisonment and criminal prosecution, scared, confused, intimidated and humiliated. The armed guards with machine guns, the Palace lawyers' stalking and assaulting behavior at the signature time, the hours of unexplained delays, and the previous thirty-days of constant fear for their personal safety and security next to drug dealers and murders added to the Akeos' anxiety.

34.     The Akeos had no choice but to sign the Agreement if they wanted to be released from prison.  The Akeos believed that if they did not sign immediately, they would remain in prison indefinitely.  The Akeos were asked for copies of what they signed, but were told their lawyers would have to send copies.  The Akeos left without any paperwork from court.

35.     On July 22, 2025, the Akeos through their counsel sent a letter to Palace Resorts' counsel indicating their intention to file suit on or before August 1, 2025 in Florida Circuit Court. The Akeos asked if Palace Resorts wished to resolve the lawsuit before suit was filed.  The Akeos asked for a response by July 28, 2025.

36.     On July 31, 2025, Palace Resorts responded by asking for "an addition five (5)

9

business days" to "conduct a thorough internal assessment and prepare a more considered response" to the Akeos' communication.  Palace Resorts, said: "We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response."  The letter was signed by Isaac Carrasco.  *(See* Exhibit B).

37.     Palace Resorts never responded to Plaintiffs' communication as it had promised in the letter.  Rather, on August 11, 2025, the International Court of Arbitration sent a Request for Arbitration dated August 6, 2025.  The Akeos feel deceived yet again by Palace Resorts, including its own general counsel, in their statements and conduct.

38.     The Akeos will be emotionally traumatized if they were forced to arbitrate their disputes with the ICA, as the Agreement was procured by threats and force at the hands of Palace Resorts.

## MEMORANDUM OF LAW

To obtain a temporary injunction, a party must prove "1) that [he] will suffer irreparable harm unless the status quo is maintained; 2) that [he] ha[s] no adequate remedy at law; 3) that [he] ha[s] a substantial likelihood of success on the merits; and 4) that a temporary injunction will serve the public interest." *See Net First Nat. Bank* v. *First Telebanc Cmp.,* 834 So. 2d 944, 949 (Fla. 4th DCA 2003).  This Court has the power to issue stays of arbitration proceedings under .  *See Premier Med. Mgmt., Ltd.* v. *Salas,* 830 So. 2d 959, 960 (Fla. Dist. Ct. App. 2002); *Metropolitan Dade Cnt. v. Resources Recovery,* 462 So.2d 570 (Fla. DCA 3 1985) (holding circuit court erred in denying motion to stay without evidentiary hearing as to the intent of the parties).

*First,* Plaintiffs will suffer irreparable harm unless the status quo is maintained.  Palace Resorts seeks to have the International Court of Arbitration (the "ICA") determine the validity of

the Agreement it procured by physical duress and duress in the form of threats.  The Florida

Arbitration Act provides, "The court shall decide whether an agreement to arbitrate exists or a

controversy is subject to an agreement to arbitrate." (Fla. Stat. Ann. § 682.02).  This is

consistent with federal law under the FAA, even though the FAA does not apply to the

Agreement.  *(Coinbase, Inc.* v. *Suski,* 602 U.S. 143, 147-49 (2024).  Here, contrary to Florida or

federal law, Palace Resorts seeks to have the ICA decide the existence and validity of the

Agreement.  To the extent that Palace Resorts claims that the Agreement provided for the

arbitrator to decide the existence or validity of the Agreement under a "delegation clause", as

hereinafter described, the existence and validity of the delegation clause itself must be decided

by the Court.  (Fla. Stat. Ann. § 682.02; *Attix* v. *Carrington Mortg. Servs., LLC,* 35 F.4th 1284

(11th Cir. 2022)).  Palace Resorts is seeking to usurp the role of this Court by having the

arbitrator decide these threshold issues in the ICA arbitration.  In addition, Plaintiffs will suffer

irreparable harm in the form of emotional distress and re-traumatization by being forced to

arbitrate in Vancouver, Canada under an agreement Defendants procured by physical duress.

  **Second,** Plaintiffs have no adequate remedy at law.  If the ICA Arbitration does usurp

this Court's role and decide these threshold issues of the existence of an arbitration agreement or

delegation provision, then Plaintiffs will have no adequate remedy at law.  Indeed, Florida law

expressly requires this Court to determine "whether an agreement to arbitrate exists or a

controversy is subject to an agreement to arbitrate." (Fla. Stat. Ann. § 682.02).

  **Third,** Plaintiffs have a substantial likelihood of success on the merits for their claims.

The Agreement - and each and every provision contained therein - was procured by physical

duress and duress in the form of threats by Palace Elite.  Florida defines duress as "a condition of

mind produced by an improper external pressure or influence that destroys the free agency of a

<div align="center">11</div>

party and causes him to do an act or make a contract not of his own volition." *City of Miami v. Kory,* 394 So.2d 494, 498 (Fla. 3d DCA 1981). "[T]here are in essence two factors which must coexist in order to establish duress one which deals with the party allegedly under duress; the other, with the party allegedly imposing it. It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." *Id.* at 497. Florida courts have held that demanding a signature on an agreement under threat of "life-altering consequences" is duress. *Ziegler v. Natera,* 279 So. 3d 1240, 1243 (Fla. Dist. Ct. App. 2019). Here, Palace Resorts demanded the Akeos sign the Agreement under threat of criminal prosecution, under threat of returning to prison to languish for six months to six years where their security and safety were imperiled, under physical threat of Palace Resorts' own attorney, without any time to review the Agreement, and without any relation to the actual criminal charges which were dismissed via a separate and distinct Reparation Agreement.

Virtually every single authority is in accord. The Restatement (Second) of Contracts has two forms of duress. The first form of duress is physical duress where the "conduct that appears to be a manifestation of asset by a party who does not intend to engage in that conduct is physically compelled by duress"; if physical duress is present, the "conduct is not effective as a manifestation of assent" and no contract is formed, period. Rest. 2d. Contracts § 174. While considered a rare form of duress, this extraordinary case fits the bill. As explained by *U.S. for Use of Trane Co. v. Bond,* it "indeed was Blackstone's view where the contract was coerced by *actual imprisonment* or fear of loss of life or limb," it is duress. *U.S. for Use of Trane Co. v. Bond,* 322 Md. 170, 178, 586 A.2d 734, 738 (1991). Here, the Agreement, its arbitration provision, and delegation clause were each coerced by actual imprisonment of the Akeos and

12

therefore void entirely.

The second form of duress is duress by threat of criminal prosecution or imprisonment. Restatement (Second) of Contracts provides, "If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175 (1981). An improper threat includes: "what is threatened is a criminal prosecution." *Id.* § 176. This type of duress happens when a party makes a threat of criminal prosecution and incarceration in order to procure the other party's assent. To be clear, because the Akeos were actually in prison and subject to criminal prosecution and their signatures to the private agreement with the Palace Resorts was a condition to their freedom, physical duress is more appropriate, rendering the contract void. But even duress by improper threat of imprisonment and prosecution applies, as the threat of ***continued*** imprisonment and prosecution remained absent the Akeos' signature on the Agreement. *See Germantown Mfg. Co. v. Rawlinson,* 341 Pa. Super. 42, 51, 491 A.2d 138, 143 (1985) ("A threat to instigate criminal prosecution has generally been regarded as an improper means of inducing the victim of the threat to make a contract. . . The impropriety lies in the use for 'private benefit ... of the criminal process of the court provided for the prosecution of the crime and the protection of the public.' On this ground, the threat is improper even if the person who makes it honestly believes that the one whose prosecution is threatened is guilty and even if in fact that person is guilty," quoting E. Allan Farnsworth as Reporter of the Restatement). In *Germantown,* the party threatened criminal prosecution to induce the other party to enter into an agreement, and the Court invalidated the agreement under duress. *Id.* at 144-45.

In perhaps one of the handful of cases dealing with arbitration agreements, in *Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park,* 15 Cal.App.4th 119 (1993), the Court held

13

that an arbitration agreement "obtained under threat of criminal prosecution and that [plaintiff] would not have signed the agreement absent such threat" is invalid. "The threat was particularly abhorrent in that it was issued by a government agent. The city attorney's threats constituted menace destructive of free consent." *Id.* at 128-29. The fact that the arbitration agreement was procured under these threats "implicate[d] strong public policy considerations." *Id.', Brown v. Best Prods., Inc.,* 479 N.E.2d 852, 855 (Ohio 1985) ("One reason releases executed between private parties which offer as consideration the suppression of criminal prosecution are void is that courts have recognized that duress is inherent in the execution of such releases.").

**Fourth,** a temporary injunction will serve the public interest. The public interest is served as the TRO upholds Florida and (if applicable) federal statutes giving this Court authority to determine the formation and validity of arbitration agreements (including delegation clauses), the TRO does not impact non-parties, the TRO preserves lawful conduct and deprives Defendants of their misuse of the criminal justice system for private gain and benefit.

## RELIEF REQUESTED

For the reasons stated above, Plaintiffs respectfully seek a temporary injunction under Rule 1.610 of the Florida Rules of Civil Procedure enjoining the Defendants from enforcing the Agreement in any respect and proceeding with the International Court of Arbitration arbitration pending a determination of the validity and existence of any arbitration agreements and a stay of the pending arbitration under Fla. Stats. § 682.03(2). The injunction "shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction." Fla. R. Civ. P. 1.610(c).

14

**VERIFICATION OF PLAINTIFFS**

Under penalties of perjury, I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.

8/15/2025

_____
Dated

*Christy Akeo*

_____
Christy Akeo

8/15/2025

_____
Dated

*Paul K. Akeo*

_____
Paul Akeo

Dated: August 15, 2025

/s/ Peter Kaufman
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

# EXHIBIT A

<u>MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT</u>

This MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT (this "Agreement") is entered into as of the'S-A day of ___April___ > 2025 (the "Effective <u>Date")</u>, by and among CHRISTY LIN AKEO and PAUL K AKEO, on one hand, and PALACE ELITE RESORTS, S.A. DE C.V. ("PALACE ELITE"), on the other hand.

WHEREAS, PALACE ELITE and CHRISTY LIN AKEO and PAUL K. AKEO have had a long-standing commercial relationship since at least February 1, 2016 pursuant to a series of contracts and ancillary agreements entered into on or about February 1, 2016, February 3, 2016, April 28, 2016, May 19, 2016, September 25, 2016, November 22, 2016, May 6, 2017, July 26, 2017, January 4, 2018, September 21, 2018, December 21, 2018, February 17, 2019, April 27, 2019, September 29, 2019, July 4, 2020, October 25, 2020, February 12, 2021, May 24, 2021, and November 21, 2021 (collectively, the "Membership <u>Agreements")</u>.

WHEREAS, PALACE ELITE has asserted that CHRISTY LIN AKEO and PAUL K. AKEO have acted wrongfully in their dealings with PALACE ELITE (the "Palace <u>Elite Claims</u> ).

WHEREAS, CHRISTY LIN AKEO and PAUL K. AKEO have asserted that **PALACE** ELITE has acted wrongfully in its dealings with CHRISTY LIN AKEO and PAUL K **AKEO (the** <u>"Akeo Claims")</u>.

WHEREAS, PALACE ELITE, CHRISTY LIN AKEO, and PAUL K. AKEO **each** agree that they have had a full, reasonable, fair, and adequate opportunity to investigate **the Palace** Elite Claims and the Akeo Claims; to consult with and seek the advice of legal counsel **of then-** choosing, in the United States and in Mexico, with respect to the Palace Elite Claims, **the Akeo** Claims, and this Agreement; and to consider and reflect on the terms and substance **of ths** Agreement.

WHEREAS, in order to avoid the hassle and expense of litigation, PALACE **ELIIE and** CHRISTY LIN AKEO and PAUL K. AKEO wish to resolve and any and all existing **or potential** disputes between PALACE ELITE, on one hand, and CHRISTY LIN AKEO and'or **PAUL K.** AKEO, on the other hand, known or unknown, whether sounding in statute, common **law, equiy,** or other source of authority, whether under the laws of Mexico or any state or other **consrinaes** jurisdiction thereof, or under the laws of the United States or any state or other **cocsruai** jurisdiction thereof, or any other jurisdiction, including but not limited to (1) the **Patece Ete** Claims and any and all claims or causes of action arising out of or related to the assertion **orjsssssi** of the Palace Elite Claims by PALACE ELITE, or by its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, **related** emkies, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, (2) the Akeo Claims and any **and all** klims or causes of action arising out of or related to the assertion or pursuit of the **Akeo Claims by** CHRISTY LIN AKEO and/or PAUL K. AKEO, or their

1

respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, (3) any and all claims or causes of action arising out of or relating to the Membership Agreements, and (4) any and all claims or causes of action arising out of or related to any acts or omissions occurring on or prior to the Effective Date of this Agreement (collectively, the "Released Claims").

1.    Mutual Releases.

  a. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, hereby forever releases CHRISTY LIN AKEO and PAUL K. AKEO, as well as their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

  b. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

  c. PAUL K. AKEO, on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

2

2.  Mutual Covenants Not to Sue. Other than the Released Claims, PALACE ELITE does not know of any claims that PALACE ELITE might have against either CHRISTY LIN AKEO or PAUL K. AKEO. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, covenants and agrees that it will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against CHRISTY LIN AKEO and PAUL K AKEO, or their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, on account of the Released Claims.

Other than the Released Claims, CHRISTY LIN AKEO does not know of any claims that CHRISTY LIN AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that she will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

Other than the Released Claims, PAUL K. AKEO does not know of any claims that PAUL K AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. PAUL K. AKEO , on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that he will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

3

3. <u>Consideration</u>

a. CHRISTY LIN AKEO and PAUL K. AKEO expressly acknowledge and agree that PALACE ELITE'S promises and covenants set forth herein, including but not limited to as set forth in Paragraphs 1 and 3, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement. .

b. PALACE ELITE expressly acknowledges and agrees that CHRISTY LIN AKEO's and PAUL K. AKEO's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement.

4. <u>Non-Disparagcment.</u>

a. CHRISTY LIN AKEO represents and warrants, on behalf of herself and her agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that she shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about PALACE ELITE or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.) (each and any of the foregoing, "Disparaging <u>Statements").</u> CHRISTY LIN AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog, and/or otherwise accessible on the internet and made by or on behalf of CHRISTY LIN AKEO, shall be removed within seven (7) days of the Effective Date, and CHRISTY LIN AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request

4

b.      PAUL K. AKEO represents and warrants, on behalf of himself and his agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that he shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any Disparaging Statements as defined in Paragraph 3(a) of this Agreement. PAUL K. AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of PAUL K. AKEO, shall be removed within seven (7) days of the Effective Date, and PAUL K. AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request.

c.      PALACE ELITE represents and warrants, on behalf of itself and its agents, representatives, ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal' representatives, and assigns, that it shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about CHRISTY LIN AKEO and PAUL K. AKEO or their agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chatrooms, etc.).

5.  Non-Inducement. From and after the Effective Date, each of CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

6.  Liquidated Damages. In the event of a breach of this Agreement, CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE agree that should any of them breach this Agreement, the breaching party shall immediately pay individually as fixed and



liquidated damages a sum of $50,000.00 U.S. Dollars per breach to the other party, as well as $1,000 U.S. Dollars per breach, per calendar day, until each and every breach is cured. Such liquidated damages in the amount of $50,000.00 U.S. Dollars are not intended to be a penalty and are solely intended to compensate the non-breaching party or parties. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

7. Injunctive Relief. In the event of a breach or a threatened breach by CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE of any provisions contained in this Agreement, any party will be entitled to seek an injunction restraining the party that has breached or is threatening a breach from such breach or threatened breach (without the necessity of proving the inadequacy as a remedy of money damages or the posting of bond, and CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE hereby waive any defense or objection to such injunctive relief (if permitted under applicable law)); provided, however, that the right to injunctive relief will not be construed as prohibiting CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE from pursuing any other available remedies, whether at law or in equity, for such breach or threatened breach.

8. Enforcement of this Agreement. Each party shall pay their own respective attorneys' fees and costs relating to this Agreement, In the event of a legal action or other proceeding arising out of an alleged breach of this Agreement or to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

9. Capacity to Execute. Each signatory to this Agreement represents and warrants that they are of appropriate legal, physical, and mental capacity, are not under duress or undue influence, has read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing, and are legally authorized to execute this Agreement. In entering into the Agreement, each party to this Agreement relies wholly upon their own judgment, belief, and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and does not rely upon any statement or representation of any other party or any other party's representatives.

10. Severability. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any tribunal may modify any invalid or unenforceable

6

provision to the maximum extent permitted by law while preserving the intended effect of such provision.

11. <u>Contract.</u>   The terms of this Agreement are contractual and the parties to this Agreement represent and warrant that they intend to be bound by them.

12. <u>Construction.</u>   Any rule of construction to the effect that ambiguities are resolved against the drafting party will not apply to the interpretation and construction of this Agreement.

13. <u>Headings-</u>  The paragraph headings in this Agreement are intended solely for reference and shall not by themselves determine the construction or interpretation of this Agreement.

14. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal law of the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules.

15. <u>Arbitration.</u>

All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules. The seat of the arbitration shall be Vancouver, Canada. The language of the arbitration shall be English. Except as may be required by law, neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. No award or order made in the arbitration shall be published.

This arbitration agreement shall be governed by the laws of the State of New York, including United States federal law as applied by United States federal courts seated in New York, New York.

16. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which will be deemed an original, and such counterparts will together constitute a single Agreement.  Faxed, e-mailed, or electronic signatures will be deemed originals.

[SIGNATURE PAGES FOLLOW]

7

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE,

_____
CHRISTY LIN AKEO

4/3/25
_____
Date

[INSERT NOTARY TEMPLATE]

8

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____
PAUL K. AKEO

4/3/25
_____
Date

[INSERT NOTARY TEMPLATE]

9

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

PALACE ELITE RESORTS, S.A. DE C.V.

By: _Jordans Astid lorenzo Rodriguez_
[INSERT NAME OF SIGNATORY]  Its:
[INSERT TITLE OF SIGNATORY]

_i 3 l io lS_

Date

[INSERT NOTARY TEMPLATE]

10

# EXHIBIT B

# THE  PALACE  COMPANY

**THEPALACECOMPANY.COM**

Mr. Jesse Creed
Panish Shea Ravipudi LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
jcre_e_d_@panish..law

Mr. John Manly
Manly, Stewart & Finaldi
19100 Von Karman Avenue, Suite 800
Irvine, California, 92612
jmanlyCcdmanlystewart.com

_via e-mail_

July 31, 2025

Dear Messrs. Creed and Manly,

I am writing on behalf of Palace Elite Resorts, S.A. de C.V. ("Palace Elite") in response to your letter dated July 22, 2025, which included a draft complaint and outlined certain claims and demands related to the Mutual Release and Non-Disparagement Agreement (the "Agreement") signed by your clients, Mr. Paul and Ms. Christy Akeo, and Palace Elite, on April 3, 2025.

Palace Elite notes that the contemplated claims in your letter appear to be in direct conflict with the terms of the Agreement between Palace Elite and Mr. Paul and Ms. Christy Akeo, which includes, in Sections 1 and 15, a mutual release of claims and a submission of any disputes related to the Agreement to arbitration.

# TH E  PALACE  COM PAN Y

**THEPALACECOMPANY.COM**

In order to conduct a thorough internal assessment and prepare a more considered response, Palace Elite respectfully requests an additionalfive (5) business days, as of the date of this letter, to respond to further your communication.

We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response. Palace Elite reserves all rights and remedies.

Sincerely,

pac   arrasco
Pala  e Elite Resorts, S.A. de C.V.

Case 1:25-cv-23733-RKA   Document 24-1   Entered on FLSD Docket 08/28/2025   Page 61 of 243

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-015958-CA-01
SECTION: CA08
JUDGE: Robert T. Watson

**Paul Akeo et al**

Plaintiff(s)

vs.

**PALACE RESORTS, LLC et al**

Defendant(s)

_____ /

### ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY INJUNCTION

Docket Index Number: **5**
Or
Efiling Number: _____ Date Filed: **08/15/2025**
Full Name of Motion: **Plaintiffs [sic] Verified Emergency Motion for ... Preliminary [sic] Injunction**

The Motion, filed on August 15 but placed in the undersigned's emergency queue only today, is DENIED for failure to comply with Florida Rule of Civil Procedure 1.610(a)(1)(B). Any renewed motion for temporary injunction must propose an amount for the bond required by Rule 1.610(b).

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 18th day of August, 2025.

f?0?54)Y595£CA-01 08-18-2025 2:31 PM

2025-015958-CA-01 08-18-2025 2:31 PM
Hon. Robert T. Watson

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2025-015958-CA-01

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Peter Lawrence Kaufman: kaufman@psblaw.com
- Peter Lawrence Kaufman: lam@psblaw.com
- Peter Kaufman: pkaufman@panish.law
- Jesse Creed: jcreed@panish.law
- John Manly: jmanly@manlystewart.com

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
| :-- | :-: | :-- |
| □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
| **DIVISION**<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)**<br><br>PALACE RESORTS, LLC, a limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'        GLOBAL RESERVATIONS, LLC, a Florida limited liability company

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

*(right margin, rotated: CLOCK IN)*

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY: _____<br>DEPUTY CLERK | DATE |
| :-- | :-- | :-- |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                    Clerk's web address: www.miamidadeclerk.qov

[x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
□ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| PLAINTIFF(S)<br>PAUL AKEO and CHRISTY AKEO | VS. DEFENDANT(S)<br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | SERVICE |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)' PALACE ELITE, a Mexican corporation_____

8400 NW 33rd Street, Suite 406, Doral, FL 33122_____

_____

_____

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421_____

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025_____

_____

_____

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23 Clerk's web address: www.miamidadeclerk.qov

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)**<br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): PALACE COMPANY HOLDINGS

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

# AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
|---|
| □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS. DEFENDANT(S)**<br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)' PALACE ELITE RESORTS S.A. de C.V., a Mexican Corporation_____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

 Km 21 Carretera Cancun Morelos, CO Mexico

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421_____

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23

Clerk's web address: www.miainidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

| [x]  IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. <br> ☐  IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||

| DIVISION <br> 0  CIVIL <br> ☐  DISTRICTS <br> ☐  OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** <br> **(a) GENERAL FORMS** | **CASE NUMBER** <br> 2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)** <br> PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)** <br> PALACE RESORTS, LLC, a limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)'  PALACE RESORTS, LLC, a limited liability company _____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421 _____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

**CLOCK IN**

within 20 days "  **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN <br> CLERK OF THE COURT AND COMPTROLLER <br> MIAMI-DADE COUNTY <br> CIRCUIT AND COUNTY COURTS | BY: _____ <br> DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23

Clerk's web address: www.miamidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

|X| iiN irit uirxuuii uuurti ur irit tLtvtixi iri juuiuiAL uirxuuTi nxiAixiu rorx iviiAivu-UAUt uuuixi i Y, t-LotxiuA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CIVIL ACTION SUMMONS (b) Form for Personal Services on a Natural Person | CASE NUMBER |
|---|---|---|---|
| 0 CIVIL ☐ DISTRICTS ☐ OTHERS | | | 2025-015958-CA-01 |

| PLAINTIFF(S) | VS | DEFENDANT(S) | CLOCK IN |
|---|---|---|---|
| PAUL AKEO and CHRISTY AKEO | | PALACE RESORTS, LLC, a limited liability company; et al. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): JOSE GIBRAN CHAPUR DAJER | Address: 8400 NW 33rd Street, Suite 100, Doral, FL 33122 |
|---|---|

<u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| [X] Dade County Courthouse (05) Room 133 73 West Flagler Street Miami, FL 33130 | |_| Joseph Caleb Center Court (20) Suite 103 5400 N.W. 22nd Avenue Miami, FL 33142 | |_I Hialeah District Court (21) Room 100 11 East 6th Street Hialeah, FL 33010 | 3 North Dade Justice Center (23) Room 100 15555 Biscayne Blvd. North Miami Beach, FL 33160 |
|---|---|---|---|
| |_| Coral Gables District Court (25) Room 100 3100 Ponce De Leon Blvd. Coral Gables, Miami, FL 33134 | |_| South Dade Justice Center (26) Room 1200 10710 SW 211 Street Miami, FL 33189 | | **SERVICE** |

| Plaintiff/Plaintiff Attorney Peter Kaufman Florida Bar No. 548421 | Address: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025 |
|---|---|

| **JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS** | DEPUTY CLERK | DATE ON: |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990 ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance, Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW f Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 34 -7174; Email ADA@Judll.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 070 Rev. 05/25

Clerk's web address: www.miamidadeclerk.gov

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL DISTRICT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2025-015958-CA-01

PAUL AKEO and CHRISTY AKEO,

Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability company; PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability company; PALACE ELITE RESORTS S.A. de C.V., a Mexican corporation; JOSÉ GIBRÁN CHAPUR DÁJER, an individual; PALACE COMPANY HOLDINGS,

Defendants.

## PLAINTIFF'S RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST ARBITRATION INITIATED BY DEFENDANTS

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and states:

### INTRODUCTION

1. This is an action for malicious prosecution, defamation, abuse of process,

1

intentional infliction of emotional distress, and duress.  Plaintiffs Christy and Paul Akeo are a married couple.[1]  This application is an emergency because the deadline to answer the unlawful arbitration and request for emergency orders filed by the Defendants without prior notice ***today,*** August 15, 2025, is purportedly <u>August 18, 2025.</u>

  2. Plaintiffs are about to state something that is unbelievable, but indisputably true: (i) Shackled in handcuffs (removed only to sign), (ii) in the custody of a Mexico maximum security prison, (iii) having survived thirty days there next to drug dealers, cartel members, and murderers, in constant fear for their personal safety and security, (iv) next to men carrying machine guns, and (v) under threat of criminal prosecution that could lock them up in Mexico maximum security prison for up to six years, Plaintiffs were forced under duress by Defendants to affix their signature on a Mutual Release and Non-Disparagement Agreement (attached as <u>Exhibit A,</u> the "Settlement Agreement" or the "Agreement") in order to secure their release from maximum security Mexico prison.  At the time, Defendants threatened Plaintiffs with continuing a criminal prosecution based on false accusations, misusing for personal gain the power of the public prosecutor.  The Settlement Agreement contained an arbitration clause purporting to set the place of arbitration in Vancouver, Canada -  2,500 miles away from Plaintiffs' Michigan home.

  3. Plaintiffs seek immediate injunctive relief under Fla. R. Civ. P. 1.610 and Fla. Stats. § 682.03(2) (i) to restrain Defendants from seeking to enforce the Settlement Agreement

---

[1] In the complaint, Plaintiffs allege the Defendants made a blatantly false accusation with the Mexico criminal authorities in order to induce Mexico authorities to jail and confine them and thereby coerce the Akeos into giving Defendants money American credit companies refunded to the Akeos and shutting down a Facebook group regarding Defendants' business practices that the Akeos didn't even control.  They refer to the unverified complaint filed in this action for a more detailed description of the allegations regarding the long-running saga between them and Defendants.

