UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

PAUL AKEO and CHRISTY AKEO,

        Plaintiffs,

v.

PALACE ELITE RESORTS S.A. de C.V., a
Mexican corporation; PR GLOBAL
RESERVATIONS, LLC, a Florida limited
liability company; JOSÉ GIBRÁN CHAPUR
DÁJER, an individual; CHDB HOLDING,
S.A. de C.V., a Mexican corporation; and
CONTROLADORA IHC, S.A.P.I. de C.V., a
Mexican corporation; and OPERADORA
PALACE RESORTS JA LTD., a Jamaican
corporation,

        Defendants.

Case No.: 1:25-cv-23733-RKA

**PLAINTIFFS' REDACTED REPLY IN SUPPORT OF MOTION TO REMAND TO
STATE COURT FOR LACK OF FEDERAL QUESTION JURISDICTION**

**[*Unredacted Reply Will Be Filed Upon Granting of Joint Motion to Seal Concurrently Filed*]**

## I.  INTRODUCTION

Under Defendants' strained reading of the phrase "arising out of a legal relationship . . . considered as commercial," an arbitration agreement arising out of a criminal justice pardon can be considered as "commercial."  Plaintiffs described the legal relationship in their brief as a crime victim and accused relationship, while Defendants now recharacterize it as a pardoner/pardonee relationship.  This distinction is without a difference for purposes of the text of the statute.  Either way, both are a criminal relationship, not a commercial one. Unable to rely on the text of the statute, Defendants seek to recharacterize conditions of release from jail as somehow an ordinary arms-length commercial transaction.

Defendants essentially concede on page four of their brief that the origin of the arbitration agreement was the legal relationship created by the Mexican criminal justice system between Palace Elite as pardoner and the Akeos as pardonees.  They write that the *Acuerdo Reparatorio Inmediato* "set[] forth the conditions pursuant to which Palace Elite would provide a pardon to Plaintiffs,"  D.'s Opp. at 4. One of the express conditions to Palace Elite's "pardon" and the Akeos' freedom was the execution of the NDA Exhibit, which was incorporated by reference into the Reparation Agreement.  The pardon is therefore the source of the arbitration agreement and thus the legal relationship from which the arbitration agreement "ar[ose]" was a pardoner/pardonee relationship.  The relationship created by the power to pardon is anything but commercial.[1]  Whether cast as a victim and accused or pardoner and pardonee, these legal relationships were created by criminal law.  They are not "commercial" under any nation's laws.

---

[1] As explained below, "[a] pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." *United States v. Wilson*, 32 U.S. 150, 160–61 (1833).

Unable to find a textual hook for the criminal justice relationship, Defendants try to sever the criminal justice context from the arbitration agreement itself by recasting the reparation agreement as "separate" and "distinct" from the NDA Exhibit.  While they claim the Reparation Agreement and NDA Exhibit are "separate" and "distinct" in this Court, they pled in the parallel arbitration that they were one and the same.  They pled that "[███████████████████ ██████████████████████████████████████████████████████ ███████████" Ex. A, Defs.' Req. for Arb at ¶ 102, that the NDA Exhibit "███████████ ████████████" id. at ¶ 85, that by filing in court, the Akeos "███████████ ███████████████████████" id. at ¶ 111, and that the NDA Exhibit ███████████████ ████████████████████████████████," id. at ¶ 111.

Defendants' reliance on years-old timeshare contracts that ended in 2022 does not fit the text of the New York Convention because the *arbitration agreement* here did not "arise" from that legal relationship. It is undisputed that the last transaction between the Akeos and Palace Elite was in early 2022, and neither Party ever had any plans or intent to transact any further commerce since.  8/29/25 C. Akeo Decl. ¶ 6, ECF 31-1.  It was the coercive power of the Mexico State that unwillingly created a new legal relationship of victim/accused or pardoner/pardonee between the Akeos and Defendants in March and April 2025.  The arbitration agreement *arose* from that relationship, not the one that had ended three years before.

The Court should follow Plaintiffs' plain reading of the statute: identify the arbitration agreement at issue ("an agreement to arbitrate"), identify the "legal relationship" that was its source ("arising out of a legal relationship"), and determine whether that legal relationship was "considered commercial."  A criminal legal relationship is, by definition, not a commercial one. This Court should remand.