(including its arbitration and delegation clauses, to the extent therein) that Defendants unlawfully procured through duress and (ii) to stay the pending arbitration proceeding Defendants have requested under the Agreement, to which Plaintiffs never voluntarily consented and affixed their signatures under clear physical duress, in the International Court of Arbitration ("ICA") in Vancouver, Canada.  Absent this relief, Plaintiffs will suffer irreparable injury in being forced to arbitrate in Vancouver, Canada under an agreement procured by physical duress.  Forcing Plaintiffs to do so would usurp this Court's express statutory function and role to decide: (1) whether any agreement to arbitrate exists (including a delegation clause) and (2) the validity of the foregoing.  Fla. Stat. §§ 682.02, 682.03.

4.      Plaintiffs' counsel has emailed a copy of this temporary restraining order to counsel for the Defendants in the ICA arbitration, David M. Orta (davidorta@quinnemanuel.com), Kirsten R. Nelson (kirstennelson@quinnemanuel.com), Ana Paula Luna Pino (analuna@quinnemanuel.com), Natalia Salinas (nataliasalinas@quinnemanuel.com), David M. Orta (davidorta@quinnemanuel.com), and Jaime Luis Lopez (jaimelopez@quinnemanuel.com).  Plaintiffs' counsel will attempt personal service of this Motion to the extent practicable.

<div align="center">**JURISDICTION AND VENUE**</div>

5.      This Court has jurisdiction over the subject matter pursuant to Article V, § 5(b) of the Florida Constitution and Fla. Stat. § 26.012.

6.      Venue is proper in this Court because at least one defendant PR GLOBAL RESERVATIONS, LLC resides in this County according to its filings with the Florida Department of State.

7.      This Court has jurisdiction over the Defendants as they claim to be the primary

<div align="center">3</div>

marketer of room nights and integrated hotel services at The Palace Group hotels, both in the United States and elsewhere, selling nights through various commercial segments, such as tour operators, online travel agencies, other groups, websites, and Palace Elite affiliates, through which guests can book stays at Palace entity-operated hotels. PR Global also recognizes Palace Elite memberships and sells stays at the applicable discounted rates to members.

8.      The Akeos made their booking reservations as described in their complaint at Palace Resorts through PR Global and its representatives in Miami-Dade County.

9.      The Federal Arbitration Act does not apply as the Agreement is not a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, as the Agreement was procured as a condition to the dropping of criminal prosecution and release from imprisonment, as hereinafter detailed.  *See Breazeale* v. *Victim Servs., Inc.,* 878 F.3d 759 (9th Cir. 2017) (agreements entered into in connection with a criminal prosecution do not come within the Federal Arbitration Act and then holding agreement is contrary to public policy, denying motion to compel).

## FACTS SUPPORTING RELIEF

10.      On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun.  They were then forced to spend a month in detention in a maximum security prison in Quintana Roo, Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

11.      The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown.  In reality, after a long-running dispute described in the complaint, the Akeos had disputed the charges with the credit card companies based on the fact that the charges were for "services or products not

4

received." The credit card companies received information from both sides and ultimately sided with the Akeos, refunding them approximately $116,000.

12.     While the allegations are lengthy in the complaint, for purposes of this temporary restraining order, the relevant facts relate to the circumstances resulting in the Akeos' signing a Mutual Release and Nondisparagement Agreement. After being arrested, the Akeos were held in maximum security Mexico prison based on the false accusations. Christy was placed in a holding cell for two weeks with a non-flushable toilet. Paul was placed in a jail cell with roughly 35 other guys. On the first night, the guards had pepper sprayed the fan in Paul's room to calm down agitated prisoners.

13.     On March 5, Paul approached a corporate representative of the Palace Resorts at a court hearing to say he was sorry this went as far as it did. The corporate representative of Palace Resorts told Paul that Palace Resorts had spoken to the American consulate and told the American consulate Palace Resorts was willing to drop the criminal charges only in exchange for a settlement agreement. The corporate representative told the Akeos that the settlement agreement proposed by Palace Resorts was "not about the money, it was about the Facebook group." The Akeos do not know the name of the corporative representative, but have met him before at the Palace Resorts and know what he looks like. The corporative representative had laughed at the Akeos when the Akeos walked into the courtroom in shackles.

14.     On March 10, Christy and Paul were told by Mexico authorities that they were going to be held for at minimum six months to enable Palace Resorts to gather more information on the case and, if found guilty, up to three to six years.

15.     After two weeks in the holding cell, Christy was placed into general population at the maximum security prison in a room with five other women. Christy learned that three of the

women were there for murder and two were there for drug-related charges.

16.     Paul was transferred to different jail cells for his safety.  In the first two weeks, Paul was in the general lock up cell next to individuals who were there for drug dealing, armed robbery, and murder.  In the next cell, Paul learned that he was with individuals who had been detained for two or three years.  In the final cell he was transferred to, Paul learned that he was with individuals who were members of the Mexico cartel and had killed people, armed robbery, rape, or stealing (each of the foregoing were separate individuals).  Both Akeos feared for their personal security and safety the entire time in prison.  The Akeos understood that nobody spoke English.  Inmates had told Paul they recognized him "from the TV."  Paul was afraid the inmates knew he worked for the Michigan State Police.  During the first week, Paul pulled drywall screws from the wall and slept with them for protection.  Each night, up to ten new people would be placed in the holding cell with him.  Paul was sleeping shoulder-to-shoulder with other inmates on the floor.

17.     On Friday, April 3, at approximately 12:30 PM, guards at the prison came to the Akeos' cells and asked the Akeos to come out. The Akeos had no idea what was happening. Christy asked where she was going, but the guard did not speak English and gave no explanation. Christy was escorted down to the prison garage in shackles. Shortly after, Paul arrived, also shackled.

18.     The warden, Gustavo, then appeared and told the Akeos they were going to the courthouse for a hearing to get some "good news."

19.     The Akeos arrived at the courthouse at about 1:00 PM for what they were told was a 2:00 PM hearing. The Akeos were placed in separate, filthy basement holding cells — each in shackles — and could not see one another. There was no water in Christy's cell and the

toilet, out in the open, was not working.

20. The Akeos were the only ones in these separate holding cells, and they were left there for hours. The Akeos could talk to each other by shouting back and forth, but could not see one another.

21. As time passed, the Akeos became increasingly anxious. The hearing time came and went. At around 3:00 PM, Christy asked one of the guards why they had not yet been taken to the hearing, but the guard did not speak English. None of the other guards could understand Christy either.

22. By this point, the Akeos had been waiting for over three hours — two hours past our scheduled hearing time. The repeated delays made the Akeos fear something had gone wrong and that they would not be going home that day. The Akeos kept asking for their lawyers and for Congressman Tom Barrett, the U.S. House of Representative for the Akeos' daughter's district, but no one could help the Akeos or even understand their requests. Christy was also growing more anxious because of the lack of water and the unusable toilet in the open in my cell. It was open air, so it was very hot down there.

23. Finally, around 4:00 PM, guards came to take the Akeos to the hearing. The Akeos were escorted by three armed guards carrying machine guns.

24. Inside the courtroom were: (a) U.S. Congressman Tom Barrett, (b) Kyle VonEnde, Chief of Staff to Congressman Barrett, (c) Consul General Justen Thomas, U.S. Embassy in Merida, (d) Wyatt Duea, Chief of American Citizen Services, U.S. Embassy in Merida, (e) Justen Thomas' bodyguard (name unknown), (f) the Akeos' attorney, Jaime Cherem, (g) the Akeos' attorney, Alonso Brigas, (h) Kevin (an attorney for Palace), (h) the same corporative representative who told the Akeos they needed to settle their civil claims to get out of

7

prison, and (i) a woman from Palace, believed to be Palace lawyer Jordans Astid Lorenzo Rodriguez, who glared at Christy throughout the proceeding.

25.     There was an interpreter sent for the Akeos, but she could not speak English well enough.

26.     Two or three additional armed guards with machine guns were present next to the Akeos.

27.     Once seated, Congressman Barrett told the Akeos that the Akeos needed to sign paperwork to be free from prison and had no choice to sign unless they wished to remain in prison.  All the Akeos wanted to do was sign and leave.  The Akeos were just so scared as to what was happening and why it was delayed for so long.

28.     The Akeos' lawyers also told the Akeos they needed to sign the Mutual Release and Nondisparagement Agreement in favor of Palace Elite to be released.

29.     The Akeos signed the Agreement where they were told to by their lawyers.  While signing the Agreement, Palace lawyer Kevin was standing over the Akeos glaring at them.

30.     This was the first the Akeos ever saw the Agreement.  At the time of signature, to the Akeos' understanding, Palace Resorts continued to threaten the Akeos with imprisonment (where their physical safety and security were jeopardized) and criminal prosecution if they do not sign the Agreements.

31.     The Akeos left the courthouse to return to the prison.  Based on statements made to the Akeos, everybody around them distrusted Palace Resorts and were afraid that the Akeos were not going to be released from prison.  As a result, Congressmember Barrett, the Consular General, and members of their staff followed in their own armored vehicle the Mexican authority's armored guard vehicle transporting the Akeos back to prison.  The Akeos believed

their safety and security remained in jeopardy as they were told that Palace Resorts may file additional criminal charges to detain them before their departure from Mexico.  This threat was so real and imminent that they were told their lawyers filed a case with a court seeking an injunction.

32.     After they were released from Mexico maximum security prison, Congressmember Barrett and the Consular General transported the  Akeos with police escorts bearing *machine guns* to the airport.  Congressmember Barrett and the Consular General told the Akeos that they were so concerned for their physical safety and security as a result of the Palace Resorts' conduct that they were going to wait until their plane actually took off.  The Akeos were also procured a private jet to prevent any opportunity for detention at a commercial airport.

33.     Throughout the signing process, the Akeos were threatened with imprisonment and criminal prosecution, scared, confused, intimidated and humiliated. The armed guards with machine guns, the Palace lawyers' stalking and assaulting behavior at the signature time, the hours of unexplained delays, and the previous thirty-days of constant fear for their personal safety and security next to drug dealers and murders added to the Akeos' anxiety.

34.     The Akeos had no choice but to sign the Agreement if they wanted to be released from prison.  The Akeos believed that if they did not sign immediately, they would remain in prison indefinitely.  The Akeos were asked for copies of what they signed, but were told their lawyers would have to send copies.  The Akeos left without any paperwork from court.

35.     On July 22, 2025, the Akeos through their counsel sent a letter to Palace Resorts' counsel indicating their intention to file suit on or before August 1, 2025 in Florida Circuit Court. The Akeos asked if Palace Resorts wished to resolve the lawsuit before suit was filed.  The Akeos asked for a response by July 28, 2025.

9

36.     On July 31, 2025, Palace Resorts responded by asking for "an addition five (5) business days" to "conduct a thorough internal assessment and prepare a more considered response" to the Akeos' communication.  Palace Resorts, said: "We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response."  The letter was signed by Isaac Carrasco.  *(See* Exhibit B).

37.     Palace Resorts never responded to Plaintiffs' communication as it had promised in the letter.  Rather, on August 11, 2025, the International Court of Arbitration sent a Request for Arbitration dated August 6, 2025.  The Akeos feel deceived yet again by Palace Resorts, including its own general counsel, in their statements and conduct.

38.     The Akeos will be emotionally traumatized if they were forced to arbitrate their disputes with the ICA, as the Agreement was procured by threats and force at the hands of Palace Resorts.

39.     The Akeos' signature on the arbitration agreement and delegation clause were procured through duress.  Specifically, Defendants insisted that the Akeos sign the arbitration agreement and delegation clause in order to be freed from prison.  Congressmember Barrett himself recognized that the only way the Akeos leave prison is they sign these agreements without negotiation.

40.     Akeos were thereby deprived of the ability to exercise free will or make a voluntary, knowing choice regarding the delegation of authority to an arbitrator.

41.     Because duress tainted Plaintiffs' assent to the delegation clause itself, Plaintiffs never agreed out of their own free will to arbitral determination of arbitrability.

42.     Plaintiffs did not voluntarily and willingly consent to permit the arbitrator to decide the enforceability of the putative Settlement Agreement or any provision contained

10

therein -  particularly an arbitration requested by the very party who procured the Agreement through duress.

## MEMORANDUM OF LAW

To obtain a temporary injunction, a party must prove "1) that [he] will suffer irreparable harm unless the status quo is maintained; 2) that [he] ha[s] no adequate remedy at law; 3) that [he] ha[s] a substantial likelihood of success on the merits; and 4) that a temporary injunction will serve the public interest." *See Net First Nat. Bankv. First Telebanc Cmp.,* 834 So. 2d 944, 949 (Fla. 4th DCA 2003).  This Court has the power to issue stays of arbitration proceedings under .  *See Premier Med. Mgmt., Ltd. v. Salas,* 830 So. 2d 959, 960 (Fla. Dist. Ct. App. 2002); *Metropolitan Dade Cnt. v. Resources Recovery,* 462 So.2d 570 (Fla. DCA 3 1985) (holding circuit court erred in denying motion to stay without evidentiary hearing as to the intent of the parties).

***First,*** Plaintiffs will suffer irreparable harm unless the status quo is maintained.  Palace Resorts seeks to have the International Court of Arbitration (the "ICA") determine the validity of the Agreement it procured by physical duress and duress in the form of threats.  The Florida Arbitration Act provides, "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."  (Fla. Stat. Ann. § 682.02).  This is consistent with federal law under the FAA, even though the FAA does not apply to the Agreement.  *(Coinbase, Inc. v. Suski,* 602 U.S. 143, 147-49 (2024).  Here, contrary to Florida or federal law, Palace Resorts seeks to have the ICA decide the existence and validity of the Agreement.  To the extent that Palace Resorts claims that the Agreement provided for the arbitrator to decide the existence or validity of the Agreement under a "delegation clause", as hereinafter described, the existence and validity of the delegation clause itself must be decided

11

by the Court.  (Fla. Stat. Ann. § 682.02; *Attix* v. *Carrington Mortg. Servs., LLC,* 35 F.4th 1284 (11th Cir. 2022)).  Palace Resorts is seeking to usurp the role of this Court by having the arbitrator decide these threshold issues in the ICA arbitration.  In addition, Plaintiffs will suffer irreparable harm in the form of emotional distress and re-traumatization by being forced to arbitrate in Vancouver, Canada under an agreement Defendants procured by physical duress.

*Second,* Plaintiffs have no adequate remedy at law.  If the ICA Arbitration does usurp this Court's role and decide these threshold issues of the existence of an arbitration agreement or delegation provision, then Plaintiffs will have no adequate remedy at law.  Indeed, Florida law expressly requires this Court to determine "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."  (Fla. Stat. Ann. § 682.02).

*Third,* Plaintiffs have a substantial likelihood of success on the merits for their claims. The Agreement - and each and every provision contained therein - was procured by physical duress and duress in the form of threats by Palace Elite.  Florida defines duress as "a condition of mind produced by an improper external pressure or influence that destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *City of Miami* v. *Kory,* 394 So.2d 494, 498 (Fla. 3d DCA 1981).  "[T]here are in essence two factors which must coexist in order to establish duress one which deals with the party allegedly under duress; the other, with the party allegedly imposing it. It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." *Id.* at 497.  Florida courts have held that demanding a signature on an agreement under threat of "life-altering consequences" is duress. *Ziegler v. Natera,* 279 So. 3d 1240, 1243 (Fla. Dist. Ct. App. 2019).  Here, Palace Resorts demanded the Akeos sign the Agreement under threat of

12

criminal prosecution, under threat of returning to prison to languish for six months to six years where their security and safety were imperiled, under physical threat of Palace Resorts' own attorney, without any time to review the Agreement, and without any relation to the actual criminal charges which were dismissed via a separate and distinct Reparation Agreement.

Virtually every single authority is in accord. The Restatement (Second) of Contracts has two forms of duress. The first form of duress is physical duress where the "conduct that appears to be a manifestation of asset by a party who does not intend to engage in that conduct is physically compelled by duress"; if physical duress is present, the "conduct is not effective as a manifestation of assent" and no contract is formed, period. Rest. 2d. Contracts § 174. While considered a rare form of duress, this extraordinary case fits the bill. As explained by *U.S. for Use of Trane Co.* v. *Bond,* it "indeed was Blackstone's view where the contract was coerced by ***actual imprisonment*** or fear of loss of life or limb," it is duress. *U.S. for Use of Trane Co.* v. *Bond,* 322 Md. 170, 178, 586 A.2d 734, 738 (1991). As the United States Supreme Court explained as early as 1868:

> Actual violence is not necessary to constitute duress, even at common law, as understood in the parent country, because consent is the very essence of a contract, and, if there be compulsion, there is no actual consent, and moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is everywhere regarded as sufficient, in law, to destroy free agency, without which there can be no contract, because, in that state of the case, there is no consent.

*Brown* v. *Pierce,* 74 U.S. 205, 214 (1868). Here, the Agreement, its arbitration provision, and delegation clause were each coerced by actual imprisonment of the Akeos and therefore void entirely.

The second form of duress is duress by threat of criminal prosecution or imprisonment. Restatement (Second) of Contracts provides, "If a party's manifestation of assent is induced by

13

an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175 (1981). An improper threat includes: "what is threatened is a criminal prosecution." *Id.* § 176. This type of duress happens when a party makes a threat of criminal prosecution and incarceration in order to procure the other party's assent. To be clear, because the Akeos were actually in prison and subject to criminal prosecution and their signatures to the private agreement with the Palace Resorts was a condition to their freedom, physical duress is more appropriate, rendering the contract void. But even duress by improper threat of imprisonment and prosecution applies, as the threat of **continued** imprisonment and prosecution remained absent the Akeos' signature on the Agreement. *See Germantown Mfg. Co. v. Rawlinson,* 341 Pa. Super. 42, 51, 491 A.2d 138, 143 (1985) ("A threat to instigate criminal prosecution has generally been regarded as an improper means of inducing the victim of the threat to make a contract. . . The impropriety lies in the use for 'private benefit ... of the criminal process of the court provided for the prosecution of the crime and the protection of the public.' On this ground, the threat is improper even if the person who makes it honestly believes that the one whose prosecution is threatened is guilty and even if in fact that person is guilty," quoting E. Allan Farnsworth as Reporter of the Restatement). In *Germantown,* the party threatened criminal prosecution to induce the other party to enter into an agreement, and the Court invalidated the agreement under duress. *Id.* at 144-45.

In perhaps one of the handful of cases dealing with arbitration agreements, in *Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park,* 15 Cal.App.4th 119 (1993), the Court held that an arbitration agreement "obtained under threat of criminal prosecution and that [plaintiff] would not have signed the agreement absent such threat" is invalid. "The threat was particularly abhorrent in that it was issued by a government agent. The city attorney's threats constituted

14

menace destructive of free consent." *Id.* at 128-29.  The fact that the arbitration agreement was procured under these threats "implicatefd] strong public policy considerations." *Id.', Brown v. Best Prods., Inc.,* 479 N.E.2d 852, 855 (Ohio 1985) ("One reason releases executed between private parties which offer as consideration the suppression of criminal prosecution are void is that courts have recognized that duress is inherent in the execution of such releases.").

*Fourth,* a temporary injunction will serve the public interest.  The public interest is served as the TRO upholds Florida and (if applicable) federal statutes giving this Court authority to determine the formation and validity of arbitration agreements (including delegation clauses), the TRO does not impact non-parties, the TRO preserves lawful conduct and deprives Defendants of their misuse of the criminal justice system for private gain and benefit.

## RELIEF REQUESTED

For the reasons stated above, Plaintiffs respectfully seek a temporary injunction under Rule 1.610 of the Florida Rules of Civil Procedure enjoining the Defendants from enforcing the Agreement in any respect and proceeding with the International Court of Arbitration arbitration pending a determination of the validity and existence of any arbitration agreements and a stay of the pending arbitration under Fla. Stats. § 682.03(2).  The injunction "shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction." Fla. R. Civ. P. 1.610(c).

As for the amount of the bond, Plaintiffs believe that a bond in the amount of $5,000 is sufficient for this very limited restraint sought, i.e. the stay of the pending arbitration. "The purpose of an injunction bond is to provide sufficient funds to cover the adverse party's costs and damages if the injunction is wrongfully issued." *MetalMax Cutting Tools, Inc.* v. *Mil-Tec USA,*

*Inc.,* 794 So. 2d 609, 610 (Fla. Dist. Ct. App. 2001).  "[A] trial court may consider factors other than anticipated costs and damages in setting a bond, including the adverse party's likelihood of overturning the temporary injunction."  *Id.*

The restraint sought is to stay the arbitration which Defendants filed and to consolidate the issue of the enforceability of the Settlement Agreement (including any arbitration agreement or delegation clause therein) with this Court.  If the temporary injunction is wrongly issued, Defendants will not have suffered any substantial harm, as the arbitration Defendants initiated will resume and the arbitrator will determine the enforceability of the Settlement Agreement.  At most, Defendants will have suffered some minor delay in having this Court resolve whether the Court or the arbitrator is the appropriate decision-maker on the enforceability of the Settlement Agreement (including any arbitration agreement or delegation clause therein).  There would be no lost profits, lost business opportunities, or similar compensable damage for deciding which forum decides the enforceability of the Settlement Agreement.  Furthermore, the Court can adjust the bond at any time.

Furthermore, Plaintiffs lack the resources to pay a large bond, as they are two individuals without cash resources to post substantial bond.  The bond must not be so large as to render the temporary injunction inaccessible to the aggrieved parties.  Paul Akeo works for the Michigan State Police Department earning $98,000 a year and Christy Akeo does not have a job.

**VERIFICATION OF PLAINTIFFS**

Under penalties of perjury, I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.

8/15/2025

_____
Dated

Christy Akeo

_____
Christy Akeo

8/15/2025

_____
Dated

Paul K. Akeo

_____
Paul Akeo

Dated: August 18, 2025

/s/ Peter Kaufman
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

18

# EXHIBIT A

<u>MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT</u>

This MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT (this "Agreement") is entered into as of the'S-A    day of ___April___ > 2025 (the "Effective <u>Date"),</u> by and among CHRISTY LIN AKEO and PAUL K  AKEO, on one hand, and PALACE ELITE RESORTS, S.A. DE C.V. ("PALACE ELITE"), on the other hand.

WHEREAS, PALACE ELITE and CHRISTY LIN AKEO and PAUL K. AKEO have had a long-standing commercial relationship since at least February 1, 2016 pursuant to a series of contracts and ancillary agreements entered into on or about February 1, 2016, February 3, 2016, April 28, 2016, May 19, 2016, September 25, 2016, November 22, 2016, May 6, 2017, July 26, 2017, January 4, 2018, September 21, 2018, December 21, 2018, February 17, 2019, April 27, 2019, September 29, 2019, July 4, 2020, October 25, 2020, February 12, 2021, May 24, 2021, and November 21, 2021 (collectively, the "Membership <u>Agreements").</u>

WHEREAS, PALACE ELITE has asserted that CHRISTY LIN AKEO and PAUL K. AKEO have acted wrongfully in their dealings with PALACE ELITE (the "Palace <u>Elite Claims</u>  ).

WHEREAS, CHRISTY LIN AKEO and PAUL K. AKEO have asserted that **PALACE** ELITE has acted wrongfully in its dealings with CHRISTY LIN AKEO and PAUL K  **AKEO (the** <u>"Akeo Claims").</u>

WHEREAS, PALACE ELITE, CHRISTY LIN AKEO, and PAUL K. AKEO **each** agree that they have had a full, reasonable, fair, and adequate opportunity to investigate **the Palace** Elite Claims and the Akeo Claims; to consult with and seek the advice of legal counsel **of then-**choosing, in the United States and in Mexico, with respect to the Palace Elite Claims, **the Akeo** Claims, and this Agreement; and to consider and reflect on the terms and substance **of ths** Agreement.

WHEREAS, in order to avoid the hassle and expense of litigation, PALACE **ELIIE and** CHRISTY LIN AKEO and PAUL K. AKEO wish to resolve and any and all existing **or potential** disputes between PALACE ELITE, on one hand, and CHRISTY LIN AKEO and'or **PAUL K.** AKEO, on the other hand, known or unknown, whether sounding in statute, common **law, equiy,** or other source of authority, whether under the laws of Mexico or any state or other **consrinaes** jurisdiction thereof, or under the laws of the United States or any state or other **cocsruai** jurisdiction thereof, or any other jurisdiction, including but not limited to (1) the **Patece Ete** Claims and any and all claims or causes of action arising out of or related to the assertion **orjssssi** of the Palace Elite Claims by PALACE ELITE, or by its ownership, managers, ~~shareholders,~~ attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, **related** emkies, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, ~~assigns,~~ third party administrators, or legal representatives, (2) the Akeo Claims and any **and all** ~~kims or~~ causes of action arising out of or related to the assertion or  pursuit of the **Akeo Claims by** CHRISTY LIN AKEO and/or PAUL K. AKEO, or their

1

respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, (3) any and all claims or causes of action arising out of or relating to the Membership Agreements, and (4) any and all claims or causes of action arising out of or related to any acts or omissions occurring on or prior to the Effective Date of this Agreement (collectively, the "Released Claims").

1.      Mutual Releases.

    a.  PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, hereby forever releases CHRISTY LIN AKEO and PAUL K. AKEO, as well as their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

    b.  CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

    c.  PAUL K. AKEO, on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

2

2.  Mutual Covenants Not to Sue. Other than the Released Claims, PALACE ELITE does not know of any claims that PALACE ELITE might have against either CHRISTY LIN AKEO or PAUL K. AKEO. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, covenants and agrees that it will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against CHRISTY LIN AKEO and PAUL K AKEO, or their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, on account of the Released Claims.

Other than the Released Claims, CHRISTY LIN AKEO does not know of any claims that CHRISTY LIN AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that she will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

Other than the Released Claims, PAUL K. AKEO does not know of any claims that PAUL K AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. PAUL K. AKEO , on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that he will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

3

3. <u>Consideration</u>

    a. CHRISTY LIN AKEO and PAUL K. AKEO expressly acknowledge and agree that PALACE ELITE'S promises and covenants set forth herein, including but not limited to as set forth in Paragraphs 1 and 3, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement. .

    b. PALACE ELITE expressly acknowledges and agrees that CHRISTY LIN AKEO's and PAUL K. AKEO's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement.