2

II.     **AN ARBITRATION AGREEMENT ARISING OUT OF A CRIMINAL JUSTICE RELATIONSHIP DOES NOT FALL UNDER THE NEW YORK CONVENTION**

A.      <u>**A Criminal Justice Relationship Is Not a "Legal Relationship … Considered as Commercial" Under the New York Convention**</u>

The New York Convention requires that the arbitration agreement "aris[e] out of a legal relationship . . . which is considered as commercial."  9 U.S.C. § 202.  Agreements to resolve criminal charges—and the relationship between the alleged victim and alleged perpetrator—are not commercial.  The plain meaning of the language requires a court to: (1) identify the arbitration agreement at issue ("an agreement to arbitrate"), (2) identify the "legal relationship" that was its source ("arising out of a legal relationship"), and (3) determine whether that legal relationship is "considered commercial."  9 U.S.C. § 202.  The relationship between a pardoner or pardonee or victim and accused is not commercial.  Black's Law Dictionary defines commercial as "involving the selling of goods or services for profit" and juxtaposes it with "public (governmental)" acts of the sovereign.  Pardons and dismissals of prosecutions and the conditions thereto are sovereign acts.

The Ninth Circuit has held that an arbitration agreement in a non-trial criminal justice resolution is not a "'contract evidencing a transaction involving commerce' under 9 U.S.C. § 2." *Breazeale v. Victim Services, Inc.*, 878 F.3d 759 (9th Cir. 2017).  Defendants admit that the arbitration agreement was a condition precedent to the resolution of the criminal charges, as the Reparation Agreement itself is expressly conditioned on execution of the NDA Exhibit containing the arbitration agreement.  (Urtecho Decl. ¶ 20(b), ECF No. 40-2 (describing the "revised reparation agreement" to "include[]" the "execut[ion]" of the NDA Exhibit); Hernandez-Romo Valencia ¶ 53, ECF No. 40-3 (reparation agreement "contained three obligations," including "execution of the NDA Agreement"); *see also* 8/29/25 Creed Decl., Ex. 2

3

at 23, ECF No. 31-3).[2]

Defendants claim that the NDA Exhibit is commercial because the NDA Exhibit references the prior timeshare relationship that the Defendants had terminated.  But any timeshare relationship between Defendants and the Akeos had terminated in 2022 when Palace Elite unilaterally terminated the Akeos' membership contract.  (FAC ¶¶ 24-27).  There is no evidence of any commercial relationship thereafter.  No further transaction or relationship existed between the Parties until the Quintana Roo Public Prosecutor, upon Palace Elite's complaint, forced the Akeos into an alleged legal relationship of crime-victim/accused with Palace Elite by jailing and charging the Akeos.[3]

Defendants seek to distinguish *Breazeale*, but their opposition makes clear that this relationship is more squarely a criminal justice relationship than the plaintiff in *Breazeale* had with the bad check administrator.  There, a "bad-check program administrator" claimed to offer those who'd written bounced checks an alternative to criminal prosecution if they gave restitution and paid the company a fee. 878 F.3d at 762-63.  That fee came with an arbitration clause. *Id.* at 763.  And the court held that the arbitration clause did not involve commerce because it was included in the resolution of a "potential prosecution"—that is, it arose out of a criminal relationship, not a commercial one. *Id.* at 767-68.  The FAA, the Court held, "provide[s] no basis to compel arbitration ... where the underlying agreement is a plea agreement, quasi-plea agreement, or deferred prosecution agreement between an individual and ***a party acting on behalf of the state***."

---

[2] All page numbers reference the ECF page numbers in the blue banner imprinted by the ECF system.
[3] Plaintiffs renew their protest of the propriety of the Mexico criminal justice proceedings.  *See* P.'s Mot. at 6 fn. 2.

Defendants' opposition itself demonstrate it was such a party.  Defendants argue that as the complaining party, Palace Elite, possessed the unfettered power to grant a pardon – that is, cause the dismissal of criminal charges; they further argue that Palace Elite could – and did – condition this pardon on the execution of the NDA Exhibit (and its arbitration clause). Hernandez-Romo Valencia ¶ 38, ECF No. 40-3.  In short, the arbitration clause was a requirement of a criminal pardon, arising out of the legal relationship created by Mexico criminal law.

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed."  *Wilson*, 32 U.S. at 160–61.  "To say that private parties could (and still can, in some places) exercise some control over criminal prosecutions says nothing to rebut the widely accepted principle that those private parties necessarily acted (and now act) on behalf of the sovereign."  *Robertson v. U.S. ex rel. Watson*, 560 U.S. 272, 279 (2010) (Roberts, C.J., dissenting from dismissal of the writ of certiorari as improvidently granted).  The power to grant a conditional pardon and dismiss criminal charges is clearly a sovereign, ***noncommercial*** act of the government that arises out of a legal relationship created by criminal law.[4]  "[O]ur entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another. . . . The terrifying force of the criminal justice system may only be brought to bear against an individual by society as a whole, through a prosecution brought on behalf of the government."