4. <u>Non-Disparagcment.</u>

    a. CHRISTY LIN AKEO represents and warrants, on behalf of herself and her agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that she shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about PALACE ELITE or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.) (each and any of the foregoing, "Disparaging <u>Statements").</u> CHRISTY LIN AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog, and/or otherwise accessible on the internet and made by or on behalf of CHRISTY LIN AKEO, shall be removed within seven (7) days of the Effective Date, and CHRISTY LIN AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request

4

b.      PAUL K. AKEO represents and warrants, on behalf of himself and his agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that he shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any Disparaging Statements as defined in Paragraph 3(a) of this Agreement. PAUL K. AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of PAUL K. AKEO, shall be removed within seven (7) days of the Effective Date, and PAUL K. AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request.



c.      PALACE ELITE represents and warrants, on behalf of itself and its agents, representatives, ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal' representatives, and assigns, that it shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about CHRISTY LIN AKEO and PAUL K. AKEO or their agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).

5.  <u>Non-Inducement.</u> From and after the Effective Date, each of CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

6.  <u>Liquidated Damages.</u> In the event of a breach of this Agreement, CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE agree that should any of them breach this Agreement, the breaching party shall immediately pay individually as fixed and



5

liquidated damages a sum of $50,000.00 U.S. Dollars per breach to the other party, as well as $1,000 U.S. Dollars per breach, per calendar day, until each and every breach is cured. Such liquidated damages in the amount of $50,000.00 U.S. Dollars are not intended to be a penalty and are solely intended to compensate the non-breaching party or parties. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

7. Injunctive Relief. In the event of a breach or a threatened breach by CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE of any provisions contained in this Agreement, any party will be entitled to seek an injunction restraining the party that has breached or is threatening a breach from such breach or threatened breach (without the necessity of proving the inadequacy as a remedy of money damages or the posting of bond, and CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE hereby waive any defense or objection to such injunctive relief (if permitted under applicable law)); provided, however, that the right to injunctive relief will not be construed as prohibiting CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE from pursuing any other available remedies, whether at law or in equity, for such breach or threatened breach.

8. Enforcement of this Agreement. Each party shall pay their own respective attorneys' fees and costs relating to this Agreement, In the event of a legal action or other proceeding arising out of an alleged breach of this Agreement or to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

9. Capacity to Execute. Each signatory to this Agreement represents and warrants that they are of appropriate legal, physical, and mental capacity, are not under duress or undue influence, has read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing, and are legally authorized to execute this Agreement. In entering into the Agreement, each party to this Agreement relies wholly upon their own judgment, belief, and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and does not rely upon any statement or representation of any other party or any other party's representatives.

10. Severability. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any tribunal may modify any invalid or unenforceable

provision to the maximum extent permitted by law while preserving the intended effect of such provision.

11. <u>Contract.</u>  The terms of this Agreement are contractual and the parties to this Agreement represent and warrant that they intend to be bound by them.

12. <u>Construction.</u>  Any rule of construction to the effect that ambiguities are resolved against the drafting party will not apply to the interpretation and construction of this Agreement.

13. <u>Headings-</u> The paragraph headings in this Agreement are intended solely for reference and shall not by themselves determine the construction or interpretation of this Agreement.

14. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal law of the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules.

15. <u>Arbitration.</u>



All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules. The seat of the arbitration shall be Vancouver, Canada. The language of the arbitration shall be English. Except as may be required by law, neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. No award or order made in the arbitration shall be published.

This arbitration agreement shall be governed by the laws of the State of New York, including United States federal law as applied by United States federal courts seated in New York, New York.

16. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which will be deemed an original, and such counterparts will together constitute a single Agreement.  Faxed, e-mailed, or electronic signatures will be deemed originals.

[SIGNATURE PAGES FOLLOW]



THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE,

CHRISTY LIN AKEO

4/3/25
Date

[INSERT NOTARY TEMPLATE]

8

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____
PAUL K. AKEO

4/3/25
_____
Date

[INSERT NOTARY TEMPLATE]

9

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

PALACE ELITE RESORTS, S.A. DE C.V.

By: _Jordans Astid lorenzo Rodriguez_
[INSERT NAME OF SIGNATORY]  Its:
[INSERT TITLE OF SIGNATORY]

_i 3 l io l S_
Date

[INSERT NOTARY TEMPLATE]

10

# EXHIBIT B

# THE  PALACE  COMPANY

**THEPALACECOMPANY.COM**

Mr. Jesse Creed
Panish Shea Ravipudi LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
jcre_e_d_@panish..law

Mr. John Manly
Manly, Stewart & Finaldi
19100 Von Karman Avenue, Suite 800
Irvine, California, 92612
jmanlyCcdmanlystewart.com

*via e-mail*

July 31, 2025

Dear Messrs. Creed and Manly,

I am writing on behalf of Palace Elite Resorts, S.A. de C.V. ("Palace Elite") in response to your letter dated July 22, 2025, which included a draft complaint and outlined certain claims and demands related to the Mutual Release and Non-Disparagement Agreement (the "Agreement") signed by your clients, Mr. Paul and Ms. Christy Akeo, and Palace Elite, on April 3, 2025.

Palace Elite notes that the contemplated claims in your letter appear to be in direct conflict with the terms of the Agreement between Palace Elite and Mr. Paul and Ms. Christy Akeo, which includes, in Sections 1 and 15, a mutual release of claims and a submission of any disputes related to the Agreement to arbitration.

# TH E  PALACE  COM PAN Y

**THEPALACECOMPANY.COM**

In order to conduct a thorough internal assessment and prepare a more considered response, Palace Elite respectfully requests an additionalfive (5) business days, as of the date of this letter, to respond to further your communication.

We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response. Palace Elite reserves all rights and remedies.

Sincerely,

Ipac  arrasco
Pala  e Elite Resorts, S.A. de C.V.

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
|---|---|---|
| □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||

| DIVISION<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)**<br>**PALACE RESORTS, LLC, a<br>limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'      GLOBAL RESERVATIONS, LLC, a Florida limited liability company_____

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421_____

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

_CLOCK IN_

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | BY:_____ 36034<br>DgJPUTY.,CLERK | DATE<br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                                      Clerk's web address: www.miamidadeclerk.qov

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
| :--- |
| □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||

| DIVISION<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
| :--- | :--- | :--- |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)**<br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | **SERVICE** |

| THE STATE OF FLORIDA: | CLOCK IN |
| :--- | :--- |
| To Each Sheriff of the State:<br><br>**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)'  PALACE ELITE, a Mexican corporation_____<br><br>8400 NW 33rd Street, Suite 406, Doral, FL 33122_____<br><br>_____<br><br>_____<br><br>Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____<br><br>whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025_____<br><br>_____ | |

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>**Mclarke**<br>DEPUTY CLERK 3  | DATE<br><br>8/19/2025 |
| :--- | :--- | :--- |

## AMERICANS WITH DISABILITIES ACf  OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                                                 Clerk's web address: www.miamidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|

| DIVISION 0 CIVIL ☐ DISTRICTS ☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)** PAUL AKEO and CHRISTY AKEO | **VS. DEFENDANT(S)** **PALACE RESORTS, LLC, a limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): PALACE COMPANY HOLDINGS

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY:_____ 38094 DEPUTY'CLERK | DATE 8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314 Rev. 06/23                                        Clerk's web address: www.miamidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>□ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS. DEFENDANT(S)**<br>**PALACE RESORTS, LLC, a limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)' PALACE ELITE RESORTS S.A. de C.V., a Mexican Corporation_____

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Km 21 Carretera Cancun Morelos, CO Mexico

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | BY:_____ Mclarkc «-i»<br>DEPUTY CLERK | DATE<br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITB&ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                        Clerk's web address: www.miamidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>□ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | | |
|---|---|---|---|

| DIVISION<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| PLAINTIFF(S)<br>PAUL AKEO and CHRISTY AKEO | VS.  DEFENDANT(S)<br><br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | SERVICE |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'  PALACE RESORTS, LLC, a limited liability company

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defend  rfffeds  cpjflo so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

CLOCK IN

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK   36084 | DATE<br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                    Clerk's web address: www.miamidadeclerk.qov

Filing # 229567864 E-Filed 08/18/2025 03:04:15 PM

|X| iiN i rit uirxuui i uuurti ur i rit tLtvtixi iri juuiuiAL uirxuui i nxiAixiu rorx iviiAivu-UAUt uuuixi i Y, t-LotxiuA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>0 CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | **CIVIL ACTION SUMMONS (b)**<br>**Form for Personal Services on a**<br>**Natural Person** | CASE NUMBER<br><br>2025-015958-CA-01 |
|---|---|---|
| PLAINTIFF(S)<br><br>PAUL AKEO and CHRISTY AKEO | VS    DEFENDANT(S)<br><br>PALACE RESORTS, LLC, a limited liability company;<br>et al. | CLOCK IN |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>  JOSE GIBRAN CHAPUR DAJER | Address:<br><br>8400 NW 33rd Street, Suite 100, Doral, FL 33122 |
|---|---|

<u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.orq."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| **[X] Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | |_| **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | |_I **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | |_| **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| |_| **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, Miami, FL 33134 | |_| **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | | **SERVICE** |

| Plaintiff/Plaintiff Attorney   Peter Kaufman<br><br>Florida Bar No. 548421 | Address:<br><br>11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025 |
|---|---|

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | Mclarke    c'i<br>DEPUTY CLERK    __Xf y | DATE ON:<br><br>8/19/2025 |
|---|---|---|

# AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judici al Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW f Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 34' -7174; Email ADA@judlLflcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 070 Rev. 05/25          Clerk's web address: www.miamidadeclerk.gov

Filing # 229784203 E-Filed 08/19/2025 04:46:01 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL DISTRICT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**Case No. 2025-015958-CA-01**

PAUL AKEO and CHRISTY AKEO,

        Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability company;
PALACE ELITE, a Mexican corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

        Defendants.

_____

**DEFENDANTS' NOTICE OF FILING NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that on August 19, 2025, Defendants, PR Global Reservations,

LLC, Palace Elite Resorts S.A. de C.V., and José Gibrán Chapur Dájer,[1] removed this action to the

_____

[1] "Palace Elite, a Mexican corporation" and "Palace Company Holdings" do not exist. As such, they cannot consent to removal, and are thus disregarded for removal purposes. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 at 46-61 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *see also Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588 (S.D. Fla. 1983) ("Nominal or formal parties, unknown defendants and defendants fraudulently joined may be disregarded in determining the removing defendants' compliance with 28 U.S.C.S. § 1446(a).").

Similarly, "Palace Resorts LLC" is not a proper defendant in this case, and cannot consent to removal, because it has not existed since April 6, 2011, having filed a certificate of cancellation with the Secretary of State of the State of Delaware on that date, and because the entity ceased to exist many years before the Akeos had any commercial relationship with the Defendants. Ex. B (Notice of Removal at Ex. B); *See also Holston Investments, Inc. BVI v. LanLogistics Corp.*, 677 F.3d 1068, 1071 (11th Cir. 2012) (adopting the "bright-line rule" that "a dissolved corporation has no principal place of business," and is therefore only a citizen of the state of its original

United States District Court for the Southern District of Florida by filing a Notice of Removal in

that Court.  A copy of the Notice of Removal is attached as **Exhibit A**.  Under 28 U.S.C. § 1446(d),

this Court may proceed no further unless and until the case is remanded.

DATED:  August 19, 2025                     Respectfully submitted,


                                            QUINN EMANUEL URQUHART & SULLIVAN LLP


                                      By:    _/s/ David M. Orta_____
                                            David M. Orta (Fla. Bar No. 35750)
                                            2601 S. Bayshore Drive, 15th Floor
                                            Miami, FL 33133
                                            davidorta@quinnemanuel.com
                                            Telephone:  (305) 402-4880

                                            *Attorney for Defendants*

---

incorporation.)  Thus, Palace Resorts LLC, as a dissolved entity, is only a citizen of Delaware and is not subject to suit, nor can it sue, under Delaware law.  *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 3300042, at *1-2 (Del. Ch. May 8, 2023) ("When a certificate of cancellation is filed for an entity, its 'existence as [a] jural entit[y] cease[s]'" and it "no longer has a registered agent or active senior officers."  A "defunct entity may speak only through a receiver to manage litigation or any other outstanding business" and therefore cannot retain counsel or participate in litigation. (internal citations omitted)); *see also Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 138-39 (Del. Ch. 2004) (reinforcing that "absent statutory authority, no claim may be brought against a dissolved entity," and that 6 Del. C. § 18-803(b) provides that suit generally may be brought against an LLC only "until the certificate of cancellation is filed" (internal citation omitted)).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2025, a true and correct copy of the

foregoing document was as noted below.

Via Electronic Mail and First Class Mail

Peter Kaufman
Jesse Creed
Hunter Norton
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
pkaufman@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly
MANLY, STEWART & FINALDI
19100 Von Karman Ave. #800
Irvine, CA 921612
jmanly@manlystewart.com

By: */s/  David M. Orta*
David M. Orta
Florida Bar No. 35750
davidorta@quinnemanuel.com

3

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:25-_____

PAUL AKEO and CHRISTY AKEO,

        Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation: JOSÉ GIBRÁN CHAPUR
DAJER, an individual; PALACE
COMPANY HOLDINGS,

        Defendants.

---

## <u>DEFENDANTS' NOTICE OF REMOVAL</u>

### TO THE CLERK IN THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants, PR Global Reservations, LLC, Palace Elite

Resorts S.A. de C.V., and Jose Gibran Chapur Dajer,[1] (collectively "Removing Defendants"),

---

[1] "Palace Elite, a Mexican corporation" and "Palace Company Holdings" do not exist. As such, they cannot consent to removal, are not included in the definition of "Removing Defendants", and are disregarded for removal purposes. *See Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 46-61 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *see also Woods* v. *Firestone Tire & Rubber Co.,* 560 F. Supp. 588 (S.D. Fla. 1983) ("[N]ominal or formal parties, unknown defendants and defendants fraudulently joined may be disregarded in determining the removing defendants' compliance with 28 U.S.C.S. § 1446(a).") (internal quotations omitted).

Similarly, "Palace Resorts LLC" is not a proper defendant in this case, and cannot consent to removal, because it has not existed since April 6, 2011, having filed a certificate of cancellation

pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and 9 U.S.C. § 205, hereby remove the action

entitled *Paul Akeo and Christy Akeo* v. *Palace Resorts LLC, et al.* (the "State Action") from the

Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida to the United

States District Court for the Southern District of Florida. This Court has jurisdiction, because the

case presents a federal question. As discussed below, there is a valid arbitration clause that falls

under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the

"Convention"), and this Court has original jurisdiction pursuant to 9 U.S.C. §§ 202, 203, and 205

and 28 U.S.C. § 1331. As grounds for this removal, Removing Defendants state as follows:[2]

## I.      THE PARTIES' ARBITRATION AGREEMENT

1.      The underlying dispute between the Parties stems from Paul K. Akeo and Christy

Lin Akeo (together, the "Akeos") systematic abuse of their Palace Elite membership privileges

over nearly a decade. Between February 2016 and November 2021, the Akeos entered into

---

with the Secretary of State of the State of Delaware on that date, and because the entity ceased to exist many years before the Akeos had any commercial relationship with the Removing Defendants. *See* Certificate from the Secretary of State of the State of Delaware, attached as Exhibit B, (confirming that Palace Elite ceased to exist as a corporate entity on April 6, 2011); *see also Holston Investments, Inc. BVI* v. *LanLogistics Corp.,* 677 F.3d 1068, 1071 (11th Cir. 2012) (adopting the "bright-line rule" that "a dissolved corporation has no principal place of business," and is therefore only a citizen of the state of its original incorporation.) Thus, Palace Resorts LLC, as a dissolved entity, is only a citizen of Delaware and is not subject to suit, nor can it sue, under Delaware law. *In re Reinz Wisconsin Gasket, LLC,* 2023 WL 3300042, at *1-2 (Del. Ch. May 8, 2023) ("When a certificate of cancellation is filed for an entity, its 'existence as [a] jural entitfy] ceasefs]'" and it "no longer has a registered agent or active senior officers." A "defunct entity may speak only through a receiver to manage litigation or any other outstanding business" and therefore cannot retain counsel or participate in litigation, (internal citations omitted)); *see also Metro Communication Corp. BVIv. Advanced Mobilecomm Technologies Inc.,* 854 A.2d 121, 138-39 (Del. Ch. 2004) (reinforcing that "absent statutory authority, no claim may be brought against a dissolved entity," and that 6 Del. C. § 18-803(b) provides that suit generally may be brought against an LLC only "until the certificate of cancellation is filed" (internal citation omitted)).

[2] Removing Defendants, and undersigned counsel acting on their behalf, specially appear for the limited purpose of filing this Notice and expressly reserve, and do not waive, any and all defenses, the right to seek dismissal and/or a stay of litigation, and to compel arbitration.

eighteen membership agreements with Palace Elite Resorts S.A. de C.V. ("Palace Elite") and Palace Elite Memberships S.A. de C.V. ("Palace Elite Memberships") totaling US $1,409,850 in successive membership upgrades, obtaining exclusive benefits and preferential rates for accommodations at luxury resort properties. However, the Akeos violated their contractual obligations by (1) commercially promoting these benefits on social media for profit, (2) operating unauthorized booking schemes, (3) fraudulently disputing US $116,587.84 in legitimate credit card charges with American Express, Visa and Mastercard, among other financial institutions, by falsely claiming that services were never provided, and (4) operating a social media group titled "Palace Resorts Members - Disappointed & Frustrated - Discuss & Take Action" designed to disparage Palace Elite and encourage others members to engage in similar fraudulent conduct to the detriment of the Removing Defendants.

2. In response, in August 2023, Palace Elite filed a criminal complaint against the Akeos in Mexico with the Attorney General's Office of the State of Quintana Roo. The unjustified credit card disputes, together with the Akeos' unauthorized commercial exploitation of Palace Elite membership benefits, formed the core basis for a criminal complaint filed by Palace Elite in Mexico against the Akeos for criminal fraud. After the Mexican authorities investigated and instituted criminal proceedings for fraud against the Akeos, leading to their arrest and detention, the Parties engaged in settlement negotiations as permitted under Mexican law.

3. The settlement discussions were a bilateral, consensual process pursued by both sides. Throughout the negotiations, the Akeos received substantial diplomatic assistance from U.S. officials, including U.S. Consul Justen Thomas in Merida, Yucatan, White House representative and envoy of President Donald J. Trump Adam Boehler, and U.S. Congressman Tom Barrett, who all participated directly in the negotiations, advocated for the Akeos throughout

the process and sought and obtained various concessions in their favor. Based on these negotiations and as authorized by Mexican law, Palace Elite and the Akeos, on April 3, 2025, entered into two separate agreements: (1) a reparation agreement, (2) and the Mutual Release and Non-Disparagement Agreement (the "Mutual Release and NDA Agreement"). Under the reparation agreement, Palace Elite agreed to grant the Akeos "forgiveness," a requirement for the dismissal of charges under Mexican law, in exchange for a restitutionary payment of approximately $58,000.00, representing 50% of the total amount of the Akeos' fraudulent chargebacks and a very small fraction of the actual damages they caused to the Removing Defendants. The agreement required that the payment be made to Fundacion Ciudad de la Alegria, a non-profit designated by Palace Elite and entirely unrelated to the Removing Defendants.

4. In the second agreement, the Mutual Release and NDA Agreement, the Parties agreed to various bilateral commitments, including mutual releases, covenants not to sue, and non-disparagement provisions. They also agreed to arbitrate any and all future disputes between them in a confidential proceeding governed by the Rules of Arbitration of the International Chamber of Commerce (ICC)'s International Court of Arbitration, with the arbitral seat in Vancouver, Canada, a neutral venue to each side. Each covenant was a critical element of the consideration insisted on by the Parties to reach the settlement of their collective grievances against each other. For example, in Section 1 of the Mutual Release and NDA Agreement, the Parties agreed to mutual and broad releases of all existing and future claims, carving out only possible claims for breach of the Mutual Release and NDA Agreement itself. Compl. Ex. A. Next, the Parties, in Section 2 of the Mutual Release and NDA Agreement, agreed to mutual covenants not to sue each other in the future with respect to any matters that were covered by the

Mutual Release and NDA Agreement, including by their mutual releases.  Most importantly here, the Mutual Release and NDA Agreement contains an arbitration agreement.  CompL Ex. A.  In relevant part, the Mutual Release and NDA Agreement provides:

> 15. Arbitration.
>
> **All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators** appointed in accordance with the said rules. **The seat of the arbitration shall be Vancouver, Canada.** The language of the arbitration shall be English. Except as may be required by law, **neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. No award or order made in the arbitration shall be published.**
>
> This arbitration agreement shall be governed by the laws of the State of New York, including United States federal law as applied by United States federal courts seated in New York, New York.

5.       After signing the agreements, the Akeos appeared before a neutral and impartial judge who conducted mandatory judicial review specifically designed to ensure voluntary execution of the reparation agreement, which the Parties signed as part of their global settlement along with the accompanying Mutual Release and NDA Agreement.  During the judicial review, the judge asked the Akeos in open court: *"In entering into this reparation agreement, were you acting on equal footing, and not under any intimidation, threats, or coercion?'* After translation by their attorney under the supervision of a certified court interpreter, both Akeos answered *"No"* confirming they had not been subject to intimidation, threats, or coercion in entering into the settlement with the Removing Defendants.  This judicial determination was made after the court ensured the defendants understood their rights, had adequate legal representation, were assisted by a court-certified interpreter, and were granted additional time to prepare their defense.  The judge's approval followed comprehensive procedural safeguards designed to protect against duress.  Indeed, assisted by their qualified a Mexican criminal defense attorney, the Akeos affirmed the same in writing in the reparation agreement.  Specifically, the Akeos and Palace Elite

agreed that they were entering into the agreement *"acting on equal footing, and not under any intimidation, threats, or coercion."*

6.       Satisfied that the Akeos knowingly and willingly entered into the reparation agreement, which incorporated the key provisions of the Mutual Release and NDA Agreement, the judge accepted it and dismissed the criminal fraud case against them as required under Mexican law.

7.       However, on July 22, 2025, just over three months after execution of the settlement agreements and obtaining dismissal of the criminal case, the Akeos sent Palace Elite a demand letter threatening to file a public lawsuit against Palace Elite and affiliated entities in Miami Dade Circuit Court, for matters directly encompassed by and related to the Mutual Release and NDA Agreement.  The Akeos' demand letter repudiated the Mutual Release and NDA Agreement, stating that it is "clearly invalid" and "unconscionable."  Although Palace Elite responded to the demand letter noting that the Akeos breached and threatened to further breach the Mutual Release and NDA Agreement, the Akeos ignored the warnings by the Removing Defendants not to further violate the Mutual Release and NDA Agreement and proceeded with their threatened public lawsuit against Palace Elite and its affiliated and related entities and persons, resulting in their filing the instant litigation.

8.       In response to the Plaintiffs' anticipatory repudiation, and further threatened breaches, of the Mutual Release and NDA Agreement, Palace Elite filed a Request for Arbitration with the International Court of Arbitration of the International Chamber of Commerce on August 6, 2025, seeking, inter alia, a declaration as to the validity and enforceability of the agreement, as contemplated in the Mutual Release and NDA Agreement.  Further, on August 15, 2025, Palace Elite filed an Request for Emergency Measures, seeking a temporary injunction to prevent the

Plaintiffs from commencing parallel litigation in Florida Circuit Court. The ICC will issue a decision on Palace Elite's request for emergency injunctive relief on or before August 30, 2025. With knowledge that Palace Elite had taken these measures to prevent the Akeos from pursuing a public, judicial litigation, the Akeos notwithstanding proceeded to file this instant case.

## II.   REMOVAL IS TIMELY

9.     Plaintiffs originally filed the State Action on August 15, 2025, in the Circuit Court of the 11th Judicial Circuit in and for Miami Dade County, Florida ("Miami Dade Circuit Court"). Ex. A (Compl.). Plaintiffs allege that the Removing Defendants engaged in defamation, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Ex. A (Compl. ¶¶ 47, 51, 58-94). Specifically, Plaintiffs request that the Miami Dade Circuit Court declare the Mutual Release and NDA Agreement, which contains an arbitration clause, "to be void and invalid," and "[e]njoin[] the Defendants from enforcing the Agreement in any respectf.]" Ex. A. (Compl.   95). Simultaneously, Plaintiffs filed a request for a temporary restraining order and preliminary injunction to prevent Removing Defendants from continuing to pursue the contractually agreed upon resolution by arbitration. Ex. A (Request for Temporary Restraining Order). On August 18, 2025, the Miami Dade Circuit Court denied their emergency request, noting Plaintiffs failed to comply with the Florida Rule of Civil Procedure 1.610(a)-(b). Ex. A (08/18/2025 Order). On the same day, Plaintiffs filed a renewed motion for temporary restraining order and preliminary injunction, attempting to cure these deficiencies. Ex. A (Renewed Request for Temporary Restraining Order). That motion is pending.

10.     Plaintiffs provided counsel for the Removing Defendants with the summons and complaint and first request for temporary restraining order and preliminary injunction via email on August 18, 2025.

7

11. This Notice of Removal is filed within thirty days of receipt of the Complaint and is therefore timely. 28 U.S.C. § 1446. Further, it is filed before trial, and therefore is also timely under 9 U.S.C. § 205.

12. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders provided to Removing Defendants in the State Action are attached hereto as Exhibit A.

13. Removing Defendants will serve this Notice on Plaintiffs and shall file a Notice of Filing of Removal with the Miami Dade Circuit Court.

14. All Removing Defendants consent to the removal of the State Action. 28 U.S.C. § 1446(b)(2)(A). As noted above, "Palace Elite, a Mexican corporation" and "Palace Company Holdings" do not exist, and therefore are inappropriate defendants and cannot consent to removal.

## III. THE COURT HAS ORIGINAL JURISDICTION OVER THIS ACTION

15. Removing Defendants remove this matter under federal question jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446, and 9 U.S.C. § 205. The Parties entered into a valid arbitration agreement, involving international commerce between international parties, which covers the subject matter of the instant dispute. As such, the suit falls under the Convention. Accordingly, this Court has original jurisdiction under 9 U.S.C. §§ 202, 203 and 205.

16. The Federal Arbitration Act ("FAA") applies to all "written" agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. *Caley* v. *Gulfstream Aerospace Corp., 428* F.3d 1359, 1367-68 (11th Cir. 2005). The Supreme Court has expressed a liberal federal policy favoring the enforcement of arbitration

8

provisions, especially in the field of international commerce. *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985) (noting that the presumption in favor of arbitration carries "special force" when international commerce is involved, because the United States is a signatory to the Convention).

17. The Convention is incorporated into federal law by Chapter Two of the FAA. 9 U.S.C. §§ 201-208. The FAA grants federal district courts "original jurisdiction" over "[a]n action or proceeding falling under the Convention," which "shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. As a consequence, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States." *Id.* § 205; *Cosgun v. Seabourn Cruise Line Ltd. Inc.,* 666 F. Supp. 3d 1270, 1279 (S.D. Fla. 2023), *appeal dismissed,* No. 23-11396, 2023 WL 4112993 (11th Cir. June 22, 2023); *Ytech 180 Units Miami Beach Investments LLC,* 359 F. Supp. 3d at 1260 (quoting *Outokumpu Stainless USA, LLC v. Converteam SAS,* 902 F.3d 1316, 1323 (11th Cir. 2018) rev'd and remanded 51/6 *nom. GE Energy Power Conversion France SAS, Corp.* v. *Outokumpu Stainless USA, LLC,* 140 S. Ct. 1637 (2020) (citing 9 U.S.C. § 205)).