---

[4] *Lefebure v. D'Aquila*, 15 F.4th 650, 654 (5th Cir. 2021) ("It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the executive branch."); *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

*Lefebure*, 15 F.4th at 654 (quoting *Robertson*, 560 U.S. at 278). "Crimes and offenses against the laws of any State can only be defined, prosecuted and pardoned by the sovereign authority of that State." *Huntington v. Attrill,* 146 U.S. 657, 669 (1892). Thus, when the Quintana Roo prosecutor charged the Akeos, it purported to create a legal relationship whereby Palace Elite was given the power to pardon the Akeos and procure dismissal of the prosecution on whatever conditions it wished. No doubt it was a "party acting on behalf of the state." *Breazeale*, 878 F.3d at 767-68.

Defendants claim that the phrase "involving commerce" in 9 U.S.C. § 2 is as broad as the Commerce Clause power itself, citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). But those cases dealt with whether the commercial transaction at issue was intrastate or interstate; there was no dispute the transaction was commerce. By contrast, here we are dealing with the issue of whether commerce applies to criminal justice agreements. Commerce has never been understood to apply to criminal justice agreements. *See United States v. Morrison*, 529 U.S. 598, 618-19 (2010) (holding Commerce Clause does not extend to crime and "vindication of its victims"); *United States v. Lopez*, 514 U.S. 549, 559 (1995). "[A] plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law." *Breazeale*, 878 F.3d at 769. Ordinarily, criminal defense lawyers, members of Congress, and U.S. hostage negotiators do not negotiate in a commercial legal relationship.

As the Ninth Circuit in *Breazeale* explain, while there has been a "steady march of Supreme Court cases affirming the broad reach of the FAA" to ordinary commercial disputes, those "disputes arose from privately negotiated agreements" in commercial transactions outside the public sphere of criminal justice. *Id.* "None even remotely suggest the FAA's application in the criminal law context." *Id.* at 769.

6

Moreover, whereas the domestic FAA requires just that the contract evidence a transaction involving commerce, the New York Convention requires that the arbitration agreement "aris[e] out of a *legal relationship*" that "is considered commercial." 9 U.S.C. § 202. Again, as the defendants concede, the legal relationship out of which the arbitration agreement here arose was one of pardoner-pardonee in a criminal proceeding—i.e. a criminal relationship, not a commercial one. Defendants cite – and we have found – no authority to support their claim that an arbitration agreement arising out of a resolution of a criminal prosecution is "a transaction involving commerce" (domestic FAA) or "aris[es] out of a legal relationship . . . which is considered commercial" (New York Convention). The law has long distinguished between criminal and commercial relationships; arbitration is no different.

B.      **The NDA Exhibit is Part of the Reparation Agreement And Arose Out of the Criminal Relationship Regardless**

Unable to seriously dispute that their "legal relationship" with the Akeos when they imposed the arbitration agreement upon them was a criminal one, the Defendants argue that the NDA Exhibit was not incorporated into the Reparation Agreement. But that's not what they said in the arbitration they initiated. That's not how contract law works. And in any event, the relevant question isn't whether the Reparation Agreement and the NDA Exhibit are technically distinct agreements; it's whether the NDA Exhibit arose out of a criminal legal relationship or a commercial one. Again, there's no dispute that the agreement was exacted as a condition of the dismissal of criminal charges, based on the Palace Defendants' role as gatekeeper of a pardon—that is a criminal relationship, not a commercial one. It doesn't matter whether the arbitration agreement was in the Reparation Agreement or its NDA Exhibit because both arose out of the criminal relationship.