18. Section 202 of the FAA defines an arbitration agreement or award that "falls under" the Convention as:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C.A. § 202. The Convention aims "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London,* 359 F. Supp. 3d at 1260 (quoting *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n. 15, (1974)).

19. District courts engage in a two-step inquiry to determine jurisdiction upon removal under the Convention, limiting its examination to the pleadings and the notice of removal. *Nipro Corp. v. Verner,* No. 19-62121-CIV, 2021 WL 8894430, at *4 (S.D. Fla. June 24, 2021) (citing *Outokumpu Stainless USA, LLC,* 902 F.3d at 1324). First, the court assesses whether the notice of removal describes an arbitration agreement that *"may* fall under the Convention." *Id.* (emphasis added). Second, the district court must determine whether on the face of the notice of removal and the pleadings, there is a non-frivolous basis to conclude that the agreement "relates to" an arbitration agreement that "falls under the Convention." *Id.* Removing Defendants satisfy both requirements.

### A. The Mutual Release and NDA Agreement Falls Under the Convention

20. To determine whether an agreement may fall under the Convention, the court considers whether the removing party has articulated a non-frivolous basis that: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen or that the commercial relationship has some reasonable connection with one or more foreign states. *Bautista,* 396 F.3d at 1295-96 n.7 & 9.

10

21.     Removing Defendants satisfy the four-part test.  First, the arbitration clause within the Mutual Release and NDA Agreement is an agreement in writing within the meaning of the Convention.  *See, e.g.,Nipro Corp.* v. *Verner,* No. 19-62121-CIV, 2021 WL 8894430, at *4 (S.D. Fla. June 24, 2021) (finding that an arbitration clause within a larger agreement satisfies the writing requirement).

22.     Second, the Mutual Release and NDA Agreement provides for commercial arbitration under the Rules of Arbitration of the ICC in Vancouver, Canada.[3]  Canada is a signatory to the Convention.  Canada Declaration, Convention on the Recognition and Enforcement of Foreign    Arbitral    Awards    (Oct.    20,    1987),    *New    York    Convention,* https://www.newyorkconvention.org/contracting-states (last visited Aug. 18, 2025).

23.     Third, the Mutual Release and NDA Agreement arises out of a commercial relationship.  A commercial relationship is one that "involvfes] commerce," 9 U.S.C. § 2, which includes foreign commerce.  9 U.S.C. § 1; *Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London,* 359 F. Supp. 3d 1253, 1260 (S.D. Fla. 2019) (citing another source); *accord* 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."). The Supreme Court has interpreted the phrase "involving commerce" broadly.  *See Allied-Bruce Terminix Cos., Inc.* v. *Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

---

[3]     Although some Judges in this district have disagreed that this is a jurisdictional requirement, Removing Defendants include it in an abundance of caution. *Cosgun v. Seabourn Cruise Line Ltd. Inc.,* 666 F. Supp. 3d 1270, 1280 (S.D. Fla. 2023), *appeal dismissed,* No. 23-11396, 2023 WL 4112993 (11th Cir. June 22, 2023).

11

24. Here, the plain language of the Mutual Release and NDA Agreement confirms its commercial nature. For example, the Plaintiffs agreed that they had "a long-standing commercial relationship [with Palace Elite] since at least February 1, 2016 pursuant to a series of [eighteen] contracts and ancillary agreements entered into" between the Parties totaling US $1,409,850. Ex. A (Compl. at Ex. A). Further, the purpose of the Mutual Release and NDA Agreement was to "resolve and any and all existing or potential disputes between" Plaintiffs and Palace Elite, and its affiliated entities, arising from the Parties commercial dealings with each other, including in regards to the abovementioned contracts related to resort services, membership rights, and related commercial obligations. *Id.* at Released Claims definitions. Thus, the Mutual Release and NDA Agreement evidences a commercial transaction.

25. The final element requires "at least one foreign party". *Cosgun v. Seabourn Cruise Line Ltd. Inc.,* 666 F. Supp. 3d 1270, 1280 (S.D. Fla. 2023), *appeal dismissed,* No. 23-11396, 2023 WL 4112993 (11th Cir. June 22, 2023) (emphasis removed; citing another source). It is uncontested that Palace Elite Resorts S.A. de C.V. is a Mexican company headquartered in Cancun, Mexico, making it a foreign party. Compl. 3-4. Jose Gibran Chapur Dajer is a Mexican citizen, also making him a foreign party. Ex. C (Jose Gibran Chapur Dajer Passport).

\* \* \*

Thus, the Mutual Release and NDA Agreement "fall[s] under the Convention."

## B. The Arbitration Agreement "Relates To" The Case

26. The Eleventh Circuit has interpreted the "relates to" language of Section 205 to allow "broad removability of cases" to federal court. *Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London,* 359 F. Supp. 3d 1253, 1260 (S.D. Fla. 2019). Indeed, the arbitration agreement "need only be sufficiently related to the dispute such that it

12

*conceivably* affects the outcome of the case." *Id.* (emphasis in original); *Nipro Corp. v. Verner,* No. 19-62121-CIV, 2021 WL 8894430, at *6 (S.D. Fla. June 24, 2021) (same). "[A]s long as the argument that the case 'relates to' the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction." *Ytech 180 Units Miami Beach Invs. LLC* v. *Certain Underwriters at Lloyd's, London,* 359 F. Supp. 3d 1253, 1260 (S.D. Fla. 2019) (quoting another source).

In this case, the Removing Defendants' argument that this case relates to the arbitration agreement in the Mutual Release and NDA Agreement is far from immaterial or frivolous. To the contrary, it cuts to the heart of the matter. As discussed above, the Mutual Release and NDA Agreement directly impacts the outcome of the case, both in terms of remedies and jurisdiction. According to the Plaintiffs, the Mutual Release and NDA Agreement is the basis for some of their state law claims. Compl. 84-94. Indeed, Plaintiffs specifically request the Miami Dade Circuit Court declare the Mutual Release and NDA Agreement "void and invalid". Compl. | 95. For these reasons, Removing Defendants have established the case "relates to" the arbitration agreement in the Mutual Release and NDA Agreement.

\* \* \*

27. Removing Defendants, thus, satisfy the two-step inquiry to establish jurisdiction upon removal under the Convention. Removal is proper to this Court.

## IV. VENUE IS PROPER IN THIS COURT

28. This Court is the proper federal court for removal because the Circuit Court of the 11th Judicial Circuit in and for Miami Dade County, Florida is located within the district of the United States District Court for the Southern District of Florida. 28 U.S.C. § 1441(a).

13

## V.     CONCLUSION

29.     For these reasons, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1331, 1441(c), and 1446, and 9 U.S.C. § 205, Removing Defendants have satisfied the procedural requirements for removal, and this Court has original subject matter jurisdiction over this action pursuant to 9 U.S.C. §§ 202, 203 and 205 and 28 U.S.C. § 1331.

30.     Accordingly, Defendants request that the above-captioned action be removed to this Court for determination of all issues, trial, and judgment.

DATED: August 19, 2025                     Respectfully submitted,

                          QUINN EMANUEL URQUHART & SULLIVAN LLP

          By: /s/ David M. Orta

          David M. Orta
          FL Bar Number 35750
          2601 S. Bayshore Drive
          Miami, Florida 33133
          305-402-4880
          davidorta@quinnemanuel.com

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2025, a true and correct copy of the

foregoing document was as noted below.


Via Electronic Mail and First Class Mail

    Peter Kaufman
    Jesse Creed
    Hunter Norton
    PANISH | SHEA | RAVIPUDI LLP
    11111 Santa Monica Boulevard, Suite 700
    Los Angeles, California 90025
    pkaufman@panish.law
    jcreed@panish.law
    hnorton@panish.law

    John Manly
    MANLY, STEWART & FINALDI
    19100 Von Karman Ave. #800
    Irvine, CA 921612
    jmanly@manlystewart.com


    By: */s/ David M. Orta*

       David M. Orta
       FL Bar Number 35750

15

# EXHIBIT A



# JUAN FERNANDEZ-BARQUIN, ESQ.
## CLERK OF THE COURT AND COMPTROLLER
## OF MIAMI-DADE COUNTY

Contact Us     My Account     My Desk

---

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

The Clerk of the Court and Comptroller is thrilled to announce the launch of the new Online Case Search application within the next few days.

**The legacy system will be retired after the launch.**

« BACK

**Not all search results will be displayed on-line. For example, the following case types (Sealed, Juvenile, Adoption and Mental Health Cases) may or may not be in existence and may or may not be viewable by the public pursuant to Florida Supreme Court Mandate and the corresponding** Access Security Matrix.

---

**PAUL AKEO ET AL VS PALACE RESORTS, LLC ET AL**

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2025-015958-CA-01 | **Filing Date:** | 08/15/2025 |
| **State Case Number:** | 132025CA01595801GE01 | **Judicial Section:** | CA08 - Downtown Miami - Judge Watson, Robert |
| **Consolidated Case No.:** | N/A | **Court Location:** | 73 West Flagler Street, Miami FL 33130 |
| **Case Status:** | OPEN | **Case Type:** | Libel / Slander |

---

:= **Related Cases**                                        **Total Of Related Cases: 0    +**

---

👥 **Parties**
**Total Of Parties: 8    "**

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Plaintiff | Akeo, Paul | **B#.:....(Bar Number)548421**<br>N;.....(Attprney.Narne)Kaufman, Peter Lawrence | |
| Plaintiff | Akeo, Christy | **.B#:....(Ba.r.Num.ber) 548421**<br>.N:.....(Attomey..Name)Kaufman, Peter Lawrence | |
| Defendant | PALACE RESORTS, LLC | | |
| Defendant | PR GLOBAL RESERVATIONS, LLC | | |
| Defendant | PALACE ELITE, a Mexican corporation | | |
| Defendant | PALACE ELITE RESORTS S.A. de C.V., a Mexican corp | | |
| Defendant | GIBRAN CHAPUR DAJER, JOSE | | |
| Defendant | PALACE COMPANY HOLDINGS | | |

---

A  **Hearing Details**
**Total Of Hearings: 0    —**

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|

---

🔊 **Dockets**
**Total Of Dockets: 25    —**

1/4

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 20 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX #12.** Parties: GIBRAN CHAPUR DAJER JOSE |
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 19 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX# 11.** Parties: PALACE RESORTS LLC |
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 18 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX #10.** Parties: PALACE ELITE RESORTS S.A. de C.V. a Mexican corp |
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 17 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX #9.** Parties: PALACE COMPANY HOLDINGS |
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 16 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX #8.** Parties: PALACE ELITE a Mexican corporation |
| | | 08/19/2025 | | 20 Day Summons Issued | Service | |
| | 15 | 08/19/2025 | | ESummons 20 Day Issued | Event | **RE: INDEX # 7.** Parties: PR GLOBAL RESERVATIONS LLC |
| | 13 | 08/19/2025 | | Receipt: | Event | **RECEIPT#:327O110 AMT PAID:$60.00 NAME:KAUFMAN, PETER LAWRENCE 11111 SANTA MONICA BLVD STE 700 LOS ANGELES CA 90025-3341 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$60.00 RECEIPT DATE:08/19/2025 REGISTER#:327 CASHIER:EFILINGUSER EFILING #:229567864** |
| | 14 | 08/18/2025 | | Emergency Motion | Event | **FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST ARBITRATION INITIATED BY DEFENDANTS** |
| | 12 | 08/18/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| | 11 | 08/18/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
|  | 10 | 08/18/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
|  | 9 | 08/18/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
|  | 8 | 08/18/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
|  | 6 | 08/18/2025 | | Order: | Event | **DENYING PLAINTIFFS EMERGENCY MOTION FOR TEMPORARY INJUNCTION** |
| | 3 | 08/16/2025 | | Receipt: | Event | **RECEIPT#:3290250 AMT PAID:$403.50 NAME:KAUFMAN, PETER LAWRENCE 11111 SANTA MONICA BLVD STE 700 LOS ANGELES CA 90025-3341 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3102-MULTIPLE DEFENDANT 1 $2.50 $2.50 TENDER TYPE:EFILINGS TENDER AMT:$403.50 RECEIPT DATE:08/16/2025 REGISTER#:329 CASHIER:EFILINGUSER EFILING #:229559379** |
|  | 7 | 08/15/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
|  | 5 | 08/15/2025 | | Emergency Motion | Event | **FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
|  | 2 | 08/15/2025 | | Complaint | Event | |
|  | 1 | 08/15/2025 | | Civil Cover Sheet - Claim Amount | Event | |

«BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

About Us



Juan Fernandez-Barquin, Esq.
Clerk of the Court and Comptroller
of Miami-Dade County

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2025 Clerk of the Court & Comptroller of Miami-Dade County. All rights reserved.

Case 1:25-cv-23733-XXXX Document 1-1 Entered on FLSD Docket 08/28/2025 Page 131 of 243

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

_____

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Paul Akeo, Christy Akeo</u>
Plaintiff                                                                     Case # _____
                                                                               Judge  _____

vs.

<u>PALACE RESORTS, LLC, PR GLOBAL RESERVATIONS, LLC, PALACE ELITE, a Mexican corporation, PALACE ELITE RESORTS S.A, de C.V., a Mexican corp, JOSE GIBRAN CHAPUR DAJER, PALACE COMPANY HOLDINGS</u>
Defendant

_____

### II.    AMOUNT OF CLAIM
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

□  $8,000 or less
□  $8,001 -$30,000
□  $30,001- $50,000
□  $50,001- $75,000
□  $75,001 -$100,000
|X| over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
Kl Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    K Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

-2-

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No IX]

**IV.**     **REMEDIES SOUGHT** (check all that apply):
KI Monetary;
K Nonmonetary declaratory or injunctive relief;
K Punitive

**V.**     **NUMBER OF CAUSES OF ACTION: [   ]**
(Specify)

    5

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    KI no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    K no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    K yes
    ☐ no

**IX.**     **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    KI no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Peter Lawrence Kaufman        Fla. Bar # 548421
        Attorney or party                 (Bar # if attorney)

Peter Lawrence Kaufman           08/15/2025
  (type or print name)             Date

Case 1:25-cv-23733-XXXX   Document 1-1   Entered on FLSD Docket 08/28/2025   Page 134 of 243

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.

PAUL AKEO and CHRISTY AKEO,

              Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

              Defendants.

## COMPLAINT

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through

undersigned counsel, file this complaint against Defendants Palace Resorts, LLC, Palace Elite

Resorts, PR Global Reservations, LLC, Jose Gibran Chapur Dajer, Palace Elite Resorts S.A. de

C.V. (collectively, "Defendants" or "Palace Resorts") and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Paul and Christy Akeo are a married couple residing in the State of
Michigan.

2.      Defendant PR Global Reservations LLC is a Florida limited liability company

authorized to conduct business in Florida, with its headquarters in Miami-Dade County.

Defendant PR Global Reservations LLC is the entity whom the Plaintiffs made reservations

related to the Palace Elite Resorts membership rights described herein.  Jurisdiction is proper over PR Global Reservations LLC because Defendant PR Global Reservations LLC (2) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State, (2) had an office in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State.

3.    Palace Elite Resorts is a Mexican company headquartered in Cancun, Mexico. Jurisdiction is proper over Palace Elite Resorts because Defendant Palace Elite Resorts (1) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State through its agents, (2) had an agency in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic marketing, promotion, and sales of Palace Elite membership rights and bookings for Palace Elite members in this State.

4.    Palace Elite Resorts S.A. de C.V. is a Mexican company headquartered in Cancun, Mexico.  Jurisdiction is proper over Palace Hotels because Defendant Palace Elite Resorts S.A. de C.V. (1) operated, conducted, engaged in, or carried on a business in this State by marketing, promoting, selling, reserving, and booking hotel rooms for Palace Resort hotels in this State through its agents, (2) had an agency in this State, (3) committed a tortious act within this State, including making defamatory statements and continuing malicious prosecution referenced herein through its agents in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic marketing, promotion, and sales of Palace Elite membership rights and bookings for Palace Elite members in this State.

5.    Defendant Jose Gibran Chapur Dajer is an individual with a permanent residence and domicile in the State of Florida.  Mr. Chapur was at all relevant times the chief executive

2

officer of Palace Resorts. Jurisdiction is proper over Mr. Chapur because he (1) operated, conducted, engaged in, or carried on a business in this State by continuing the captivity of the Akeos in Mexican jail while located in this State as well as conducting operations of the Palace Resorts in this State, (2) had an office in this State, (3) committed a tortious acts within this State, including making or authorizing the making of defamatory statements and instituting, continuing or authorizing the institution or continuation of the malicious prosecution referenced herein while physically located in this State, and (4) was engaged in substantial and not isolated activity within this State through the continuous and systematic conduct of business in this State, ownership of property in this State, and residence and domiciliary in this State.

6. Venue is proper in Miami-Dade County under Fla. Stat. § 47.011 because the cause of action accrued in part in this county and at least one Defendant has its principal U.S. office here.

**GENERAL ALLEGATIONS**

7. On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun. They were then forced to spend a month in detention in a maximum security prison in Cancun Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

8. The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown. Palace Resorts had waged a secret lawfare campaign against the Akeos in Mexico in retaliation for the Akeos' success in persuading four separate American credit card companies that Palace Resorts breached its agreements with the Akeos. Those credit card companies sided with the Akeos and refunded them over a hundred thousand dollars.

9. The arrest came as a complete surprise to the Akeos. Sitting in Mexican jail, separated from each other, under the control of a foreign and notoriously corrupt judicial system, the Akeos languished for a month without knowing if they would spend the next decade or

3

lifetime in Mexico prison. Worse, the Mexican prison CERESCO is one of the most dangerous prisons in Mexico, notable for its inhumane conditions, violence, and crime. Paul and Christy Akeo were hardworking Americans with a family. Paul Akeo was a Navy veteran who continued his public service after discharge by working for the Michigan State Police.

10. How the Akeos landed in Mexico jail is a long, twisted saga going back nearly a decade. The Akeos have entered into six separate membership interest agreements with Palace Resorts beginning in February 2016. Palace Resorts expressly considered and described the Akeos as "socios mayoristas" and "membresia mayorista" - "wholesale customers" and "wholesale members." Palace Resorts sold the Akeos membership interest agreements at exorbitant prices with huge wholesaler volumes knowing that the Akeos would resell bookings to third parties, as long as the Akeos did not do so through third-party booking agencies. The most recent contract, for example, dated November 21, 2021 was for 1,217 bookings for $1,369,850. Obviously, that enormous capacity of bookings - amounting to 23 years of stays at the all-inclusive hotels - far exceeds the volume of hotel bookings any single family could ever make. And Palace Resorts was blatantly honest about the fact that the Akeos were wholesalers of bookings. The highest level executive for Palace Elite memberships, Juan Carlos Zahoul, approved this specific contract to upgrade the membership status of "socios mayoristas Akeo" (i.e. wholesale customers Akeo) in an internal private text message. Furthermore, Palace Resorts incentivized wholesalers like the Akeos by giving them bonus stays through its Referral Program Plus. The more "referrals" the Akeos made of guests staying at the hotel, Palace Resorts was required to grant the Akeos "bonus stays" - even more weeks than originally granted.

11. Indeed, Palace Resorts gave the Akeos "special authorization" for addenda to the standard referral program that was required to be kept "confidential." These "special authorizations" created incentives for the Akeos to "refer" guests in mass quantities by selling as a wholesaler those bookings.

12. When the Akeos made bookings for their referrals, the bookings were made in the name of the guests and under the guests' credit card numbers.

4

13. The financial benefit to Palace Resorts was that the Akeos paid it millions of dollars in downpayments and regular monthly payments over a six year period. In addition to that sum, the Palace Resorts reaped over $4 million in bookings that were paid to Palace Resorts directly as a result of the Akeos' membership.

14. After selling an upgrade to the "socios mayoristas Akeo" (i.e. wholesale customers Akeo) on November 21, 2021, the Akeos did what Palace Resorts knew and encouraged them to do: continued to wholesale the bookings it paid upfront for to third parties. Palace Resorts sold the Akeos the upgrade and took their money, but then sought to renege on the agreement within months.

15. On March 10, 2022, Palace Resorts' general counsel, Isaac Carrasco Martinez, sent the Akeos a "cease and desist letter" to the Akeos in the United States. In the letter, Mr. Martinez claimed that the Akeos had breached their membership agreement by publishing with the intent to profit the rates and benefits offered to the Akeos. Mr. Martinez also claimed that the Akeos used the trademarks, logos, typography, and commercial brand of the Palace Elite without authorization. Of course, Palace Resorts not only knew, but encouraged and intended for the Akeos to use the massive volume of weeks sold to them in this way as "socios mayoristas." Mr. Martinez ignored these facts in his letter, as well as the clear express provision in the Referral Program Plus that "rewards nights are transferable" to other people.

16. Mr. Martinez also ignored that the Akeos had been told at multiple "sales update meetings" with Palace Resorts where employees expressly told the Akeos they can use Facebook to advertise to help offset monthly payments to Palace Resorts. Other people were told by Palace as well that this was a way to help finance the membership.

17. Mr. Martinez claimed to have given "formal notice" that "Palace Elite has proceeded to definitely, immediately and irrevocably terminate the following benefits: (i) Unlimited Referral Program, (ii) Regular Referral Program and; (iii) Bonus weeks, which were part of the Agreement." In other words, Mr. Martinez unilaterally cancelled benefits that Palace Resorts gave Plaintiffs to induce them to upgrade their "wholesale" membership back in

5

November 2021.

18. The Akeos had outstanding reservations for their referrals at the time. The Akeos told the Palace Resorts that they had done nothing wrong to breach the contract but felt that the Palace had given them no other option but to sign a waiver of benefits. To protect those bookings for their guests, the Akeos requested that all outstanding bookings be honored.

19. On April 7, 2022, Palace Resorts promised to honor the outstanding reservations of the guests under the referral program.

20. On April 8, 2022, having extended their benefits to guests and referrals, the Akeos were coerced into signing a "waiver of benefits" that waived all unlimited referral and regular referral benefits as well as any bonus weeks. But in exchange, Palace Resorts promised to "respect and honor all Bonus Weeks that were already generated by the use of the aforementioned Referral Programs that, as of this date, have already been booked."

21. After receiving the Akeos' signature, on April 16, 2022, Palace Resorts began breaching its initial agreement and the coerced second addendum. Palace Resorts gave notice to the Akeos that it will revoke the promise to honor the outstanding bookings by unilaterally deciding to downgrade all the reservations without the benefits the Akeos had paid for and were promised.

22. Then, six weeks later, Palace Resorts simply cancelled the outstanding bookings entirely, without notice or justification.

23. On June 2, Christy called Palace Resorts to inquire and was told to contact the legal department. The legal department told Christy it could not help her and she should contact member services. Member services refused to permit Christy to speak to a supervisor and referred her back again to legal. The legal department stopped responding to Christy. On June 6, a supervisor at member services told Christy that the legal department instructed member services to cancel all rooms on June 1, including those promised to be honored.

24. On August 23, 2022, the Akeos, through counsel they had to retain, made a request for a refund from Palace Resorts given its breach of the agreement. The Akeos received

6

no response.

25.     After receiving no response to these inquiries, the Akeos were left with no choice but to dispute the charges with the credit card companies on the basis that the Akeos paid for a service that Palace Resorts had not provided.

26.     The Akeos disputed the charges the basis that the goods and services were not provided.  The Akeos never told the credit companies that they did not recognize the charges or that the charges were fraudulent.  Below is a screenshot of the copy of an exemplar credit card dispute form completed by the Akeos:



27.     As described above, the express basis of the dispute was that the "product or service had not been received," and the Akeos clearly stated this was not a "fraud" case, i.e. charges fraudulently made by a third party.

28.     Upon infonnation and belief, the credit card companies provided copies of the credit card disputes made by the Akeos to Palace Resorts or otherwise notified Palace Resorts that the Akeos challenged the charges by Palace Resorts on the basis that the services were not provided as agreed-upon.  Upon information and belief, the credit card companies gave Palace Resorts an opportunity to respond to the Akeos' claims in the dispute resolution process.

29.     At no time did the Akeos ever claim that they did not recognize these charges, as

7

though some third-party fraudulently made the charges. Upon information and belief, at no time did the credit card companies ever tell Palace Resorts that the basis of the Akeos' dispute of the charges was that they did not recognize the charges.

30. Upon information and belief, Palace Resorts either provided information to the credit card companies showing that Palace Resorts had cancelled the guest reservations in violation of its agreement with the Akeos or simply did not respond to the charges as requested by the credit card companies. Upon information and belief, in the event Palace Resorts did not respond, it was because Palace Resorts knew the basis of the disputes (i.e. services were not rendered as agreed upon) was true and had no legitimate, good-faith response.

31. After completing the formal dispute resolution process, in or around October 2022, the credit companies sided with Akeos and refunded the Akeos $116,587.84 they previously paid Palace Resorts. These credit card companies sided with two individuals who make personal charges over, upon information and belief, a giant, multi-billion dollar corporation that conducts hundreds of millions of dollars in credit card transactions with the credit card companies every year.

32. Of note, these payments all relate to the November 2021 membership agreement, which is the ones that Akeos claimed Palace Resorts did not honor. The Akeos did not dispute charges related to payments under other membership agreements.

33. In response to the chargebacks, the Palace Resorts began a secret lawfare campaign based on defamatory and malicious accusations against the Akeos.

34.     In or around March 2023, Palace Resorts filed a false accusation against Plaintiffs with the public prosecutor.  Palace Resorts falsely accused the Akeos of fraud on the basis that the Plaintiffs disputed the credit card charges as "unrecognized":[1]

QUINTO: Ahora, entre el 31 de agosto y el 4 de noviembre de 2022 se hizo del conocimiento de mi representada por medio de la Institution Financiers American Express, la notification de 13 contracargos respects 13 pagos realizados a mi representada, los cuaies fueron realizados en razon de 13 disputes presentadas per el investigado Paul K Akeo ante American Express, mediante los cuaies desconoce 13 pagos realizados con una tarieta de la referida institution de la cual es titular el Investigadc y pages que fueron autorizados a favor de mi representada, contracargos denominados en ddlares americanos (monec'a de curso legal de los Estados Uridos de America) que se describen a continuation:

35.     In the criminal complaint, Palace Resorts acknowledged the difference between civil and criminal fraud, specifically that criminal fraud requires intentional deception for the public at large.  In support of its accusation of intentional deception necessary to support the crime of fraud, Palace Resorts falsely alleged that "[O]nce the benefits were received, [Paul Akeo] later notified American Express that they were unaware of the charge and, under the pretense of non-compliance, filed a dispute with American Express."