Over and over again, Defendants argued the Reparation Agreement and NDA Exhibit were one and the same in the parallel arbitration where the NDA Exhibit itself " ███████████ ███████████████████████████████████████████████████████████ ."  Ex. A, D.'s Opp. at ¶ 111.  There are too many contradictory statements to document in the reply.[5]

The Defendants' belated effort to claim that the NDA Exhibit is somehow separate from the Reparation Agreement (assuming it matters at all) is inconsistent with the text of the Reparation Agreement and black-letter contract law.  "'[E]xtrinsic matters such as letters and

---



[5] *See* Ex. A, D.'s Req. for Arb. ¶ 85 ("█████████████████████ █████████████████████████████████████████████ █████████████████████████████████ "); *id.* at ¶ 102 ████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ "); *id.* at ¶ 97 ("█████████████ ██████████████████████████████████ "); *id.* at ¶ 111 (█████████████████ ███████████████████ ); Ex. B, D.'s App. for Emerg. Relief ¶¶ 31-32 ("███████████████████████ ███████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████████████ .."); *id.* ¶ 39 ("██████████████████ ██████████████████████████████ ████████████████████████████ "); *id.* ¶ 83 ("████████████████ ██████████████████████████████████ ████████████████████████████████████████████ ."); *id.* ¶ 86 ("████████████████████████████████████ ████████████████████████████ ███████████████████████████ . . . ."); *id.* ¶ 90 ("███████████████████████████ ████████████████████████████████████ ████████████████████████████████ ").

8

other instruments may be construed as part of a contract where they are **referred** to therein or **annexed** thereto.' *Mayo v. Royal Ins. Co. of Am.*, 242 A.D.2d 944, 944 (4th Dep't 1997).[6]  Both are true here:  Defendants conceded in the arbitration and their expert conceded here that the Reparation Agreement expressly referenced, annexed as an exhibit, "incorporated," and arose out of the same transaction as the NDA Exhibit.  *See also Mack-Cali Realty, L.P. v. Everfoam Insulation Sys., Inc.*, 129 A.D.3d 676, 677–78 (2d Dep't 2015) (holding it error to conclude that the "Quotation" listed as "Exhibit A" of the contract . . . was not part of the contract.").  Second, "[i]n the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument." *Mayo*, 242 A.D.2d at 944.  "The test of the divisibility of a contract has been stated to be 'whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out.' Williston on Contracts, § 863." *Rhine v. New York Life Ins. Co.*, 6 N.E.2d 74, 79 (N.Y. 1936).  *Rhine* held a disability insurance policy and a life insurance policy were a single contract because "defendant would not have consented to the bargain for disability benefits unless it was made as part of a policy for life insurance." *Id.* Here, the Reparation Agreement and the NDA Exhibit were executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction. Defendants concede that but for the NDA Exhibit, they would have never agreed to release the Akeos from jail.  Ex. A, D.'s Req. for Arb. ¶ 102.  They are thus, "in the eyes of the law, one instrument." *Mayo*, 242 A.D.2d at 944.[7]

---

[6] Defendants claim New York law applies, but Plaintiffs do not believe choice of law is outcome determinative.
[7] The defendants' only case, *In re Refco Inc.*, No. 05-60006, 2006 WL 2664215, at *4 (S.D.N.Y.

More importantly, though, whether the NDA Exhibit is technically a part of the Reparation Agreement or they are related agreements "construed in light of one another" doesn't matter. *In re Refco*, 2006 WL 2664215, at *4. The question is whether the "legal relationship" out of which it arose is a criminal one or a commercial one. And as the Palace Defendants have themselves admitted over and over again, the NDA Exhibit was a condition of the Defendants granting a pardon to the Akeos—a condition of the dismissal of criminal charges. The legal relationship that allows for a pardon of criminal charges is a criminal one, not a commercial one.

### C.      Defendants' Timeshare Cases Do Not Apply

Defendants cannot cite a single precedent anywhere enforcing any arbitration clause that arose out of a criminal justice resolution and made under the legal relationship created by a sovereign's criminal procedure.  That is because there is none.  Rather than addressing this issue, Defendants resort to irrelevant cases.  *See Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355 (11th Cir. 2023).  But neither of those American companies would ever contemplate such bizarre and Kafkaesque conduct as requiring a customer to sign an arbitration agreement in exchange for a "pardon," dismissal of the criminal prosecution, and a customer's freedom.

### III.    CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion and remand the action.

---

Sept. 13, 2006), does not say otherwise. It merely held that under the circumstances in that case, contracts that were "*separately* executed" did not constitute a single contract. *Id.*

Dated: September 19, 2025

/s/ Peter Kaufman
Peter Kaufman (Bar No. 548421)
pkaufman@panish.law
Jesse Creed (admitted pro hac vice)
jcreed@panish.law
Hunter Norton (admitted pro hac vice)
hnorton@panish.law
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700

/s/ John Manly
John Manly, Esq. (pending pro hac vice)
jmanly@manlystewart.com
MANLY, STEWART & FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, CA 92612
949.252.9990

*Attorneys for Plaintiffs*