36.     At the same time, the Palace Resorts began to slander the Akeos to guests of the hotel.  On May 17, 2023, the Akeos, through their legal representative, sent a cease and desist

---

[1] Roughly translated to: "FIFTH: Now, between August 31 and November 4, 2022, my client was notified by American Express Financial Institution of 13 chargebacks regarding payments made to my client, which were made due to disputes filed by American Express, of 13 chargebacks regarding 13 payments made to my client, which were made due to 13 disputes filed by the investigated party, Paul K Akeo, with American Express, through which he *did not recognize* 13 payments made with a card from the aforementioned institution of which he is the holder and payments that were authorized in favor of my client, chargebacks denominated in US dollars (legal tender of the United States of America) which are described below:

letter to Palace Resorts, demanding that they cease slandering the Akeos. The Akeos explained that if Palace Resorts continues to slander the Akeos to guests, the Akeos would have no choice but to publicly defend themselves by presenting their side of the story.

37. Palace Resorts did not respond to the letter.

38. In or around the beginning of 2023, Christy Akeo joined a private Facebook group to learn from others what Palace Resorts was doing to others. At the time she joined it, there were approximately 200-300 members. The founder of the Facebook group asked Christy to become an administrator of the group. The Facebook group rapidly attracted thousands of similar victims of the Palace Resorts' coercive and aggressive timeshare tactics. Christy was transparent about the purpose of the group: If members were happy with their contracts, great, but if members were unhappy with their contracts, Christy's goal was to tell her side of the story and help others facing coercive and aggressive timeshare tactics by Palace Resorts.

39. Palace Resorts was rattled by the success of Christy's Facebook group and began a lawfare campaign to retaliate against the Akeos.

40. Upon information and belief, shortly after Christy Akeo's Facebook group and after nearly a year of making its criminal complaint, Palace Resorts pressured the Public Prosecutor to obtain an arrest warrant for the arrest of the Akeos in retaliation for her transparency and disclosure efforts. In fact, on the very first day that the Akeos were in Mexico court on March 5, 2025, a Palace Resorts official said to the Akeos that all the Akeos needed to do to avoid criminal charges was to remove the Facebook group Palace Resorts detested so much.

41. On March 24, 2024, Mexican authorities issued a warrant for the arrest of the Akeos.

42. On September 5, 2024, Palace Resorts sent a cease and desist letter from its location in Florida to the Akeos in Michigan. In the letter to the Akeos, Palace Resorts was aware of the criminal complaint it made and the arrest warrant that was issued against the Akeos, both based on false accusations, but concealed those facts from the Akeos. Upon information

10

and belief, Palace Resorts' purpose in concealing that information was to lure the Akeos down to Mexico, procure their unlawful arrest, and then extract revenge and retribution against them.

43. On March 3, 2025, Interpol published a red notice for the arrest of Paul Akeo at the request of Mexican authorities. An Interpol notice is required to summarize the facts of the case, including a succinct and clear description of the criminal activities of the wanted person, including the time and location of the alleged criminal activity. The Interpol notice repeated Palace Resorts' false accusation, namely that Akeo fraudulently cancelled American Express charges for his Palace membership as "desconocidas" (i.e. "unknown") to Akeo.

44. On March 4, 2025, as the Akeos were passing through Mexican immigration, they were apprehended by Mexico authorities and thrown in jail - all on the basis of Palace Resorts' false accusations of credit card fraud.

45. To keep them in jail, the public prosecutor then relied upon Palace Resorts' false accusations as the basis of bringing the charges against, arresting, and detaining the Akeos. Specifically, the public prosecutor based the fraud charges on Palace Resorts' false allegation that Paul Akeo disputed the charges as "desconocidas por el titular de la cuenta" (i.e. the charges were unknown to the owner of the credit card). The Public Prosecutor publicly repeated this allegation as the core basis of the criminal charges, accusing the Akeos of fraud for "stating that said charges were unknown" (which is false), or they were "unaware of the charges" (which is also false), or that the Akeos "noted that these [charges] were not recognized by the cardholder" of the American Express.

46. There was a media firestorm in the United States after news of Palace Resorts' efforts to jail the Akeos became public.

47. The Akeos languished in maximum security prison in Cancun, Mexico, separate and apart from each other, unable to speak with each other or console one another. The prison conditions were horrific. The walls were rubbled and run down, the prison was overcrowded with violent criminals, the toilets didn't flush, and the food was untouchable. Worse, they were scared, terrified, and frightened that they may never go home again. They were terrified they

would never be repatriated to the United States or see their children again.

48. President Donald J. Trump assigned his Special Envoy for Hostage Affairs Adam Boehler to work to obtain the release of the Akeos from their unlawful detention. Congressmember Tom Barrett of Michigan flew down to Cancun to assist with the Akeos' release from Mexico prison after their deteriorating physical condition. Congressmember Barrett spoke out publicly about the unlawful detention of the Akeos, describing the claims by Palace Resorts as a "contract dispute over a timeshare."

49. But Palace Resorts had weaponized the Cancun judiciary against the Akeos based on a knowingly false accusation. Place Resorts' false accusations against the Akeos were voluntarily made to the Public Prosecutor prior to the institution of any criminal charges. At the time Palace Resorts made the false accusations, there were no judicial proceedings at all, nor was there even a criminal investigation pending against the Akeos.

50. In response to the firestorm, Palace Resorts defamed the Akeos in media outlets throughout the United States. Palace Resorts began to repeat its false accusation, telling American media outlets that the Akeos had "fraudulently disputed legitimate credit card charges" and had undertaken "fraudulent actions that included unjustifiably disputing credit card payments." Palace Resorts knew full well that the credit card companies had sided with the Akeos in their dispute. Mexican authorities also repeated the falsehood to the American media, saying that the credit card disputes were done "maliciously by [claiming] not recognizing the charges."

51. After being jailed for 30 days in Mexico maximum security prison, the Akeos were released after dismissal of criminal charges. As a condition to agreeing to drop its false accusations against the Akeos, Palace Resorts coerced the Akeos to enter into an invalid contract requiring the Akeos to make a payment to Palace Resorts' foundation and to keep what happened secret. The contract is clearly invalid, as it was entered into by the Akeos - American citizens in maximum security prison in a foreign country whose native language is not English who were induced to sign this agreement to procure their freedom - under clear duress. It is textbook

duress.

52.     Palace Resorts CEO Jose Gibran Chapur Dajer was directly responsible for all aspects of the negotiation for the release of the Akeos.  Chapur negotiated the conditions for the release of the Akeos directly with United States government officials, essentially holding the Akeos hostage in exchange for his pound of flesh.

53.     Chapur made clear to U.S. government officials that he would not consent to the release of the Akeos absent a contractual agreement with the Akeos to remove the Facebook group and posts and agree to nondisparagement and confidentiality.  Chapur also personally negotiated the amount the Akeos would be required to repay as a condition to their release from Mexico jail.  These negotiations were not in the public interest, but were corruptly solely for the direct private benefit of Palace Resorts and Chapur.

54.     After the Akeos' daughter persuaded the administrator of the Facebook group to delete it to save the Akeos, their daughter started a Facebook group called "Free the Akeos" to advocate for the release of her parents.  Over 8,000 people joined that Facebook group in 10 days.  Palace Resorts insisted as a condition to their release from Mexico maximum security prison that the Akeos' daughter permanently disband the "Free the Akeos" Facebook group.

55.     This contract between the Akeos and Palace Resorts was not a plea agreement, admission of guilt, or any plea for mercy.  The Akeos expressly maintained their innocence in the contract.  The Akeos signed the contract under duress.

56.     The contract was the product of Palace Resorts' malicious efforts to weaponize the Mexican criminal prosecution system against the Akeos -  based entirely on false accusations -  for retaliation and private gain.  It was a private contract signed by the Akeos under duress, literally while they were in a foreign maximum security prison, after being released of handcuffs solely to sign, by a Mexican federal police officer with a gun by his side.  Palace Resorts told the Akeos that their signature on the private contract between Palace Resorts and the Akeos was an express condition to be free from jail.

57.     After securing this private agreement in favor of a wealthy and powerful Mexican

13

business, the public prosecutor formally abandoned the criminal proceedings against the Akeos and the charges were dismissed.

## FIRST CLAIM FOR RELIEF

### (DEFAMATION)

58. Plaintiffs reallege and incorporate all allegations into this claim for relief.

59. Palace Resorts published false statements of fact concerning Plaintiffs to one or more third parties, specifically:

      a. Palace Resorts falsely accused Plaintiffs of disputing the credit card charges placed by Palace Resorts on the basis that such charges were "not recognized."

      b. Palace Resorts falsely accused Plaintiffs of disputing the credit card charges without justification or unjustifiably.

60. These statements were published and repeated on numerous occasions, specifically:

      a. Palace Resorts' criminal complaint with the Public Prosecutor's Office

      b. Palace Resorts' witness interviews by Public Prosecutor's Office

      c. The Interpol Red Notice

      d. Press releases by the Palace Resorts distributed to the media during the unlawful detention of the Akeos

      e. Direct statements or comments to media outlets nationwide by the Palace Resorts during and subsequent to the unlawful detention of the Akeos.

61. These statements are actually false as the Akeos never disputed credit card charges on the basis that such charges were not recognized. In addition, the gist of the public statements made by Palace Resorts in March 2022 that the credit card disputes were without justification or unjustifiably were false as the gist of those statements conveyed a materially different meaning than the truth, specifically that the Akeos disputed the charges through legitimate means, Palace Resorts responded, and the credit card companies sided with the Akeos, determining the disputes were justified and reversing the charges.

14

62.     These statements were not privileged and were published with actual malice. Specifically, Palace Resorts maliciously made a criminal complaint with the Public Prosecutor to institute a criminal proceeding against the Akeos for the primary purpose of injuring and retaliating against the Akeos.  In doing so, Palace Resorts also acted recklessly and without regard for whether the proceeding was justified on the basis that Palace Resorts concocted and fabricated a criminal fraud claim by alleging that the Akeos disputed the credit card transactions on the basis of not recognizing the charges.  Palace Resorts knew this allegation was false based on documents it had received from the credit card companies.  Palace Resorts lacked probable cause to institute or continue the proceedings because Palace Resorts knew it had lied to the Public Prosecutor in order to initiate and continue criminal proceedings.  Palace Resorts' complaint also acknowledged that the factor that singlehandedly distinguished civil fraud from criminal fraud with respect to the Akeos' conduct was the false accusation that the Akeos did not recognize the charges, making them seem like they are con-artists and fraudsters who pose a danger to the general public.  Palace Resorts sought to retaliate against the Akeos for legitimately disputing the credit card charges placed by Palace Resorts.  The statements made to the press after the arrest of the Akeos were also made with malice and/or negligently.

63.     The false statements were defamatory per se.  The false statements also tended to subject Plaintiffs to contempt, ridicule, and disgrace and otherwise injure Plaintiffs' reputation. The defamatory statements harmed Plaintiffs' reputation and caused actual damages, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

64.     Plaintiffs also seek an award of punitive damages for the malicious defamatory statements, costs, and all other relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (MALICIOUS PROSECUTION)

65.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

66.     Palace Resorts acted with malice and without probable cause in making a criminal

15

complaint against Plaintiffs with the Public Prosecutor's office and continuing the accusations against Plaintiffs.

67. Palace Resorts filed and continued the complaint against the Plaintiffs for the primary purpose of injuring the Plaintiffs and recklessly and without regard to whether the proceeding was justified. In fact, Palace Resorts' accusations were demonstrably false and were made with the intent of bringing the full weight of the Mexican criminal justice system down on the Plaintiffs as punishment, retaliation, and retribution for Plaintiffs' success in their credit card disputes.

68. At the time Palace Resorts made the criminal complaint and all relevant times it continued the criminal complaint against the Akeos, Palace Resorts did not have knowledge of facts or circumstances sufficiently strong to support a reasonable belief that the Akeos had committed a criminal offense. In fact, Palace Resorts had to concoct and fabricate a lie about the conduct of the Akeos in order to support the claim that a crime had occurred.

69. Palace Resorts instituted and continued the criminal proceedings against the Akeos because such criminal proceedings resulted directly and in the natural and continuous sequence from its actions, so that it reasonably can be said that, but for his or her actions, the proceeding would not have been instituted or continued.

70. The criminal proceedings terminated in favor of Plaintiffs, as the Public Prosecutor formally abandoned the claims without a conviction or a sentence and Plaintiffs never admitted to any crime.

71. The malicious institution and continuation of criminal proceedings directly and in natural and continuous sequence produced or contributed substantially to producing loss, injury, or damage, specifically emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

72. Plaintiffs also seek an award of punitive damages for the malicious prosecution, costs, and all other relief the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**

**(ABUSE OF PROCESS)**

73. Plaintiffs reallege and incorporate all allegations into this claim for relief.

74. Palace Resorts made an illegal, improper, or perverted use of process against the Plaintiffs by making false accusations against the Plaintiffs in order to procure their arrest and detention and then conditioning their freedom and release from detention on Plaintiffs' agreement to contractual terms without any regard to the actual charges that benefit Palace Resorts. For example, Palace Resorts conditioned the release and freedom of Plaintiffs from maximum security prison on Plaintiffs' agreement (1) to keep confidential the criminal proceedings against the Plaintiffs, (2) not to make or publish any statements (even *non-disparaging* ones) regarding Palace Resorts, essentially conditioning their freedom on a complete gag order, (3) release all claims against Palace Resorts of any kind, and (4) to remove any statements Plaintiffs ever made regarding Palace Resorts from any website, webpage, blog or other website. These agreements had absolutely nothing to do with the criminal fraud claim Palace Resorts instituted and continued against the Akeos, which rested on the false premise that the Akeos disputed credit card charges on the basis of not recognizing those charges. The criminal complaint did not involve criminal defamation (if such a thing exists) or any civil disputes between the parties. Palace Resorts insisted that Plaintiffs remove Facebook posts, delete a Facebook group for Palace Resort members, and remove members from the Facebook group as a condition to their freedom from maximum security prison.

75. Palace Resorts had an ulterior motive or purpose in exercising the illegal, improper, or perverted process by seeking to institute and continue the criminal process in order to extract private gain and financial benefits and to suppress negative statements the Akeos had a right to make about the company. The ulterior motive or purpose is clear from the fact that Palace Resorts extracted a private gain or benefit as a condition to Plaintiffs' freedom from maximum security Cancun prison.

76. As a result of Defendant's clearly improper, illegal, and perverted actions,

Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

77.     Plaintiffs also seek an award of punitive damages for the malicious prosecution, costs, and all other relief the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

78.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

79.     Defendants acted extremely and outrageously in:

a.     Making false accusations against Plaintiffs as described herein to the Mexico prosecutor;

b.     Continuing to press the criminal charges against Plaintiffs knowing that the basis of the Interpol Notice and the criminal charges was false;

c.     Insisting that Plaintiffs affix their signatures on the Agreement under physical duress as a condition to their release from Mexico prison;

d.     Inflicting emotional distress on the Plaintiffs by continuing to press the criminal charges, knowing that doing so keeps Plaintiffs imprisoned, in order to extract private benefits and personal gain; and

e.     Seeking to enforce the Agreement knowing that Plaintiffs' signatures were procured by physical duress.

80.     The aforementioned conduct goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable in a civilized community.

81.     As a result of Defendants' conduct, Plaintiffs have suffered severe emotional distress, having survived 30-days in maximum security prison in a foreign country next to drug dealers and violent criminals.

82.     As a result of Defendant's clearly improper, illegal, and perverted actions, Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

83.     Plaintiffs also seek an award of punitive damages for intentional infliction of emotional distress, costs, and all other relief the Court deems just and proper.

### FIFTH CLAIM FOR RELIEF

### (DURESS)

84.     Plaintiffs reallege and incorporate all allegations into this claim for relief.

85.     On April 4, 2024, Plaintiffs were imprisoned in Mexico. An officer with a gun carried Plaintiffs to a room. Plaintiffs understood that Palace Resorts threatened Plaintiffs with criminal prosecution unless Plaintiffs sign each and every provision of a Mutual Release and Settlement Agreement. Neither Mexico nor any subdivision thereof was a party to this Agreement. Neither Mexico or any subdivision thereof, or the Mexican public, received any benefit from the Agreement. The sole party to receive a benefit from the Agreement was Palace Elite and its affiliates.

86.     Palace Resorts had wrongfully threatened Plaintiffs with continuing and maintaining their criminal prosecution based on their false accusations in order to obtain Plaintiffs' signature on the Agreement. Palace Resorts said that unless Plaintiffs affix their signature on the Agreement, Palace Resorts will continue to pursue their false accusations against Plaintiffs.

87.     Plaintiffs were physically forced to affix their signature to the Agreement. At the time of signing, Plaintiffs were in handcuffs and escorted in custody by an officer with a gun to a room in the prison. Plaintiffs were told that they must sign the Agreement in order to be released from prison. The officer took off the handcuffs to enable Plaintiffs to affix their signature. Plaintiffs were told that they would return to their Mexico jail cell if they did not sign the Agreement. Plaintiffs affixed their signature without actually manifesting their consent out of

19

their own free will.

88.     In addition, Plaintiffs were improperly threatened by Palace Resorts in order to induce their manifestation of assent.  Palace Resorts expressly insisted that Plaintiffs sign the Agreement as a condition to their release from Mexico prison.  Plaintiffs had no reasonable alternative but to manifest their assent to each and every provision of the Agreement.  If Plaintiffs did not affix their signature on the Agreement that was put in front of Plaintiffs, Palace Resorts threatened Plaintiffs with criminal prosecution and with remaining in Mexico prison - a foreign non-English-speaking country away from their home and family.  Palace Resorts told Plaintiffs and their representatives, as well as officials of the United States, that their signature on the Agreement was a condition to being released from Mexico prison.

89.     Palace Resorts' threats to maintain the criminal prosecution unless the Akeos sign the Agreement were the misuse, for personal gain, of power intended for public benefit.

90.     At the time Plaintiffs put their signature on the Agreement, they were in Mexico jail, in custody of a Mexico officer carrying a gun on his leg, in handcuffs, and under threat of criminal prosecution.  Plaintiffs were told that if they sign the Agreement, the criminal prosecution will be dropped, they will be released from prison and be free to leave Mexico and return home.

91.     In addition, the Agreement is void for public policy on the grounds that part of the consideration given to the Akeos was the suppression of criminal prosecution.

92.     As a result of Defendant's clearly improper, illegal, and perverted actions, Plaintiffs suffered injury and damage, including emotional distress, out-of-pocket losses for attorney's fees and other similar expenses, mental anguish and suffering, personal humiliation, physical suffering, and other compensable damages.

93.     Plaintiffs also seek a declaratory judgment that the Agreement, including each and every subpart, is void ab initio as a result of duress.

94.     Plaintiffs also seek a preliminary and permanent injunction against Defendants barring Defendants from enforcing the Agreement in any respect, including the arbitration or

delegation clause therein.

## PRAYER FOR RELIEF

95.     WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, as follows:

      a.      Awarding compensatory damages in an amount to be proven at trial;

      b.      Awarding punitive damages for willful and malicious conduct;

      c.      Awarding Plaintiffs' costs and reasonable attorneys' fees (if permitted by statute);

      d.      Declaring the Agreement to be void and invalid;

      e.      Enjoining the Defendants from enforcing the Agreement in any respect; and

      f.      Granting all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 15, 2025

*/s/ Peter Kaufman* _____ ____
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

Case 1:25-cv-23733-RKA Document 41-11 Entered on FLSD Docket 08/29/2025 Page 156 of 243

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 2025-015958-CA-01

PAUL AKEO and CHRISTY AKEO,

                    Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

                    Defendants.

## PLAINTIFF'S VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through

undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary

Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a

Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability

company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR

DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and states:

### INTRODUCTION

1.      This is an action for malicious prosecution, defamation, abuse of process,

intentional infliction of emotional distress, and duress.  Plaintiffs Christy and Paul Akeo are a

1

married couple.[1] This application is an emergency because the deadline to answer the unlawful arbitration and request for emergency orders filed by the Defendants without prior notice *today,* August 15, 2025, is purportedly August 18, 2025.

2. Plaintiffs are about to state something that is unbelievable, but indisputably true: (i) Shackled in handcuffs (removed only to sign), (ii) in the custody of a Mexico maximum security prison, (iii) having survived thirty days there next to drug dealers, cartel members, and murderers, in constant fear for their personal safety and security, (iv) next to men carrying machine guns, and (v) under threat of criminal prosecution that could lock them up in Mexico maximum security prison for up to six years, Plaintiffs were forced under duress by Defendants to affix their signature on a Mutual Release and Non-Disparagement Agreement (attached as Exhibit A, the "Settlement Agreement" or the "Agreement") in order to secure their release from maximum security Mexico prison. At the time, Defendants threatened Plaintiffs with continuing a criminal prosecution based on false accusations, misusing for personal gain the power of the public prosecutor. The Settlement Agreement contained an arbitration clause purporting to set the place of arbitration in Vancouver, Canada - 2,500 miles away from Plaintiffs' Michigan home.

3. Plaintiffs seek immediate injunctive relief under Fla. R. Civ. P. 1.610 and Fla. Stats. § 682.03(2) (i) to restrain Defendants from seeking to enforce the Settlement Agreement (including its arbitration and delegation clauses, to the extent therein) that Defendants unlawfully

---

[1] In the complaint, Plaintiffs allege the Defendants made a blatantly false accusation with the Mexico criminal authorities in order to induce Mexico authorities to jail and confine them and thereby coerce the Akeos into giving Defendants money American credit companies refunded to the Akeos and shutting down a Facebook group regarding Defendants' business practices that the Akeos didn't even control. They refer to the unverified complaint filed in this action for a more detailed description of the allegations regarding the long-running saga between them and Defendants.

procured through duress and (ii) to stay the pending arbitration proceeding Defendants have requested under the Agreement, to which Plaintiffs never voluntarily consented and affixed their signatures under clear physical duress, in the International Court of Arbitration ("ICA") in Vancouver, Canada. Absent this relief, Plaintiffs will suffer irreparable injury in being forced to arbitrate in Vancouver, Canada under an agreement procured by physical duress. Forcing Plaintiffs to do so would usurp this Court's express statutory function and role to decide: (1) whether any agreement to arbitrate exists (including a delegation clause) and (2) the validity of the foregoing. Fla. Stat. §§ 682.02, 682.03.

4. Plaintiffs' counsel has emailed a copy of this temporary restraining order to counsel for the Defendants in the ICA arbitration, David M. Orta (davidorta@quinnemanuel.com), Kirsten R. Nelson (kirstennelson@quinnemanuel.com), Ana Paula Luna Pino (analuna@quinnemanuel.com), Natalia Salinas (nataliasalinas@quinnemanuel.com), David M. Orta (davidorta@quinnemanuel.com), and Jaime Luis Lopez (jaimelopez@quinnemanuel.com). Plaintiffs' counsel will attempt personal service of this Motion to the extent practicable.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter pursuant to Article V, § 5(b) of the Florida Constitution and Fla. Stat. § 26.012.

6. Venue is proper in this Court because at least one defendant PR GLOBAL RESERVATIONS, LLC resides in this County according to its filings with the Florida Department of State.

7. This Court has jurisdiction over the Defendants as they claim to be the primary marketer of room nights and integrated hotel services at The Palace Group hotels, both in the

United States and elsewhere, selling nights through various commercial segments, such as tour operators, online travel agencies, other groups, websites, and Palace Elite affiliates, through which guests can book stays at Palace entity-operated hotels. PR Global also recognizes Palace Elite memberships and sells stays at the applicable discounted rates to members.

8. The Akeos made their booking reservations as described in their complaint at Palace Resorts through PR Global and its representatives in Miami-Dade County.

9. The Federal Arbitration Act does not apply as the Agreement is not a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, as the Agreement was procured as a condition to the dropping of criminal prosecution and release from imprisonment, as hereinafter detailed. *See Breazeale* v. *Victim Servs., Inc.,* 878 F.3d 759 (9th Cir. 2017) (agreements entered into in connection with a criminal prosecution do not come within the Federal Arbitration Act and then holding agreement is contrary to public policy, denying motion to compel).

## FACTS SUPPORTING RELIEF

10. On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun. They were then forced to spend a month in detention in a maximum security prison in Quintana Roo, Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

11. The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown. In reality, after a long-running dispute described in the complaint, the Akeos had disputed the charges with the credit card companies based on the fact that the charges were for "services or products not received." The credit card companies received information from both sides and ultimately sided

4

with the Akeos, refunding them approximately $116,000.

12. While the allegations are lengthy in the complaint, for purposes of this temporary restraining order, the relevant facts relate to the circumstances resulting in the Akeos' signing a Mutual Release and Nondisparagement Agreement. After being arrested, the Akeos were held in maximum security Mexico prison based on the false accusations. Christy was placed in a holding cell for two weeks with a non-flushable toilet. Paul was placed in a jail cell with roughly 35 other guys. On the first night, the guards had pepper sprayed the fan in Paul's room to calm down agitated prisoners.

13. On March 5, Paul approached a corporate representative of the Palace Resorts at a court hearing to say he was sorry this went as far as it did. The corporate representative of Palace Resorts told Paul that Palace Resorts had spoken to the American consulate and told the American consulate Palace Resorts was willing to drop the criminal charges only in exchange for a settlement agreement. The corporate representative told the Akeos that the settlement agreement proposed by Palace Resorts was "not about the money, it was about the Facebook group." The Akeos do not know the name of the corporative representative, but have met him before at the Palace Resorts and know what he looks like. The corporative representative had laughed at the Akeos when the Akeos walked into the courtroom in shackles.

14. On March 10, Christy and Paul were told by Mexico authorities that they were going to be held for at minimum six months to enable Palace Resorts to gather more information on the case and, if found guilty, up to three to six years.

15. After two weeks in the holding cell, Christy was placed into general population at the maximum security prison in a room with five other women. Christy learned that three of the women were there for murder and two were there for drug-related charges.

16.     Paul was transferred to different jail cells for his safety.  In the first two weeks, Paul was in the general lock up cell next to individuals who were there for drug dealing, armed robbery, and murder.  In the next cell, Paul learned that he was with individuals who had been detained for two or three years.  In the final cell he was transferred to, Paul learned that he was with individuals who were members of the Mexico cartel and had killed people, armed robbery, rape, or stealing (each of the foregoing were separate individuals).  Both Akeos feared for their personal security and safety the entire time in prison.  The Akeos understood that nobody spoke English.  Inmates had told Paul they recognized him "from the TV."  Paul was afraid the inmates knew he worked for the Michigan State Police.  During the first week, Paul pulled drywall screws from the wall and slept with them for protection.  Each night, up to ten new people would be placed in the holding cell with him.  Paul was sleeping shoulder-to-shoulder with other inmates on the floor.

17.     On Friday, April 3, at approximately 12:30 PM, guards at the prison came to the Akeos' cells and asked the Akeos to come out. The Akeos had no idea what was happening. Christy asked where she was going, but the guard did not speak English and gave no explanation. Christy was escorted down to the prison garage in shackles. Shortly after, Paul arrived, also shackled.

18.     The warden, Gustavo, then appeared and told the Akeos they were going to the courthouse for a hearing to get some "good news."

19.     The Akeos arrived at the courthouse at about 1:00 PM for what they were told was a 2:00 PM hearing. The Akeos were placed in separate, filthy basement holding cells — each in shackles — and could not see one another. There was no water in Christy's cell and the toilet, out in the open, was not working.

20. The Akeos were the only ones in these separate holding cells, and they were left there for hours. The Akeos could talk to each other by shouting back and forth, but could not see one another.

21. As time passed, the Akeos became increasingly anxious. The hearing time came and went. At around 3:00 PM, Christy asked one of the guards why they had not yet been taken to the hearing, but the guard did not speak English. None of the other guards could understand Christy either.

22. By this point, the Akeos had been waiting for over three hours — two hours past our scheduled hearing time. The repeated delays made the Akeos fear something had gone wrong and that they would not be going home that day. The Akeos kept asking for their lawyers and for Congressman Tom Barrett, the U.S. House of Representative for the Akeos' daughter's district, but no one could help the Akeos or even understand their requests. Christy was also growing more anxious because of the lack of water and the unusable toilet in the open in my cell. It was open air, so it was very hot down there.

23. Finally, around 4:00 PM, guards came to take the Akeos to the hearing. The Akeos were escorted by three armed guards carrying machine guns.

24. Inside the courtroom were: (a) U.S. Congressman Tom Barrett, (b) Kyle VonEnde, Chief of Staff to Congressman Barrett, (c) Consul General Justen Thomas, U.S. Embassy in Merida, (d) Wyatt Duea, Chief of American Citizen Services, U.S. Embassy in Merida, (e) Justen Thomas' bodyguard (name unknown), (f) the Akeos' attorney, Jaime Cherem, (g) the Akeos' attorney, Alonso Brigas, (h) Kevin (an attorney for Palace), (h) the same corporative representative who told the Akeos they needed to settle their civil claims to get out of prison, and (i) a woman from Palace, believed to be Palace lawyer Jordans Astid Lorenzo

7

Rodriguez, who glared at Christy throughout the proceeding.

25. There was an interpreter sent for the Akeos, but she could not speak English well enough.

26. Two or three additional armed guards with machine guns were present next to the Akeos.

27. Once seated, Congressman Barrett told the Akeos that the Akeos needed to sign paperwork to be free from prison and had no choice to sign unless they wished to remain in prison. All the Akeos wanted to do was sign and leave. The Akeos were just so scared as to what was happening and why it was delayed for so long.

28. The Akeos' lawyers also told the Akeos they needed to sign the Mutual Release and Nondisparagement Agreement in favor of Palace Elite to be released.

29. The Akeos signed the Agreement where they were told to by their lawyers. While signing the Agreement, Palace lawyer Kevin was standing over the Akeos glaring at them.

30. This was the first the Akeos ever saw the Agreement. At the time of signature, to the Akeos' understanding, Palace Resorts continued to threaten the Akeos with imprisonment (where their physical safety and security were jeopardized) and criminal prosecution if they do not sign the Agreements.

31. The Akeos left the courthouse to return to the prison. Based on statements made to the Akeos, everybody around them distrusted Palace Resorts and were afraid that the Akeos were not going to be released from prison. As a result, Congressmember Barrett, the Consular General, and members of their staff followed in their own armored vehicle the Mexican authority's armored guard vehicle transporting the Akeos back to prison. The Akeos believed their safety and security remained in jeopardy as they were told that Palace Resorts may file

additional criminal charges to detain them before their departure from Mexico. This threat was so real and imminent that they were told their lawyers filed a case with a court seeking an injunction.

32. After they were released from Mexico maximum security prison, Congressmember Barrett and the Consular General transported the Akeos with police escorts bearing *machine guns* to the airport. Congressmember Barrett and the Consular General told the Akeos that they were so concerned for their physical safety and security as a result of the Palace Resorts' conduct that they were going to wait until their plane actually took off. The Akeos were also procured a private jet to prevent any opportunity for detention at a commercial airport.

33. Throughout the signing process, the Akeos were threatened with imprisonment and criminal prosecution, scared, confused, intimidated and humiliated. The armed guards with machine guns, the Palace lawyers' stalking and assaulting behavior at the signature time, the hours of unexplained delays, and the previous thirty-days of constant fear for their personal safety and security next to drug dealers and murders added to the Akeos' anxiety.

34. The Akeos had no choice but to sign the Agreement if they wanted to be released from prison. The Akeos believed that if they did not sign immediately, they would remain in prison indefinitely. The Akeos were asked for copies of what they signed, but were told their lawyers would have to send copies. The Akeos left without any paperwork from court.

35. On July 22, 2025, the Akeos through their counsel sent a letter to Palace Resorts' counsel indicating their intention to file suit on or before August 1, 2025 in Florida Circuit Court. The Akeos asked if Palace Resorts wished to resolve the lawsuit before suit was filed. The Akeos asked for a response by July 28, 2025.

36. On July 31, 2025, Palace Resorts responded by asking for "an addition five (5)

9

business days" to "conduct a thorough internal assessment and prepare a more considered response" to the Akeos' communication. Palace Resorts, said: "We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response." The letter was signed by Isaac Carrasco. *(See* Exhibit B).

37. Palace Resorts never responded to Plaintiffs' communication as it had promised in the letter. Rather, on August 11, 2025, the International Court of Arbitration sent a Request for Arbitration dated August 6, 2025. The Akeos feel deceived yet again by Palace Resorts, including its own general counsel, in their statements and conduct.

38. The Akeos will be emotionally traumatized if they were forced to arbitrate their disputes with the ICA, as the Agreement was procured by threats and force at the hands of Palace Resorts.

## MEMORANDUM OF LAW

To obtain a temporary injunction, a party must prove "1) that [he] will suffer irreparable harm unless the status quo is maintained; 2) that [he] ha[s] no adequate remedy at law; 3) that [he] ha[s] a substantial likelihood of success on the merits; and 4) that a temporary injunction will serve the public interest." *See Net First Nat. Bank* v. *First Telebanc Cmp.,* 834 So. 2d 944, 949 (Fla. 4th DCA 2003). This Court has the power to issue stays of arbitration proceedings under . *See Premier Med. Mgmt., Ltd. v. Salas,* 830 So. 2d 959, 960 (Fla. Dist. Ct. App. 2002); *Metropolitan Dade Cnt. v. Resources Recovery,* 462 So.2d 570 (Fla. DCA 3 1985) (holding circuit court erred in denying motion to stay without evidentiary hearing as to the intent of the parties).

*First,* Plaintiffs will suffer irreparable harm unless the status quo is maintained. Palace Resorts seeks to have the International Court of Arbitration (the "ICA") determine the validity of

the Agreement it procured by physical duress and duress in the form of threats.  The Florida

Arbitration Act provides, "The court shall decide whether an agreement to arbitrate exists or a

controversy is subject to an agreement to arbitrate." (Fla. Stat. Ann. § 682.02).  This is

consistent with federal law under the FAA, even though the FAA does not apply to the

Agreement.  *{Coinbase, Inc.* v. *Suski,* 602 U.S. 143, 147-49 (2024).  Here, contrary to Florida or

federal law, Palace Resorts seeks to have the ICA decide the existence and validity of the

Agreement.  To the extent that Palace Resorts claims that the Agreement provided for the

arbitrator to decide the existence or validity of the Agreement under a "delegation clause", as

hereinafter described, the existence and validity of the delegation clause itself must be decided

by the Court.  (Fla. Stat. Ann. § 682.02; *Attix v. Carrington Mortg. Servs., LLC,* 35 F.4th 1284

(11th Cir. 2022)).  Palace Resorts is seeking to usurp the role of this Court by having the

arbitrator decide these threshold issues in the ICA arbitration.  In addition, Plaintiffs will suffer

irreparable harm in the form of emotional distress and re-traumatization by being forced to

arbitrate in Vancouver, Canada under an agreement Defendants procured by physical duress.

*Second,* Plaintiffs have no adequate remedy at law.  If the ICA Arbitration does usurp

this Court's role and decide these threshold issues of the existence of an arbitration agreement or

delegation provision, then Plaintiffs will have no adequate remedy at law.  Indeed, Florida law

expressly requires this Court to determine "whether an agreement to arbitrate exists or a

controversy is subject to an agreement to arbitrate." (Fla. Stat. Ann. § 682.02).

*Third,* Plaintiffs have a substantial likelihood of success on the merits for their claims.

The Agreement - and each and every provision contained therein - was procured by physical

duress and duress in the form of threats by Palace Elite.  Florida defines duress as "a condition of

mind produced by an improper external pressure or influence that destroys the free agency of a

party and causes him to do an act or make a contract not of his own volition." *City of Miami* v. *Kory,* 394 So.2d 494, 498 (Fla. 3d DCA 1981). "[T]here are in essence two factors which must coexist in order to establish duress one which deals with the party allegedly under duress; the other, with the party allegedly imposing it. It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." *Id.* at 497. Florida courts have held that demanding a signature on an agreement under threat of "life-altering consequences" is duress. *Ziegler v. Natera,* 279 So. 3d 1240, 1243 (Fla. Dist. Ct. App. 2019). Here, Palace Resorts demanded the Akeos sign the Agreement under threat of criminal prosecution, under threat of returning to prison to languish for six months to six years where their security and safety were imperiled, under physical threat of Palace Resorts' own attorney, without any time to review the Agreement, and without any relation to the actual criminal charges which were dismissed via a separate and distinct Reparation Agreement.

Virtually every single authority is in accord. The Restatement (Second) of Contracts has two forms of duress. The first form of duress is physical duress where the "conduct that appears to be a manifestation of asset by a party who does not intend to engage in that conduct is physically compelled by duress"; if physical duress is present, the "conduct is not effective as a manifestation of assent" and no contract is formed, period. Rest. 2d. Contracts § 174. While considered a rare form of duress, this extraordinary case fits the bill. As explained by *U.S. for Use of Trane Co.* v. *Bond,* it "indeed was Blackstone's view where the contract was coerced by ***actual imprisonment*** or fear of loss of life or limb," it is duress. *U.S. for Use of Trane Co. v. Bond,* 322 Md. 170, 178, 586 A.2d 734, 738 (1991). Here, the Agreement, its arbitration provision, and delegation clause were each coerced by actual imprisonment of the Akeos and

therefore void entirely.

The second form of duress is duress by threat of criminal prosecution or imprisonment. Restatement (Second) of Contracts provides, "If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175 (1981). An improper threat includes: "what is threatened is a criminal prosecution." *Id.* § 176. This type of duress happens when a party makes a threat of criminal prosecution and incarceration in order to procure the other party's assent. To be clear, because the Akeos were actually in prison and subject to criminal prosecution and their signatures to the private agreement with the Palace Resorts was a condition to their freedom, physical duress is more appropriate, rendering the contract void. But even duress by improper threat of imprisonment and prosecution applies, as the threat of ***continued*** imprisonment and prosecution remained absent the Akeos' signature on the Agreement. *See Germantown Mfg. Co.* v. *Rawlinson,* 341 Pa. Super. 42, 51, 491 A.2d 138, 143 (1985) ("A threat to instigate criminal prosecution has generally been regarded as an improper means of inducing the victim of the threat to make a contract. . . The impropriety lies in the use for 'private benefit ... of the criminal process of the court provided for the prosecution of the crime and the protection of the public.' On this ground, the threat is improper even if the person who makes it honestly believes that the one whose prosecution is threatened is guilty and even if in fact that person is guilty," quoting E. Allan Farnsworth as Reporter of the Restatement). In *Germantown,* the party threatened criminal prosecution to induce the other party to enter into an agreement, and the Court invalidated the agreement under duress. *Id.* at 144-45.

In perhaps one of the handful of cases dealing with arbitration agreements, in *Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park,* 15 Cal.App.4th 119 (1993), the Court held

that an arbitration agreement "obtained under threat of criminal prosecution and that [plaintiff] would not have signed the agreement absent such threat" is invalid. "The threat was particularly abhorrent in that it was issued by a government agent. The city attorney's threats constituted menace destructive of free consent." *Id.* at 128-29. The fact that the arbitration agreement was procured under these threats "implicate[d] strong public policy considerations." *Id.', Brown* v. *Best Prods., Inc.,* 479 N.E.2d 852, 855 (Ohio 1985) ("One reason releases executed between private parties which offer as consideration the suppression of criminal prosecution are void is that courts have recognized that duress is inherent in the execution of such releases.").

 *Fourth,* a temporary injunction will serve the public interest. The public interest is served as the TRO upholds Florida and (if applicable) federal statutes giving this Court authority to determine the formation and validity of arbitration agreements (including delegation clauses), the TRO does not impact non-parties, the TRO preserves lawful conduct and deprives Defendants of their misuse of the criminal justice system for private gain and benefit.

## RELIEF REQUESTED

 For the reasons stated above, Plaintiffs respectfully seek a temporary injunction under Rule 1.610 of the Florida Rules of Civil Procedure enjoining the Defendants from enforcing the Agreement in any respect and proceeding with the International Court of Arbitration arbitration pending a determination of the validity and existence of any arbitration agreements and a stay of the pending arbitration under Fla. Stats. § 682.03(2). The injunction "shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction." Fla. R. Civ. P. 1.610(c).

14

**VERIFICATION OF PLAINTIFFS**

Under penalties of perjury, I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.

8/15/2025

_____
Dated

*Christy Akeo*

_____
Christy Akeo

8/15/2025

_____
Dated

*Paul k. Akeo*

_____
Paul Akeo

Dated: August 15, 2025

/s/ Peter Kaiifman
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufinan@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

16

# EXHIBIT A

MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT

This MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT (this "Agreement") is entered into as of the  *4  day of ___April___, 2025 (the "Effective Date"), by and among CHRISTY LIN AKEO and PAUL K. AKEO, on one hand, and PALACE ELITE RESORTS, S.A. DE C.V. ("PALACE ELITE"), on the other hand.

WHEREAS, PALACE ELITE and CHRISTY LIN AKEO and PAUL K. AKEO have had a long-standing commercial relationship since at least February 1, 2016 pursuant to a series of contracts and ancillary agreements entered into on or about February 1, 2016, February 3, 2016, April 28, 2016, May 19, 2016, September 25, 2016, November 22, 2016, May 6, 2017, July 26, 2017, January 4, 2018, September 21, 2018, December 21, 2018, February 17, 2019, April 27, 2019, September 29, 2019, July 4, 2020, October 25, 2020, February 12, 2021, May 24, 2021, and November 21, 2021 (collectively, the "Membership Agreements").

WHEREAS, PALACE ELITE has asserted that CHRISTY LIN AKEO and **PAUL K.** AKEO have acted wrongfully in their dealings with PALACE ELITE (the "Palace Elite Claims ).

WHEREAS, CHRISTY LIN AKEO and PAUL K. AKEO have asserted that **PALACE** ELITE has acted wrongfully in its dealings with CHRISTY LIN AKEO and PAUL KL **AKEO (the** "Akeo Claims").

WHEREAS, PALACE ELITE, CHRISTY LIN AKEO, and PAUL K. AKEO **each** agree that they have had a full, reasonable, fair, and adequate opportunity to investigate the **Palace** Elite Claims and the Akeo Claims; to consult with and seek the advice of legal counsel **of their** choosing, in the United States and in Mexico, with respect to the Palace Elite Claims, **the Akeo** Claims, and this Agreement; and to consider and reflect on the terms and substance **of dis** Agreement.

WHEREAS, in order to avoid the hassle and expense of litigation, PALACE **ELITE** and CHRISTY LIN AKEO and PAUL K. AKEO wish to resolve and any and all existing **or potential** disputes between PALACE ELITE, on one hand, and CHRISTY LIN AKEO and/or **PAUL EL** AKEO, on the other hand, known or unknown, whether sounding in statute, common **law. equiy.** or other source of authority, whether under the laws of Mexico or any state or other **comycraeys** jurisdiction thereof, or under the laws of the United States or any state or other **cosskutesE** jurisdiction thereof, or any other jurisdiction, including but not limited to (I) the **Paface Efe** Claims and any and all claims or causes of action arising out of or related to the assertion **or pursuit** of the Palace Elite Claims by PALACE ELITE, or by its ownership, managers, **sharehokfes.** attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related esfikss, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, **assigns,** third party administrators, or legal representatives, (2) the Akeo Claims and any and a flcfessser causes of action arising out of or related to the assertion or pursuit of the Akeo **Cfanns W** CHRISTY LIN AKEO and/or PAUL K. AKEO, or their

1

respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, (3) any and all claims or causes of action arising out of or relating to the Membership Agreements, and (4) any and all claims or causes of action arising out of or related to any acts or omissions occurring on or prior to the Effective Date of this Agreement (collectively, the "Released Claims").

1.      Mutual Releases.

    a.  PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, hereby forever releases CHRISTY LIN AKEO and PAUL K. AKEO, as well as their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

    b.  CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

    c.  PAUL K. AKEO, on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

2. <u>Mutual Covenants Not to Sue.</u> Other than the Released Claims, PALACE ELITE does not know of any claims that PALACE ELITE might have against either CHRISTY LIN AKEO or PAUL K. AKEO. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, covenants and agrees that it will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against CHRISTY LIN AKEO and PAUL K. AKEO, or their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, on account of the Released Claims.

Other than the Released Claims, CHRISTY LIN AKEO does not know of any claims that CHRISTY LIN AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that she will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

Other than the Released Claims, PAUL K. AKEO does not know of any claims that PAUL K. AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. PAUL K. AKEO , on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that he will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

3

3. <u>Consideration</u>

    a.    CHRISTY LIN AKEO and PAUL K. AKEO expressly acknowledge and agree that PALACE ELITE'S promises and covenants set forth herein, including but not limited to as set forth in Paragraphs 1 and 3, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement. .

    b.    PALACE ELITE expressly acknowledges and agrees that CHRISTY LIN AKEO's and PAUL K. AKEO's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement.

4. <u>Non-Disparagcment.</u>

    a.    CHRISTY LIN AKEO represents and warrants, on behalf of herself and her agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that she shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about PALACE ELITE or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.) (each and any of the foregoing, "Disparaging <u>Statements"</u>). CHRISTY LIN AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog, and/or otherwise accessible on the internet and made by or on behalf of CHRISTY LIN AKEO, shall be removed within seven (7) days of the Effective Date, and CHRISTY LIN AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request

b. PAUL K. AKEO represents and warrants, on behalf of himself and his agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that he shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any Disparaging Statements as defined in Paragraph 3(a) of this Agreement. PAUL K. AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of PAUL K. AKEO, shall be removed within seven (7) days of the Effective Date, and PAUL K. AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request.



c. PALACE ELITE represents and warrants, on behalf of itself and its agents, representatives, ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, and assigns, that it shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about CHRISTY LIN AKEO and PAUL K. AKEO or their agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).



5. <u>Non-Inducement.</u> From and after the Effective Date, each of CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

6. <u>Liquidated Damages.</u> In the event of a breach of this Agreement, CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE agree that should any of them breach this Agreement, the breaching party shall immediately pay individually as fixed and

liquidated damages a sum of $50,000.00 U.S. Dollars per breach to the other party, as well as $1,000 U.S. Dollars per breach, per calendar day, until each and every breach is cured. Such liquidated damages in the amount of $50,000.00 U.S. Dollars are not intended to be a penalty and are solely intended to compensate the non-breaching party or parties. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

7. Injunctive Relief. In the event of a breach or a threatened breach by CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE of any provisions contained in this Agreement, any party will be entitled to seek an injunction restraining the party that has breached or is threatening a breach from such breach or threatened breach (without the necessity of proving the inadequacy as a remedy of money damages or the posting of bond, and CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE hereby waive any defense or objection to such injunctive relief (if permitted under applicable law)); provided, however, that the right to injunctive relief will not be construed as prohibiting CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE from pursuing any other available remedies, whether at law or in equity, for such breach or threatened breach.

8. Enforcement of this Agreement. Each party shall pay their own respective attorneys* fees and costs relating to this Agreement. In the event of a legal action or other proceeding arising out of an alleged breach of this Agreement or to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys* fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

9. Capacity to Execute. Each signatory to this Agreement represents and warrants that they are of appropriate legal, physical, and mental capacity, are not under duress or undue influence, has read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing, and are legally authorized to execute this Agreement. In entering into the Agreement, each party to this Agreement relies wholly upon their own judgment, belief, and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and does not rely upon any statement or representation of any other party or any other party's representatives.

10. Severability. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any tribunal may modify any invalid or unenforceable

6

provision to the maximum extent permitted by law while preserving the intended effect of such provision.

11. <u>Contract.</u>  The terms of this Agreement are contractual and the parties to this Agreement represent and warrant that they intend to be bound by them.

12. <u>Construction.</u>  Any rule of construction to the effect that ambiguities are resolved against the drafting party will not apply to the interpretation and construction of this Agreement.

13. <u>Headings.</u>  The paragraph headings in this Agreement are intended solely for reference and shall not by themselves determine the construction or interpretation of this Agreement.

14. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal law of the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules.

15. <u>Arbitration.</u>

All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules. The seat of the arbitration shall be Vancouver, Canada. The language of the arbitration shall be English. Except as may be required by law, neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. No award or order made in the arbitration shall be published.

This arbitration agreement shall be governed by the laws of the State of New York, including United States federal law as applied by United States federal courts seated in New York, New York.

16. <u>Counterparts.</u>  This Agreement may be executed in counterparts, each of which will be deemed an original, and such counterparts will together constitute a single Agreement.  Faxed, e-mailed, or electronic signatures will be deemed originals.

[SIGNATURE PAGES FOLLOW]



7

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____
CHRISTY LIN AKEO

4/5/25
Date

[INSERT NOTARY TEMPLATE]

8

THE PERSON SIGNING .THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (1) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____
PA>L K. AKEO

4/3/25
_____
Date


[INSERT NOTARY TEMPLATE]

9

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY. (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (Hi) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

PALACE ELITE RESORTS, S.A. DE C.V.

By: _Jordans Astid lorenzo Rodriguez_
[INSERT NAME OF SIGNATORY] Its:
[INSERT TITLE OF SIGNATORY]

_4 / 3 / 2025_
Date

[INSERT NOTARY TEMPLATE]

10

# EXHIBIT B

# THE PALACE COMPANY

**THEPALACECOMPANY.COM**

Mr. Jesse Creed
Panish Shea Ravipudi LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
jcreed(a>panish.law

Mr. John Manly
Manly, Stewart & Finaldi
19100 Von Karman Avenue, Suite 800
Irvine, California, 92612
imanlytcbmanlystewart.com

*via e-mail*

July 31, 2025

Dear Messrs. Creed and Manly,

I am writing on behalf of Palace Elite Resorts, S.A. de C.V. ("Palace Elite") in response to your letter dated July 22, 2025, which included a draft complaint and outlined certain claims and demands related to the Mutual Release and Non-Disparagement Agreement (the "Agreement") signed by your clients, Mr. Paul and Ms. Christy Akeo, and Palace Elite, on April 3, 2025.

Palace Elite notes that the contemplated claims in your letter appear to be in direct conflict with the terms of the Agreement between Palace Elite and Mr. Paul and Ms. Christy Akeo, which includes, in Sections 1 and 15, a mutual release of claims and a submission of any disputes related to the Agreement to arbitration.

# TH E  PALACE  COM PAN Y

**THEPALACECOMPANY.COM**

In order to conduct a thorough internal assessment and prepare a more considered response, Palace Elite respectfully requests an additional five (5) business days, as of the date of this letter, to respond to further your communication.

We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response. Palace Elite reserves all rights and remedies.

Sincerely,

Isaac Zarrasco
Palace Elite Resorts, S.A. de C.V.

Case 1:25-cv-23733-RKA XD Document 24-11 Entered on FLSD Docket 08/28/2025 Page 186 of 243

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-015958-CA-01
SECTION: CA08
JUDGE: Robert T. Watson

**Paul Akeo et al**

Plaintiff(s)

vs.

**PALACE RESORTS, LLC et al**

Defendant(s)

_____ /

## ORDER DENYING PLAINTIFFS[1] EMERGENCY MOTION FOR TEMPORARY INJUNCTION

Docket Index Number: **5**
Or
Efiling Number: _____ Date Filed: **08/15/2025**
Full Name of Motion: **Plaintiffs [sic] Verified Emergency Motion for ... Preliminary [sic] Injunction**

The Motion, filed on August 15 but placed in the undersigned's emergency queue only today, is DENIED for failure to comply with Florida Rule of Civil Procedure 1.610(a)(1)(B). Any renewed motion for temporary injunction must propose an amount for the bond required by Rule 1.610(b).

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 18th day of August, 2025.

20:<0F595#-CA-01 08-18-2025 2:31 PM

2025-015958-CA-01 08-18-2025 2:31 PM
Hon. Robert T. Watson

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2025-015958-CA-01

<div style="border: 2px solid red; color: red;">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**

- Peter Lawrence Kaufman: kaufman@psblaw.com
- Peter Lawrence Kaufman: lam@psblaw.com
- Peter Kaufman: pkaufman@panish.law
- Jesse Creed: jcreed@panish.law
- John Manly: jmanly@manlystewart.com

Case 1:25-cv-23733-RKA Document 34-11 Entered on FLSD Docket 08/28/2025 Page 188 of 243

| |X| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| :--- |
| □  IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION | SUMMONS 20 DAY CORPORATE SERVICE | CASE NUMBER |
| :--- | :---: | :--- |
| 0  CIVIL | **(a) GENERAL FORMS** | 2025-015958-CA-01 |
| □  DISTRICTS | | |
| □  OTHER | | |

| PLAINTIFF(S) | VS.  DEFENDANT(S) | SERVICE |
| :--- | :--- | :--- |
| PAUL AKEO and CHRISTY AKEO | PALACE RESORTS, LLC, a limited liability company; et al. | |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)'      GLOBAL RESERVATIONS, LLC, a Florida limited liability company_____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY:_____ DEPUTY CLERK | DATE |
| :--- | :--- | :--- |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23          Clerk's web address: www.miamidadeclerk.qov

Case 1:25-cv-23733-RKA Document 24-11 Entered on FLSD Docket 08/29/2025 Page 189 of 243

| |X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
|---|---|---|
| **DIVISION**<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)**<br><br>PALACE RESORTS, LLC, a<br>limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)‾ PALACE ELITE, a Mexican corporation

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

*CLOCK IN*

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23

Clerk's web address: www.miamidadeclerk.qov

|X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
□ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>0 CIVIL<br>□ DISTRICTS<br>□ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)**<br>**PALACE RESORTS, LLC, a**<br>**limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): PALACE COMPANY HOLDINGS

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

| |X| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>□  IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
|---|---|---|
| **DIVISION**<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)**<br><br>**PALACE RESORTS, LLC, a**<br>limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'  PALACE ELITE RESORTS S.A. de C.V., a Mexican Corporation_____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

 Km 21 Carretera Cancun Morelos, CO Mexico

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                          Clerk's web address: www.miamidadeclerk.qov

Case 1:25-cv-23733-RKA XXX Document 24-11 Entered on FLSD Docket 08/29/2025 Page 162 of 243

| |X| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION** 0  CIVIL ☐  DISTRICTS ☐  OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** **(a) GENERAL FORMS** | **CASE NUMBER** 2025-015958-CA-01 |
| **PLAINTIFF(S)** PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)** **PALACE RESORTS, LLC, a** **limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)'  PALACE RESORTS, LLC, a limited liability company _____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

**CLOCK IN**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY:_____ DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Case 1:25-cv-23733-RKA-XD Document 24-11 Entered on FLSD Docket 08/29/2025 Page 193 of 243

[X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|---|
| 0 CIVIL | | **Form for Personal Services on a** | |
| ☐ DISTRICTS | | **Natural Person** | 2025-015958-CA-01 |
| ☐ OTHERS | | | |

| PLAINTIFF(S) | VS | DEFENDANT(S) | CLOCK IN |
|---|---|---|---|
| PAUL AKEO and CHRISTY AKEO | | PALACE RESORTS, LLC, a limited liability company; et al. | |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| JOSE GIBRAN CHAPUR DAJER | 8400 NW 33rd Street, Suite 100, Doral, FL 33122 |

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

[X] **Dade County Courthouse (05)**
Room 133
73 West Flagler Street
Miami, FL 33130

|_| **Joseph Caleb Center Court (20)**
Suite 103
5400 N.W. 22nd Avenue
Miami, FL 33142

|_| **Hialeah District Court (21)**
Room 100
11 East 6th Street
Hialeah, FL 33010

J **North Dade Justice Center (23)**
Room 100
15555 Biscayne Blvd.
North Miami Beach, FL 33160

|_| **Coral Gables District Court (25)**
Room 100
3100 Ponce De Leon Blvd.
Coral Gables, Miami, FL 33134

|_| **South Dade Justice Center (26)**
Room 1200
10710 SW 211 Street
Miami, FL 33189

**SERVICE**

| Plaintiff/Plaintiff Attorney   Peter Kaufman | Address: |
|---|---|
| Florida Bar No. 548421 | 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025 |

| **JUAN FERNANDEZ-BARQUIN** **CLERK OF THE COURT AND COMPTROLLER** **MIAMI-DADE COUNTY** **CIRCUIT AND COUNTY COURTS** | | DATE ON: |
|---|---|---|
| | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW f Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 34 -7174; Email ADA@judlLflcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Case 1:25-cv-23733-RKA   Document 24-11   Entered on FLSD Docket 08/28/2025   Page 194 of 243

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 2025-015958-CA-OI

PAUL AKEO and CHRISTY AKEO,

          Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; PALACE
COMPANY HOLDINGS,

          Defendants.

**PLAINTIFF'S RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST
ARBITRATION INITIATED BY DEFENDANTS**

Plaintiffs, PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through

undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary

Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a

Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability

company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR

DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and states:

**INTRODUCTION**

1.     This is an action for malicious prosecution, defamation, abuse of process,

1

intentional infliction of emotional distress, and duress.  Plaintiffs Christy and Paul Akeo are a married couple.[1]  This application is an emergency because the deadline to answer the unlawful arbitration and request for emergency orders filed by the Defendants without prior notice *today,* August 15, 2025, is purportedly <u>August 18, 2025.</u>

2.       Plaintiffs are about to state something that is unbelievable, but indisputably true: (i) Shackled in handcuffs (removed only to sign), (ii) in the custody of a Mexico maximum security prison, (iii) having survived thirty days there next to drug dealers, cartel members, and murderers, in constant fear for their personal safety and security, (iv) next to men carrying machine guns, and (v) under threat of criminal prosecution that could lock them up in Mexico maximum security prison for up to six years, Plaintiffs were forced under duress by Defendants to affix their signature on a Mutual Release and Non-Disparagement Agreement (attached as <u>Exhibit A,</u> the "Settlement Agreement" or the "Agreement") in order to secure their release from maximum security Mexico prison.  At the time, Defendants threatened Plaintiffs with continuing a criminal prosecution based on false accusations, misusing for personal gain the power of the public prosecutor.  The Settlement Agreement contained an arbitration clause purporting to set the place of arbitration in Vancouver, Canada - 2,500 miles away from Plaintiffs' Michigan home.

3.       Plaintiffs seek immediate injunctive relief under Fla. R. Civ. P. 1.610 and Fla. Stats. § 682.03(2) (i) to restrain Defendants from seeking to enforce the Settlement Agreement

---

[1] In the complaint, Plaintiffs allege the Defendants made a blatantly false accusation with the Mexico criminal authorities in order to induce Mexico authorities to jail and confine them and thereby coerce the Akeos into giving Defendants money American credit companies refunded to the Akeos and shutting down a Facebook group regarding Defendants' business practices that the Akeos didn't even control.  They refer to the unverified complaint filed in this action for a more detailed description of the allegations regarding the long-running saga between them and Defendants.

(including its arbitration and delegation clauses, to the extent therein) that Defendants unlawfully procured through duress and (ii) to stay the pending arbitration proceeding Defendants have requested under the Agreement, to which Plaintiffs never voluntarily consented and affixed their signatures under clear physical duress, in the International Court of Arbitration ("ICA") in Vancouver, Canada.  Absent this relief, Plaintiffs will suffer irreparable injury in being forced to arbitrate in Vancouver, Canada under an agreement procured by physical duress.  Forcing Plaintiffs to do so would usurp this Court's express statutory function and role to decide: (1) whether any agreement to arbitrate exists (including a delegation clause) and (2) the validity of the foregoing.  Fla. Stat. §§ 682.02, 682.03.

4.      Plaintiffs' counsel has emailed a copy of this temporary restraining order to counsel for the Defendants in the ICA arbitration, David M. Orta (davidorta@quinnemanuel.com), Kirsten R. Nelson (kirstennelson@quinnemanuel.com), Ana Paula Luna Pino (analuna@quinnemanuel.com), Natalia Salinas (nataliasalinas@quinnemanuel.com), David M. Orta (davidorta@quinnemanuel.com), and Jaime Luis Lopez (jaimelopez@quinnemanuel.com).  Plaintiffs' counsel will attempt personal service of this Motion to the extent practicable.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter pursuant to Article V, § 5(b) of the Florida Constitution and Fla. Stat. § 26.012.

6.      Venue is proper in this Court because at least one defendant PR GLOBAL RESERVATIONS, LLC resides in this County according to its filings with the Florida Department of State.

7.      This Court has jurisdiction over the Defendants as they claim to be the primary

marketer of room nights and integrated hotel services at The Palace Group hotels, both in the United States and elsewhere, selling nights through various commercial segments, such as tour operators, online travel agencies, other groups, websites, and Palace Elite affiliates, through which guests can book stays at Palace entity-operated hotels. PR Global also recognizes Palace Elite memberships and sells stays at the applicable discounted rates to members.

8. The Akeos made their booking reservations as described in their complaint at Palace Resorts through PR Global and its representatives in Miami-Dade County.

9. The Federal Arbitration Act does not apply as the Agreement is not a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, as the Agreement was procured as a condition to the dropping of criminal prosecution and release from imprisonment, as hereinafter detailed. *See Breazeale* v. *Victim Servs., Inc.,* 878 F.3d 759 (9th Cir. 2017) (agreements entered into in connection with a criminal prosecution do not come within the Federal Arbitration Act and then holding agreement is contrary to public policy, denying motion to compel).

### FACTS SUPPORTING RELIEF

10. On March 4, 2025, Plaintiffs Paul and Christy Akeo were arrested while seeking to pass Mexican immigration authorities en route to a vacation in Cancun. They were then forced to spend a month in detention in a maximum security prison in Quintana Roo, Mexico separate and apart from each other, sleeping alongside drug dealers and violent criminals.

11. The charges: Palace Resorts had falsely accused the Akeos of fraudulently disputing credit card transactions as "desconocidas," i.e. not recognized or unknown. In reality, after a long-running dispute described in the complaint, the Akeos had disputed the charges with the credit card companies based on the fact that the charges were for "services or products not

4

received." The credit card companies received information from both sides and ultimately sided with the Akeos, refunding them approximately $116,000.

12. While the allegations are lengthy in the complaint, for purposes of this temporary restraining order, the relevant facts relate to the circumstances resulting in the Akeos' signing a Mutual Release and Nondisparagement Agreement. After being arrested, the Akeos were held in maximum security Mexico prison based on the false accusations. Christy was placed in a holding cell for two weeks with a non-flushable toilet. Paul was placed in a jail cell with roughly 35 other guys. On the first night, the guards had pepper sprayed the fan in Paul's room to calm down agitated prisoners.

13. On March 5, Paul approached a corporate representative of the Palace Resorts at a court hearing to say he was sorry this went as far as it did. The corporate representative of Palace Resorts told Paul that Palace Resorts had spoken to the American consulate and told the American consulate Palace Resorts was willing to drop the criminal charges only in exchange for a settlement agreement. The corporate representative told the Akeos that the settlement agreement proposed by Palace Resorts was "not about the money, it was about the Facebook group." The Akeos do not know the name of the corporative representative, but have met him before at the Palace Resorts and know what he looks like. The corporative representative had laughed at the Akeos when the Akeos walked into the courtroom in shackles.

14. On March 10, Christy and Paul were told by Mexico authorities that they were going to be held for at minimum six months to enable Palace Resorts to gather more information on the case and, if found guilty, up to three to six years.

15. After two weeks in the holding cell, Christy was placed into general population at the maximum security prison in a room with five other women. Christy learned that three of the

women were there for murder and two were there for drug-related charges.

16.     Paul was transferred to different jail cells for his safety.  In the first two weeks, Paul was in the general lock up cell next to individuals who were there for drug dealing, armed robbery, and murder.  In the next cell, Paul learned that he was with individuals who had been detained for two or three years.  In the final cell he was transferred to, Paul learned that he was with individuals who were members of the Mexico cartel and had killed people, armed robbery, rape, or stealing (each of the foregoing were separate individuals).  Both Akeos feared for their personal security and safety the entire time in prison.  The Akeos understood that nobody spoke English.  Inmates had told Paul they recognized him "from the TV."  Paul was afraid the inmates knew he worked for the Michigan State Police.  During the first week, Paul pulled drywall screws from the wall and slept with them for protection.  Each night, up to ten new people would be placed in the holding cell with him.  Paul was sleeping shoulder-to-shoulder with other inmates on the floor.

17.     On Friday, April 3, at approximately 12:30 PM, guards at the prison came to the Akeos' cells and asked the Akeos to come out. The Akeos had no idea what was happening. Christy asked where she was going, but the guard did not speak English and gave no explanation. Christy was escorted down to the prison garage in shackles. Shortly after, Paul arrived, also shackled.

18.     The warden, Gustavo, then appeared and told the Akeos they were going to the courthouse for a hearing to get some "good news."

19.     The Akeos arrived at the courthouse at about 1:00 PM for what they were told was a 2:00 PM hearing. The Akeos were placed in separate, filthy basement holding cells — each in shackles — and could not see one another. There was no water in Christy's cell and the

toilet, out in the open, was not working.

20. The Akeos were the only ones in these separate holding cells, and they were left there for hours. The Akeos could talk to each other by shouting back and forth, but could not see one another.

21. As time passed, the Akeos became increasingly anxious. The hearing time came and went. At around 3:00 PM, Christy asked one of the guards why they had not yet been taken to the hearing, but the guard did not speak English. None of the other guards could understand Christy either.

22. By this point, the Akeos had been waiting for over three hours — two hours past our scheduled hearing time. The repeated delays made the Akeos fear something had gone wrong and that they would not be going home that day. The Akeos kept asking for their lawyers and for Congressman Tom Barrett, the U.S. House of Representative for the Akeos' daughter's district, but no one could help the Akeos or even understand their requests. Christy was also growing more anxious because of the lack of water and the unusable toilet in the open in my cell. It was open air, so it was very hot down there.

23. Finally, around 4:00 PM, guards came to take the Akeos to the hearing. The Akeos were escorted by three armed guards carrying machine guns.

24. Inside the courtroom were: (a) U.S. Congressman Tom Barrett, (b) Kyle VonEnde, Chief of Staff to Congressman Barrett, (c) Consul General Justen Thomas, U.S. Embassy in Merida, (d) Wyatt Duea, Chief of American Citizen Services, U.S. Embassy in Merida, (e) Justen Thomas' bodyguard (name unknown), (f) the Akeos' attorney, Jaime Cherem, (g) the Akeos' attorney, Alonso Brigas, (h) Kevin (an attorney for Palace), (h) the same corporative representative who told the Akeos they needed to settle their civil claims to get out of

7

prison, and (i) a woman from Palace, believed to be Palace lawyer Jordans Astid Lorenzo Rodriguez, who glared at Christy throughout the proceeding.

25. There was an interpreter sent for the Akeos, but she could not speak English well enough.

26. Two or three additional armed guards with machine guns were present next to the Akeos.

27. Once seated, Congressman Barrett told the Akeos that the Akeos needed to sign paperwork to be free from prison and had no choice to sign unless they wished to remain in prison. All the Akeos wanted to do was sign and leave. The Akeos were just so scared as to what was happening and why it was delayed for so long.

28. The Akeos' lawyers also told the Akeos they needed to sign the Mutual Release and Nondisparagement Agreement in favor of Palace Elite to be released.

29. The Akeos signed the Agreement where they were told to by their lawyers. While signing the Agreement, Palace lawyer Kevin was standing over the Akeos glaring at them.

30. This was the first the Akeos ever saw the Agreement. At the time of signature, to the Akeos' understanding, Palace Resorts continued to threaten the Akeos with imprisonment (where their physical safety and security were jeopardized) and criminal prosecution if they do not sign the Agreements.

31. The Akeos left the courthouse to return to the prison. Based on statements made to the Akeos, everybody around them distrusted Palace Resorts and were afraid that the Akeos were not going to be released from prison. As a result, Congressmember Barrett, the Consular General, and members of their staff followed in their own armored vehicle the Mexican authority's armored guard vehicle transporting the Akeos back to prison. The Akeos believed

8

their safety and security remained in jeopardy as they were told that Palace Resorts may file additional criminal charges to detain them before their departure from Mexico.  This threat was so real and imminent that they were told their lawyers filed a case with a court seeking an injunction.

32.     After they were released from Mexico maximum security prison, Congressmember Barrett and the Consular General transported the  Akeos with police escorts bearing *machine guns* to the airport.  Congressmember Barrett and the Consular General told the Akeos that they were so concerned for their physical safety and security as a result of the Palace Resorts' conduct that they were going to wait until their plane actually took off.  The Akeos were also procured a private jet to prevent any opportunity for detention at a commercial airport.

33.     Throughout the signing process, the Akeos were threatened with imprisonment and criminal prosecution, scared, confused, intimidated and humiliated. The armed guards with machine guns, the Palace lawyers' stalking and assaulting behavior at the signature time, the hours of unexplained delays, and the previous thirty-days of constant fear for their personal safety and security next to drug dealers and murders added to the Akeos' anxiety.

34.     The Akeos had no choice but to sign the Agreement if they wanted to be released from prison.  The Akeos believed that if they did not sign immediately, they would remain in prison indefinitely.  The Akeos were asked for copies of what they signed, but were told their lawyers would have to send copies.  The Akeos left without any paperwork from court.

35.     On July 22, 2025, the Akeos through their counsel sent a letter to Palace Resorts' counsel indicating their intention to file suit on or before August 1, 2025 in Florida Circuit Court. The Akeos asked if Palace Resorts wished to resolve the lawsuit before suit was filed.  The Akeos asked for a response by July 28, 2025.

36.      On July 31, 2025, Palace Resorts responded by asking for "an addition five (5) business days" to "conduct a thorough internal assessment and prepare a more considered response" to the Akeos' communication.  Palace Resorts, said: "We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response."  The letter was signed by Isaac Carrasco.  *(See* <u>Exhibit B).</u>

37.      Palace Resorts never responded to Plaintiffs' communication as it had promised in the letter.  Rather, on August 11, 2025, the International Court of Arbitration sent a Request for Arbitration dated August 6, 2025.  The Akeos feel deceived yet again by Palace Resorts, including its own general counsel, in their statements and conduct.

38.      The Akeos will be emotionally traumatized if they were forced to arbitrate their disputes with the ICA, as the Agreement was procured by threats and force at the hands of Palace Resorts.

39.      The Akeos' signature on the arbitration agreement and delegation clause were procured through duress.  Specifically, Defendants insisted that the Akeos sign the arbitration agreement and delegation clause in order to be freed from prison.  Congressmember Barrett himself recognized that the only way the Akeos leave prison is they sign these agreements without negotiation.

40.      Akeos were thereby deprived of the ability to exercise free will or make a voluntary, knowing choice regarding the delegation of authority to an arbitrator.

41.      Because duress tainted Plaintiffs' assent to the delegation clause itself, Plaintiffs never agreed out of their own free will to arbitral determination of arbitrability.

42.      Plaintiffs did not voluntarily and willingly consent to permit the arbitrator to decide the enforceability of the putative Settlement Agreement or any provision contained

10

therein - particularly an arbitration requested by the very party who procured the Agreement through duress.

<div align="center"><strong>MEMORANDUM OF LAW</strong></div>

To obtain a temporary injunction, a party must prove "1) that [he] will suffer irreparable harm unless the status quo is maintained; 2) that [he] ha[s] no adequate remedy at law; 3) that [he] ha[s] a substantial likelihood of success on the merits; and 4) that a temporary injunction will serve the public interest." *See Net First Nat. Bankv. First Telebanc Cmp.,* 834 So. 2d 944, 949 (Fla. 4th DCA 2003). This Court has the power to issue stays of arbitration proceedings under . *See Premier Med. Mgmt., Ltd. v. Salas,* 830 So. 2d 959, 960 (Fla. Dist. Ct. App. 2002); *Metropolitan Dade Cnt. v. Resources Recovery,* 462 So.2d 570 (Fla. DCA 3 1985) (holding circuit court erred in denying motion to stay without evidentiary hearing as to the intent of the parties).

*First,* Plaintiffs will suffer irreparable harm unless the status quo is maintained. Palace Resorts seeks to have the International Court of Arbitration (the "ICA") determine the validity of the Agreement it procured by physical duress and duress in the form of threats. The Florida Arbitration Act provides, "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." (Fla. Stat. Ann. § 682.02). This is consistent with federal law under the FAA, even though the FAA does not apply to the Agreement. *(Coinbase, Inc.* v. *Suski,* 602 U.S. 143, 147-49 (2024). Here, contrary to Florida or federal law, Palace Resorts seeks to have the ICA decide the existence and validity of the Agreement. To the extent that Palace Resorts claims that the Agreement provided for the arbitrator to decide the existence or validity of the Agreement under a "delegation clause", as hereinafter described, the existence and validity of the delegation clause itself must be decided

<div align="center">11</div>

by the Court.  (Fla. Stat. Ann. § 682.02; *Attix v. Carrington Mortg. Servs., LLC, 35* F.4th 1284 (11th Cir. 2022)).  Palace Resorts is seeking to usurp the role of this Court by having the arbitrator decide these threshold issues in the ICA arbitration.  In addition, Plaintiffs will suffer irreparable harm in the form of emotional distress and re-traumatization by being forced to arbitrate in Vancouver, Canada under an agreement Defendants procured by physical duress.

*Second,* Plaintiffs have no adequate remedy at law.  If the ICA Arbitration does usurp this Court's role and decide these threshold issues of the existence of an arbitration agreement or delegation provision, then Plaintiffs will have no adequate remedy at law.  Indeed, Florida law expressly requires this Court to determine "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."  (Fla. Stat. Ann. § 682.02).

*Third,* Plaintiffs have a substantial likelihood of success on the merits for their claims. The Agreement -  and each and every provision contained therein -  was procured by physical duress and duress in the form of threats by Palace Elite.  Florida defines duress as "a condition of mind produced by an improper external pressure or influence that destroys the free agency of a party and causes him to do an act or make a contract not of his own volition."  *City of Miami v. Kory,* 394 So.2d 494, 498 (Fla. 3d DCA 1981).  "[T]here are in essence two factors which must coexist in order to establish duress one which deals with the party allegedly under duress; the other, with the party allegedly imposing it. It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side."  *Id.* at 497.  Florida courts have held that demanding a signature on an agreement under threat of "life-altering consequences" is duress.  *Ziegler* v. *Natera,* 279 So. 3d 1240, 1243 (Fla. Dist. Ct. App. 2019).  Here, Palace Resorts demanded the Akeos sign the Agreement under threat of

criminal prosecution, under threat of returning to prison to languish for six months to six years where their security and safety were imperiled, under physical threat of Palace Resorts' own attorney, without any time to review the Agreement, and without any relation to the actual criminal charges which were dismissed via a separate and distinct Reparation Agreement.

Virtually every single authority is in accord. The Restatement (Second) of Contracts has two forms of duress. The first form of duress is physical duress where the "conduct that appears to be a manifestation of asset by a party who does not intend to engage in that conduct is physically compelled by duress"; if physical duress is present, the "conduct is not effective as a manifestation of assent" and no contract is formed, period. Rest. 2d. Contracts § 174. While considered a rare form of duress, this extraordinary case fits the bill. As explained by *U.S. for Use of Trane Co. v. Bond,* it "indeed was Blackstone's view where the contract was coerced by ***actual imprisonment*** or fear of loss of life or limb," it is duress. *U.S. for Use of Trane Co. v. Bond,* 322 Md. 170, 178, 586 A.2d 734, 738 (1991). As the United States Supreme Court explained as early as 1868:

> Actual violence is not necessary to constitute duress, even at common law, as understood in the parent country, because consent is the very essence of a contract, and, if there be compulsion, there is no actual consent, and moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is everywhere regarded as sufficient, in law, to destroy free agency, without which there can be no contract, because, in that state of the case, there is no consent.

*Brown v. Pierce,* 74 U.S. 205, 214 (1868). Here, the Agreement, its arbitration provision, and delegation clause were each coerced by actual imprisonment of the Akeos and therefore void entirely.

The second form of duress is duress by threat of criminal prosecution or imprisonment. Restatement (Second) of Contracts provides, "If a party's manifestation of assent is induced by

13

an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175 (1981). An improper threat includes: "what is threatened is a criminal prosecution." *Id.* § 176. This type of duress happens when a party makes a threat of criminal prosecution and incarceration in order to procure the other party's assent. To be clear, because the Akeos were actually in prison and subject to criminal prosecution and their signatures to the private agreement with the Palace Resorts was a condition to their freedom, physical duress is more appropriate, rendering the contract void. But even duress by improper threat of imprisonment and prosecution applies, as the threat of **continued** imprisonment and prosecution remained absent the Akeos' signature on the Agreement. *See Germantown Mfg. Co. v. Rawlinson,* 341 Pa. Super. 42, 51, 491 A.2d 138, 143 (1985) ("A threat to instigate criminal prosecution has generally been regarded as an improper means of inducing the victim of the threat to make a contract. . . The impropriety lies in the use for 'private benefit ... of the criminal process of the court provided for the prosecution of the crime and the protection of the public.' On this ground, the threat is improper even if the person who makes it honestly believes that the one whose prosecution is threatened is guilty and even if in fact that person is guilty," quoting E. Allan Farnsworth as Reporter of the Restatement). In *Germantown,* the party threatened criminal prosecution to induce the other party to enter into an agreement, and the Court invalidated the agreement under duress. *Id.* at 144-45.

In perhaps one of the handful of cases dealing with arbitration agreements, in *Bayscene Resident Negotiators v. Bayscene Mobilehome Park,* 15 Cal.App.4th 119 (1993), the Court held that an arbitration agreement "obtained under threat of criminal prosecution and that [plaintiff] would not have signed the agreement absent such threat" is invalid. "The threat was particularly abhorrent in that it was issued by a government agent. The city attorney's threats constituted

menace destructive of free consent." *Id.* at 128-29. The fact that the arbitration agreement was procured under these threats "implicate ] strong public policy considerations." *Id.', Brown* v. *Best Prods., Inc.,* 479 N.E.2d 852, 855 (Ohio 1985) ("One reason releases executed between private parties which offer as consideration the suppression of criminal prosecution are void is that courts have recognized that duress is inherent in the execution of such releases.").

*Fourth* a temporary injunction will serve the public interest. The public interest is served as the TRO upholds Florida and (if applicable) federal statutes giving this Court authority to determine the formation and validity of arbitration agreements (including delegation clauses), the TRO does not impact non-parties, the TRO preserves lawful conduct and deprives Defendants of their misuse of the criminal justice system for private gain and benefit.

## RELIEF REQUESTED

For the reasons stated above, Plaintiffs respectfully seek a temporary injunction under Rule 1.610 of the Florida Rules of Civil Procedure enjoining the Defendants from enforcing the Agreement in any respect and proceeding with the International Court of Arbitration arbitration pending a determination of the validity and existence of any arbitration agreements and a stay of the pending arbitration under Fla. Stats. § 682.03(2). The injunction "shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction." Fla. R. Civ. P. 1.610(c).

As for the amount of the bond, Plaintiffs believe that a bond in the amount of $5,000 is sufficient for this very limited restraint sought, i.e. the stay of the pending arbitration. "The purpose of an injunction bond is to provide sufficient funds to cover the adverse party's costs and damages if the injunction is wrongfully issued." *MetalMax Cutting Tools, Inc.* v. *Mil-Tec USA,*

15

*Inc.,* 794 So. 2d 609, 610 (Fla. Dist. Ct. App. 2001). "[A] trial court may consider factors other than anticipated costs and damages in setting a bond, including the adverse party's likelihood of overturning the temporary injunction." *Id.*

The restraint sought is to stay the arbitration which Defendants filed and to consolidate the issue of the enforceability of the Settlement Agreement (including any arbitration agreement or delegation clause therein) with this Court. If the temporary injunction is wrongly issued, Defendants will not have suffered any substantial harm, as the arbitration Defendants initiated will resume and the arbitrator will determine the enforceability of the Settlement Agreement. At most, Defendants will have suffered some minor delay in having this Court resolve whether the Court or the arbitrator is the appropriate decision-maker on the enforceability of the Settlement Agreement (including any arbitration agreement or delegation clause therein). There would be no lost profits, lost business opportunities, or similar compensable damage for deciding which forum decides the enforceability of the Settlement Agreement. Furthermore, the Court can adjust the bond at any time.

Furthermore, Plaintiffs lack the resources to pay a large bond, as they are two individuals without cash resources to post substantial bond. The bond must not be so large as to render the temporary injunction inaccessible to the aggrieved parties. Paul Akeo works for the Michigan State Police Department earning $98,000 a year and Christy Akeo does not have a job.

16

## VERIFICATION OF PLAINTIFFS

Under penalties of perjury, I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.

8/15/2025

_____
Dated

*Christy Akeo*

_____
Christy Akeo

8/15/2025

_____
Dated

*Paul K. Akeo*

_____
Paul Akeo

Dated: August 18, 2025

*/s/ Peter Kaufman* _____

Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@manlystewart.com
*Attorneys for Plaintiffs*

# EXHIBIT A

## MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT

This MUTUAL RELEASE AND NON-DISPARAGEMENT AGREEMENT (this "Agreement") is entered into as of the ___4___ day of ___April___, 2025 (the "Effective Date"), by and among CHRISTY LIN AKEO and PAUL K. AKEO, on one hand, and PALACE ELITE RESORTS, S.A. DE C.V. ("PALACE ELITE"), on the other hand.

WHEREAS, PALACE ELITE and CHRISTY LIN AKEO and PAUL K. AKEO have had a long-standing commercial relationship since at least February 1, 2016 pursuant to a series of contracts and ancillary agreements entered into on or about February 1, 2016, February 3, 2016, April 28, 2016, May 19, 2016, September 25, 2016, November 22, 2016, May 6, 2017, July 26, 2017, January 4, 2018, September 21, 2018, December 21, 2018, February 17, 2019, April 27, 2019, September 29, 2019, July 4, 2020, October 25, 2020, February 12, 2021, May 24, 2021, and November 21, 2021 (collectively, the "Membership Agreements").

WHEREAS, PALACE ELITE has asserted that CHRISTY LIN AKEO and **PAUL K.** AKEO have acted wrongfully in their dealings with PALACE ELITE (the "Palace Elite Claims ).

WHEREAS, CHRISTY LIN AKEO and PAUL K. AKEO have asserted that **PALACE** ELITE has acted wrongfully in its dealings with CHRISTY LIN AKEO and PAUL KL **AKEO (the** "Akeo Claims").

WHEREAS, PALACE ELITE, CHRISTY LIN AKEO, and PAUL K. AKEO **each** agree that they have had a full, reasonable, fair, and adequate opportunity to investigate the **Palace** Elite Claims and the Akeo Claims; to consult with and seek the advice of legal counsel **of their** choosing, in the United States and in Mexico, with respect to the Palace Elite Claims, **the Akeo** Claims, and this Agreement; and to consider and reflect on the terms and substance **of dis** Agreement.

WHEREAS, in order to avoid the hassle and expense of litigation, PALACE **ELITE** and CHRISTY LIN AKEO and PAUL K. AKEO wish to resolve and any and all existing **or potential** disputes between PALACE ELITE, on one hand, and CHRISTY LIN AKEO and/or **PAUL EL** AKEO, on the other hand, known or unknown, whether sounding in statute, common **law. equiy.** or other source of authority, whether under the laws of Mexico or any state or other **comycraeys** jurisdiction thereof, or under the laws of the United States or any state or other **cosskutesE** jurisdiction thereof, or any other jurisdiction, including but not limited to (I) the **Paface Efe** Claims and any and all claims or causes of action arising out of or related to the assertion **or pursui** of the Palace Elite Claims by PALACE ELITE, or by its ownership, managers, **sharehokfes.** attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related esfikss, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, **assigns,** third party administrators, or legal representatives, (2) the Akeo Claims and any and **aflcfessser** causes of action arising out of or related to the assertion or pursuit of the Akeo **Cfanns W** CHRISTY LIN AKEO and/or PAUL K. AKEO, or their

1

respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, (3) any and all claims or causes of action arising out of or relating to the Membership Agreements, and (4) any and all claims or causes of action arising out of or related to any acts or omissions occurring on or prior to the Effective Date of this Agreement (collectively, the "Released Claims").

1.    Mutual Releases.

a.  PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, hereby forever releases CHRISTY LIN AKEO and PAUL K. AKEO, as well as their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

b.  CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

c.  PAUL K. AKEO, on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, hereby forever releases Palace Elite, as well as its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, of and from the Released Claims. Provided, however, that claims and causes of action arising out of or relating to an alleged breach of this Agreement, or to enforce the terms of this Agreement, are not waived or released.

2. <u>Mutual Covenants Not to Sue.</u> Other than the Released Claims, PALACE ELITE does not know of any claims that PALACE ELITE might have against either CHRISTY LIN AKEO or PAUL K. AKEO. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, covenants and agrees that it will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against CHRISTY LIN AKEO and PAUL K. AKEO, or their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, on account of the Released Claims.

Other than the Released Claims, CHRISTY LIN AKEO does not know of any claims that CHRISTY LIN AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that she will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

Other than the Released Claims, PAUL K. AKEO does not know of any claims that PAUL K. AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. PAUL K. AKEO , on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that he will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

3

3.    Consideration

    a.    CHRISTY LIN AKEO and PAUL K. AKEO expressly acknowledge and agree that PALACE ELITE'S promises and covenants set forth herein, including but not limited to as set forth in Paragraphs 1 and 3, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement. .

    b.    PALACE ELITE expressly acknowledges and agrees that CHRISTY LIN AKEO's and PAUL K. AKEO's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 4 through 7 of this Agreement.

4.    Non-Disparagcment.

    a.    CHRISTY LIN AKEO represents and warrants, on behalf of herself and her agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that she shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about PALACE ELITE or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.) (each and any of the foregoing, "Disparaging Statements"). CHRISTY LIN AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog, and/or otherwise accessible on the internet and made by or on behalf of CHRISTY LIN AKEO, shall be removed within seven (7) days of the Effective Date, and CHRISTY LIN AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request

4

b.  PAUL K. AKEO represents and warrants, on behalf of himself and his agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that he shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any Disparaging Statements as defined in Paragraph 3(a) of this Agreement. PAUL K. AKEO further covenants and agrees that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of PAUL K. AKEO, shall be removed within seven (7) days of the Effective Date, and PAUL K. AKEO shall provide written confirmation and proof of such removal to PALACE ELITE upon request.



c.  PALACE ELITE represents and warrants, on behalf of itself and its agents, representatives, ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, and assigns, that it shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative statements about CHRISTY LIN AKEO and PAUL K. AKEO or their agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).



5.  <u>Non-Inducement.</u> From and after the Effective Date, each of CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

6.  <u>Liquidated Damages.</u> In the event of a breach of this Agreement, CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE agree that should any of them breach this Agreement, the breaching party shall immediately pay individually as fixed and

liquidated damages a sum of $50,000.00 U.S. Dollars per breach to the other party, as well as $1,000 U.S. Dollars per breach, per calendar day, until each and every breach is cured. Such liquidated damages in the amount of $50,000.00 U.S. Dollars are not intended to be a penalty and are solely intended to compensate the non-breaching party or parties. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

7. Injunctive Relief. In the event of a breach or a threatened breach by CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE of any provisions contained in this Agreement, any party will be entitled to seek an injunction restraining the party that has breached or is threatening a breach from such breach or threatened breach (without the necessity of proving the inadequacy as a remedy of money damages or the posting of bond, and CHRISTY LIN AKEO, PAUL K. AKEO, and PALACE ELITE hereby waive any defense or objection to such injunctive relief (if permitted under applicable law)); provided, however, that the right to injunctive relief will not be construed as prohibiting CHRISTY LIN AKEO, PAUL K. AKEO, or PALACE ELITE from pursuing any other available remedies, whether at law or in equity, for such breach or threatened breach.

8. Enforcement of this Agreement. Each party shall pay their own respective attorneys* fees and costs relating to this Agreement. In the event of a legal action or other proceeding arising out of an alleged breach of this Agreement or to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys* fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

9. Capacity to Execute. Each signatory to this Agreement represents and warrants that they are of appropriate legal, physical, and mental capacity, are not under duress or undue influence, has read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing, and are legally authorized to execute this Agreement. In entering into the Agreement, each party to this Agreement relies wholly upon their own judgment, belief, and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and does not rely upon any statement or representation of any other party or any other party's representatives.

10. Severability. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any tribunal may modify any invalid or unenforceable

6

provision to the maximum extent permitted by law while preserving the intended effect of such provision.

11. <u>Contract.</u> The terms of this Agreement are contractual and the parties to this Agreement represent and warrant that they intend to be bound by them.

12. <u>Construction.</u> Any rule of construction to the effect that ambiguities are resolved against the drafting party will not apply to the interpretation and construction of this Agreement.

13. <u>Headings.</u> The paragraph headings in this Agreement are intended solely for reference and shall not by themselves determine the construction or interpretation of this Agreement.

14. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal law of the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules.

15. <u>Arbitration.</u>

All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules. The seat of the arbitration shall be Vancouver, Canada. The language of the arbitration shall be English. Except as may be required by law, neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. No award or order made in the arbitration shall be published.

This arbitration agreement shall be governed by the laws of the State of New York, including United States federal law as applied by United States federal courts seated in New York, New York.

16. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which will be deemed an original, and such counterparts will together constitute a single Agreement. Faxed, e-mailed, or electronic signatures will be deemed originals.

[SIGNATURE PAGES FOLLOW]



THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____
CHRISTY LIN AKEO

4/3/25
_____
Date


[INSERT NOTARY TEMPLATE]

8

THE PERSON SIGNING .THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (1) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

_____

PA>L K. AKEO

4/3/25
_____
Date

[INSERT NOTARY TEMPLATE]

9

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY. (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (Hi) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

PALACE ELITE RESORTS, S.A. DE C.V.

By: _Jordans Astid lorenzo Rodriguez_

[INSERT NAME OF SIGNATORY] Its:
[INSERT TITLE OF SIGNATORY]

_4 / 3 / 2025_

Date

[INSERT NOTARY TEMPLATE]

10

# EXHIBIT B

# THE PALACE COMPANY

**THEPALACECOMPANY.COM**

Mr. Jesse Creed
Panish Shea Ravipudi LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
jcreed(a>panish.law

Mr. John Manly
Manly, Stewart & Finaldi
19100 Von Karman Avenue, Suite 800
Irvine, California, 92612
imanlytcbmanlystewart.com

*via e-mail*

July 31, 2025

Dear Messrs. Creed and Manly,

I am writing on behalf of Palace Elite Resorts, S.A. de C.V. ("Palace Elite") in response to your letter dated July 22, 2025, which included a draft complaint and outlined certain claims and demands related to the Mutual Release and Non-Disparagement Agreement (the "Agreement") signed by your clients, Mr. Paul and Ms. Christy Akeo, and Palace Elite, on April 3, 2025.

Palace Elite notes that the contemplated claims in your letter appear to be in direct conflict with the terms of the Agreement between Palace Elite and Mr. Paul and Ms. Christy Akeo, which includes, in Sections 1 and 15, a mutual release of claims and a submission of any disputes related to the Agreement to arbitration.

# TH E  PALACE  COM PAN Y

**THEPALACECOMPANY.COM**

In order to conduct a thorough internal assessment and prepare a more considered response, Palace Elite respectfully requests an additional five (5) business days, as of the date of this letter, to respond to further your communication.

We appreciate your cooperation, and we will be in touch no later than Thursday August 7, 2025 with our response. Palace Elite reserves all rights and remedies.

Sincerely,

Isaac Carrasco
F'alace Elite Resorts, S.A. de C.V.

| | | CASE NUMBER |
|---|---|---|
| [X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION 0  CIVIL □  DISTRICTS □  OTHER | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)** PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)** PALACE RESORTS, LLC, a limited liability company; et al. | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'      GLOBAL RESERVATIONS, LLC, a Florida limited liability company_____

8400 NW 33rd Street, Suite 406, Doral, FL 33122

CLOCK IN

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS** | BY:_____ 38034 DgJPUTXCLERK | DATE 8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23

Clerk's web address: www.miamidadeclerk.qov

| | | CASE NUMBER |
|---|---|---|
| [X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. □ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION | SUMMONS 20 DAY CORPORATE SERVICE | CASE NUMBER |
|---|---|---|
| 0 CIVIL □ DISTRICTS □ OTHER | (a) GENERAL FORMS | 2025-015958-CA-01 |

| PLAINTIFF(S) | VS. DEFENDANT(S) | SERVICE |
|---|---|---|
| PAUL AKEO and CHRISTY AKEO | PALACE RESORTS, LLC, a limited liability company; et al. | |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): PALACE ELITE, a Mexican corporation

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

**CLOCK IN**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY: McJarke DEPUTY CLERK | DATE 8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314 Rev. 06/23                    Clerk's web address: www.miamidadeclerk.qov

| | | CASE NUMBER |
|---|---|---|
| [X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
| **DIVISION**<br>0 CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2025-015958-CA-01 |
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS. DEFENDANT(S)**<br>**PALACE RESORTS, LLC, a**<br>**limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): PALACE COMPANY HOLDINGS

8400 NW 33rd Street, Suite 406, Doral, FL 33122

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Peter Kaufman, Florida Bar No. 548421

whose address is: 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails tojdo so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____,38084<br>DEPUTYCLERK | DATE<br>8/19/2025 |
|---|---|---|

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314 Rev. 06/23      Clerk's web address: www.miamidadeclerk.qov

| [X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| □  IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION<br>0  CIVIL<br>□  DISTRICTS<br>□  OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.   DEFENDANT(S)**<br>**PALACE RESORTS, LLC, a**<br>**limited liability company; et al.** | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s)'  PALACE ELITE RESORTS S.A. de C.V., a Mexican Corporation_____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

 Km 21 Carretera Cancun Morelos, CO Mexico

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025

**CLOCK IN**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY: _____ **Mclarkc** _____<br>DEPUTY CLERKffIJ £ yS| | DATE<br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITli&A   T OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                    Clerk's web address: www.miamidadeclerk.qov

|X| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>0 CIVIL<br>☐ DISTRICTS<br>☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-015958-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>PAUL AKEO and CHRISTY AKEO | **VS.  DEFENDANT(S)**<br>PALACE RESORTS, LLC, a limited liability company; et al. | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s)'  PALACE RESORTS, LLC, a limited liability company _____

 8400 NW 33rd Street, Suite 406, Doral, FL 33122

_____

_____

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Peter Kaufman, Florida Bar No. 548421_____

whose address is:  11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025_____

_____

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defend  rff ai   tc flo so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | ,38084<br>BY:_____<br>DEPUTY CLERK | DATE<br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@judll.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23

Clerk's web address: www.miamidadeclerk.qov

[X] THIT UlTXUUIl UUUK I or Ttit tLtVtIN Tri JUDICIAL UIIXI>UTI ttXtAIXIU I-UK MIAMI-UAUt UUUIXITY, I-LUKIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| 0 CIVIL | Form for Personal Services on a | |
| ☐ DISTRICTS | Natural Person | 2025-015958-CA-01 |
| ☐ OTHERS | | |

| PLAINTIFF(S) | VS | DEFENDANT(S) | CLOCK IN |
|---|---|---|---|
| PAUL AKEO and CHRISTY AKEO | | PALACE RESORTS, LLC, a limited liability company; et al. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| JOSE GIBRAN CHAPUR DAJER | 8400 NW 33rd Street, Suite 100, Doral, FL 33122 |

<u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"Forthose unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.orq."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

|   |   |   |   |
|---|---|---|---|
| [X] **Dade County Courthouse (05)**<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | [_] **Joseph Caleb Center Court (20)**<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | [_] **Hialeah District Court (21)**<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | J **North Dade Justice Center (23)**<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
| [_] **Coral Gables District Court (25)**<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, Miami, FL 33134 | [_] **South Dade Justice Center (26)**<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | | **SERVICE** |

| Plaintiff/Plaintiff Attorney   Peter Kaufman | Address: |
|---|---|
| Florida Bar No. 548421 | 11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025 |

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | *Mclarke*<br>DEPUTY CLERK | **DATE ON:**<br><br>8/19/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judici al Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW f Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 34 -7174; Email ADA@judlLflcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 070 Rev. 05/25                                                                 Clerk's web address: www.miamidadeclerk.gov

# EXHIBIT B



# Delaware

Page 1

### The First State

*I, CHARUNI PATIBANDA-SANCHEZ, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE CERTIFICATE OF FORMATION OF THE "PALACE RESORTS L.L.C.", WAS RECEIVED AND FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF JUNE, A.D. 1998.*

*AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID LIMITED LIABILITY COMPANY IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING FILED A CERTIFICATE OF CANCELLATION ON THE SIXTH DAY OF APRIL, A.D. 2011, AT 5:37 O'CLOCK P.M.*



**Charuni Palibanda-Sanchez, Secretary of Stare**

2911493  8375
SR# 20253577502

Authentication: 204391367
Date: 08-05-25

You may verify this certificate online at corp.delaware.gov/authver.shtml

# EXHIBIT C



LIC. JUAN MACARI JORGE

PASAPORTE
PASSPORT

ESTADOS UNIDOS MEXICANOS

Tipo/ Type: P

Clave del país de expedición/ Issuing state code: MEX

Pasaporte No./ Passport No.

Apellidos/ Surname
CHAPliR D.AJ-ER

Nombres/ Given names
JOSE GIBRAN

Nacionalidad/ Nationality
MEXICANA

CURP/ Personal No.

Fecha de nacimiento/ Date of birth

Sexo/ Sex: M

Lugar de nacimiento/ Place of birth
HEfilOA YUC MEX

Fecha de expedición/ Date of issue
02 02 2024

Fecha de expiración/ Expiry date
02 02 2027

Firma del Titular/ Holder's Signature

Observaciones/ Remarks

CARLOS OMAR HERRERA MATIAS

877199

P<MEXCHAPUR<DAJER<<JOSE<GIBRAN<<<<<<<<<<<<<

js 44 (Rev. 04/21) FLSD Revised 12/02/2022

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
Paul Akeo and Christy Akeo

### DEFENDANTS
Palace Resorts, LLC, Palace Elite, PR Global Reservations, LLC, Palace Elite Resorts S.A. de C.V., et al

**(b)** County of Residence of First Listed Plaintiff  Jackson County, Michigan
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  New Castle County, DE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Panish Shea Ravipudi LLP, 11111 Santa Monica Blvd., #700 Los Angeles, CA 90025 / 310-477-1700 / Manly Stewart & Finaldi, 19100 Von Karman Ave., #800, Irvine, CA 921612  / 949-252-9990

Attorneys *(If Known)*
Quinn Emanuel Urquhart & Sullivan LLP 2601 S. Bayshore Dr., 15th Flr, Miami, FL 33133 / 305-402-4880

**(cl)** Check County Where Action Arose:  0  MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

### II. BASIS OF JURISDICTION  *(Place an A in One Box Only)*

☐ 1 U.S. Government Plaintiff

H 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | | ☐ 830 Patent | ☐ 450 Commerce |
| n 152 Recovery of Defaulted Student Loans | ☐ 340 Marine / 368 Asbestos Personal Injury Product Liability | | Q 835 Patent- Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excl. Veterans) | | | ☐ 840 Trademark | r-I 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | | P,J 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | **LABOR** / **SOCIAL SECURITY** | n 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Acts / ☐ 861 HIA (1395ft) | | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations / ☐ 862 Black Lung (923) | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act / ☐ 863 DIWC/DIWW (405(g)) | | H 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act / ☐ 864 SSID Title XVI | | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation / ☐ 865 RSI (405(g)) | | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| | | | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | n 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ sentence*10118 t0 Vacate | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | |
| ☐ **290** All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other- | **IMMIGRATION** ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee — Conditions of Confinement | | | |

### V. ORIGIN *(place an "X" in One Box Only)*

☐ 1 Original Proceeding  @ 2 Removed from State Court  ☐ 3 Re-filed (See VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation Transfer  ☐ 7 Appeal to District Judge from Magistrate Judgment  ☐ & Multidistrict Litigation — Direct File  1 y Remanded from Appellate Court

### VI. RELATED/ RE-FILED CASE(S)
(See instructions): a) Re-filed Case ☐ YES  H NO  b) Related Cases ☐ YES  3 NO

JUDGE: DOCKET NUMBER:

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)'.*
28 USC §§ 1331, 1441(c) and 1446, 9 U.S.C. § 205

LENGTH OF TRIAL via  days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ In excess of $50,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  3 Yes  ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE  August 19, 2025

SIGNATURE OF ATTORNEY OF RECORD  /s/ David M. Orta (Fla. Bar No. 35750)

**FOR OFFICE USE ONLY : RECEIPT #**  AMOUNT  IFP  JUDGE  MAG JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.** **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL DISTRICT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2025-015958-CA-01

PAUL AKEO and CHRISTY AKEO.

Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability company; PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability company; PALACE ELITE RESORTS S.A. de C.V., a Mexican corporation; JOSÉ GIBRÁN CHAPUR DAJER. an individual; PALACE COMPANY HOLDINGS,

Defendants.

**SUPPLEMENTAL EVIDENCE IN SUPPORT OF PLAINTIFFS' RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST ARBITRATION INITIATED BY DEFENDANTS**

Plaintiffs. PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS. LLC, a Florida limited liability company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and provide the following supplemental new evidence:

1.     On August 18, 2025, at 3:28 p.m.. Defendants, through their counsel, submitted

1

an email to the Court requesting that the Court abstain from deciding Plaintiffs' Renewed Verified Emergency Motion For Temporary Restraining Order And Preliminary Injunction Against Arbitration Initiated By Defendants because Defendants planned to remove the case to federal court.  Defendants recounted in detail the procedural history of the arbitration proceeding, despite claiming that all those events are confidential.

2.      Within hours of seeking to have this Court slow down its adjudication of Plaintiffs' Emergency Motion, the same counsel for Palace Elite Resorts S.A. de C.V. submitted a further letter to the emergency arbitrator *at 8:22 p.m.* claiming that it was "urgent" for the emergency arbitrator to issue the orders Defendants requested to prevent Plaintiffs from litigating this action.  Defendants further requested the emergency arbitrator issue further emergency orders against Plaintiffs barring the Akeos from discussing, publicizing, or making any statements regarding their complaint and TRO motion, and all allegations contained therein, filed in this Court.

3.      Defendants seek to inflict the very irreparable injury that Plaintiffs claim to be their Emergency Motion by having the arbitrator decide the enforceability and validity of his authority under an agreement procured by physical duress.  *PaineWebber Inc.* v. *Hartmann,* 921 F.2d 507, 515 (3d Cir. 1990) ("In light of this policy, we think it obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."), *overruled on other grounds in Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79. 82 (2002); *Merrill Lynch Inv. Managers* v. *Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003) (relying on *Maryland Casualty Co.* v. *Realty' Advisory Board on Labor Relations,* 107 F.3d 979 (2d Cir.1997) to hold it is irreparable harm for

2

a party to be forced to arbitrate the making of a contract or a dispute it hasn't actually agreed to).

4.　　　This type of gamesmanship - telling this Court to abstain from exercising its duty to decide the Emergency Motion while telling the emergency arbitrator it was "urgent" to issue orders - should not be condoned.  The Circuit Court should decide Plaintiffs' Emergency Motion as it would any other emergency motion.  As these are all facts to which Plaintiffs' counsel has personal knowledge, he provides his verification below.

## VERIFICATION OF PLAINTIFFS' COUNSEL

Under penalties of perjury. I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.


Dated: August 18, 2025

*Is/ Peter Kaufman* _____
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard. Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufman@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanly@.manlystewart.com
*Attorneys for Plaintiffs*

3

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL DISTRICT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 2025-015958-CA-01

PAUL AKEO and CHRISTY AKEO.

Plaintiffs,

v.

PALACE RESORTS, LLC, a limited liability
company; PALACE ELITE, a Mexican
corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; PALACE ELITE
RESORTS S.A. de C.V., a Mexican
corporation; JOSE GIBRAN CHAPUR
DAJER. an individual; PALACE
COMPANY HOLDINGS,

Defendants.

## SECOND SUPPLEMENTAL EVIDENCE IN SUPPORT OF PLAINTIFFS' RENEWED VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST ARBITRATION INITIATED BY DEFENDANTS

Plaintiffs. PAUL AKEO and CHRISTY AKEO (collectively, "Plaintiffs") by and through undersigned counsel, pursuant to Fla. R. Civ. P. 1.610, moves for entry of a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant PALACE ELITE, a Mexican corporation; PR GLOBAL RESERVATIONS. LLC, a Florida limited liability company; PALACE RESORTS S.A. de C.V., a Mexican corporation; JOSE GIBRAN CAPUR DEJAR, an individual; PALACE COMPANY HOLDINGS (the "Defendants"), and provide the following supplemental new evidence:

1.      Plaintiffs respectfully request an immediate stay of the pending arbitration *before*

1

a hearing until the Court can hold a hearing on Plaintiffs' emergency motion. Absent an immediate stay, Plaintiffs will suffered irreparable injury: There is a deadline of *tomorrow* August 20, 2025 for the Akeos, who are unrepresented in the Vancouver, B.C. arbitration and pursuing avenues to obtain counsel, to respond to Defendants' application, filed August 15, 2025.

2.  On August 18, 2025, the Akeos made a request to the emergency arbitrator additional time to respond to the arbitrator's August 20, 2025 deadline to file a response to Defendants' emergency application. The Akeos explained they are seeking representation to respond in the ICA Arbitration.

3.  On August 19, 2025. the emergency arbitrator Nicholas Wiegand rejected the Akeos' request for additional time, requiring the Akeos to submit a response by tomorrow, and also set an online hearing for Tuesday, August 26, 2025 at 8:00 a.m.

4.  Absent an injunction being issued by tomorrow. Plaintiff's will suffer irreparable harm if they are forced to respond to the emergency arbitrator's deadline without representation. *PaineWebber Inc.* v. *Hartmann,* 921 F.2d 507, 515 (3d Cir. 1990) ("In light of this policy, we think it obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and. instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."), *overruled on other grounds in Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 82 (2002); *Merrill Lynch Inv. Managers* v. *Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003) (relying on *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,* 107 F.3d 979 (2d Ch'.1997) to hold it is irreparable harm for a party to be forced to arbitrate the making of a contract or a dispute it hasn't actually agreed to).

2

**VERIFICATION OF PLAINTIFFS' COUNSEL**

Under penalties of perjury. I declare that I have read the foregoing, and the facts are true and correct to the best of my knowledge and belief.

Dated: August 19, 2025

*/s/ Peter Kaufman* _____ ____
Peter Kaufman (Bar No. 548421)
Jesse Creed (pro hac vice to be filed)
Hunter Norton (pro hac vice to be filed)
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard. Suite 700
Los Angeles, California 90025
Telephone:  310.477.1700
Fax:  310.477.1699
pkaufinan@panish.law
jcreed@panish.law
hnorton@panish.law

John Manly (pro hac vice to be filed)
MANLY, STEWART & FINALDI
19100 Von Karman Ave. # 800
Irvine, CA 921612
Telephone: 949 252 9990
jmanlv(n manlvstewart.com
*Attorneys for Plaintiffs*