UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

PAUL AKEO and CHRISTY AKEO,

        Plaintiffs,

v.

PALACE ELITE RESORTS S.A. de C.V., a Mexican corporation; PR GLOBAL RESERVATIONS, LLC, a Florida limited liability company; JOSÉ GIBRÁN CHAPUR DÁJER, an individual; CHDB HOLDING, S.A. de C.V., a Mexican corporation; and CONTROLADORA IHC, S.A.P.I. de C.V., a Mexican corporation; and OPERADORA PALACE RESORTS JA LTD., a Jamaican corporation,

        Defendants.

Case No.: 1:25-cv-23733-RKA

**DECLARATION OF JOHN MANLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY**

I, John Manly, declare as follows:

1.      I am counsel for Plaintiffs Paul Akeo and Christy Akeo. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      I am admitted to practice law in the State of California, New York, Arizona, Alaska and numerous Federal Courts and am a partner of Manly, Stewart & Finaldi, located in Irvine, California. I have practiced as a civil litigator for over thirty years.

3.      I also have experience in national security intelligence.  I served as an Intelligence Officer in the United States Navy Reserve from 1993 until 2004.  In that position, I received Top

Secret clearance.  I was educated and trained on the intelligence cycle, all-source analysis, collection management, operational intelligence, indications and warning, targeting, threat and order-of-battle analysis, and intelligence briefing skills.  I was also educated and trained on understanding and assessing foreign security risks and threats.  I was required to undergo continuing intelligence education for all my years as an Intelligence Officer.  I served at various intelligence commands.  I brought that background and training to my representation of Paul and Christy Akeo in assessing the level of physical security risk and threats they were facing while imprisoned in Mexico jail at the direction of the Chapur family, a wealthy and powerful Mexican family.

4.      I first encountered the Akeo family in 2016 when I was contacted by Christy Akeo. I was acting as lead counsel in the Larry Nassar case. Tragically, Ms Akeo's young daughter had been molested for years by Olympic doctor Larry Nassar as a very young child at a USA Gymnastics gym & at Michigan State. Indeed my office represented hundreds of women & girls against Michigan State University, USA Gymnastics, the US Olympic & Paralympic Committee & the FBI.

5.      Beginning in March 2025, I assisted Paul Akeo, Christy Akeo, and their family in connection with the Akeos' detention in Mexico and their efforts to secure release from Mexican custody. From approximately March 2025 through April 3, 2025, I coordinated daily, and at times multiple times per day, with the Akeos' Mexican counsel, with United States Special Presidential Envoy for Hostage Affairs Adam Boehler, with United States Congressman Tom Barrett, with personnel of the United States Embassy in Mexico and the United States Consulate in Mérida, and with members of the Akeo family, including Christy Akeo's son, Michael Lemke and daughter Lindsey Lemke.  While imprisoned, Christy Akeo gave her two kids Michael

Lemke and Lindsey Lemke a power of attorney.

6.      As part of that coordination, I received contemporaneous reports from the Akeos' Mexican counsel concerning the ongoing negotiations between Palace Elite Resorts, S.A. de C.V. ("Palace Elite") for the release of the Akeos from Mexico prison. The Akeos' Mexican counsel communicated to me, in real time, the demands in the proposed non-disparagement, mutual release, and reparation agreements that were exchanged between the parties between approximately March 22, 2025 and April 3, 2025. I reviewed some drafts, discussed them with the Akeos' Mexican counsel, and discussed them with members of the Akeo family.

7.      While in name I was American counsel for the Akeos, the Akeos were denied the opportunity to have U.S. counsel or any civil counsel during the supposed negotiations of this civil agreement.  My representation of them was significantly hampered by actions of Mexican officials.  The Akeos were not permitted to speak with me, even though I was designated as their attorney.  They were permitted very brief, limited telephone calls with their children only on a monitored jail phone.  They were not permitted to contact me at the April 3, 2025 hearing when they were forced to sign the NDA or else remain in prison under the threat of criminal prosecution.  I was too concerned for my personal safety to go to Mexico to assist them in person.

8.      I had directed the Akeos' Mexican counsel, and understood, that in successive rounds of negotiations the Akeos' Mexican counsel proposed removing two very specific clauses at issue: (1) the mandatory arbitration provision and (2) the related no-duress representations from Palace Elite's draft non-disparagement agreement, and that Palace Elite refused to agree to those proposals each time. I communicated that understanding to members of the Akeos' family, to Special Envoy Boehler, and to Congressman Barrett during the negotiations.

9. While I am not sure if I was sent all the agreements, I was sent some agreements and was told by the Akeos' Mexican counsel of the contents of other drafts.

10. On March 22, 2025, I received the first draft of a Non-Disparagement Agreement proposed by Palace. I had understood that Palace refused to dismiss the criminal prosecution unless the Akeos signed a version of a non-disparagement agreement. The first draft proposed by Palace did not have an arbitration agreement at all. Attached hereto as Exhibit 1 is a true and correct copy of the first draft of the Non-Disparagement Agreement.

11. On April 2, 2025, I understood Palace sent a second version of the draft to the Akeos' Mexican counsel. I learned from the Akeos' Mexican counsel that the second draft included an arbitration clause with the seat of arbitration in Mexico City, Mexico and statements indicating that the Akeos were not under duress (i.e. the "no duress" recitals).

12. The next day, on April 3, 2025, the Akeos were scheduled to be released from prison and the charges were going to be dismissed as long as they agreed to the Non-Disparagement Agreement. The night before, I directed the Akeos' Mexican counsel to remove the arbitration clause and the duress recital, which I understand they sent over to Palace the next day. Attached hereto as Exhibit 2 is a true and correct copy of that version of the Non-Disparagement Agreement, which removed the mandatory arbitration clause and all "no duress" recitals. I had understood that Palace had agreed to the terms of this draft, but it appears that at the hearing on April 3, 2025 when the Akeos were denied the opportunity for my advice and counsel, Palace refused to ultimately accede to the terms of this draft at the hearing and required the Akeos to sign their version or else return to prison.

13. Congressmember Barrett had traveled to Cancun to facilitate the release of the Akeos from their wrongful detention. I was in regular contact by telephone and text message

with Congressmember Barrett during this time.

14.    I learned from Congressmember Barrett and the Akeos' Mexican counsel that our version of the NDA in Exhibit 2 was unacceptable to Palace because it omitted the mandatory arbitration clause and the "no duress" recitals.  I learned from Congressmember Barrett and the Akeos' Mexican counsel that Palace would not agree to release the Akeos from prison or dismiss the charges unless the Akeos agreed to their version of the Non-Disparagement Agreement that contained the arbitration clause and the "no duress" recitals.  It literally became a choice of the continuation of prison and criminal prosecution for the Akeos or agree to this arbitration clause.

15.    On a phone call, Congressmember Barrett had encouraged me to approve of their signing of Palace's version of the Non-Disparagement Agreement containing mandatory arbitration and "no duress" recitals because they had no other choice.  It was at this point that Congressmember Barrett texted me to confirm that the Akeos had to agree to Palace's version of the agreement – of which the main provisions at issue were the arbitration agreement and the "no duress recitals" – or else remain in prison.

16.    Attached hereto as Exhibit 3 is a true and correct copy of a screenshot of text messages exchanged between Congressman Barrett and me on April 3, 2025. As reflected in Exhibit 3, on the afternoon of April 3, 2025, Congressman Barrett wrote to me: "I am convinced that the only way Paul and Christy can leave is if they sign the NDA under the terms that Palace had demanded." I responded: "It appears they have no choice but to sign or stay in prison. Thx for all your efforts."

17.    This text message confirmed what Congressman Barrett had just told me, i.e. that the Akeos had to accept mandatory arbitration in a foreign forum as well as "no duress" recitals or else they must stay in Mexican prison under continued threat of criminal prosecution.

18.     Throughout my coordination with the Akeos' Mexican counsel, the Akeo family, Special Envoy Boehler, Congressman Barrett, and United States Embassy and Consulate personnel, my contemporaneous understanding—based on the reports I received from the Akeos' Mexican counsel and on my own communications with United States diplomatic personnel—was that Palace Elite would not agree to the dismissal of the criminal action it had instigated against the Akeos, and the Akeos would not be released from Mexican custody, unless the Akeos signed an agreement that included a mandatory arbitration provision in a foreign forum. I communicated that understanding to members of the Akeo family on multiple occasions during the period from approximately March 22, 2025 through April 3, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of April, 2026, at Irvine, California.


*/s/ John Manly*

_____

John Manly

# EXHIBIT 1

## NON-DISPARAGEMENT AND CONFIDENTIALITY AGREEMENT

THIS NON-DISPARAGEMENT AND CONFIDENTIALITY AGREEMENT (this "Agreement") is entered into as of the _____ day of _____, 2025 (the "Effective Date") , by and among **CHRISTY LIN AKEO** and **PAUL K. AKEO**, and **PALACE ELITE RESORTS, S.A. DE C.V.** ("Palace Elite").

**NOW THEREFORE**, in consideration of the promises, covenants, and undertakings contained herein, and in consideration of the amounts to be paid by Palace Elite to **CHRISTY LIN AKEO** and **PAUL K. AKEO**, as set forth below, the sufficiency of which is hereby acknowledged, **CHRISTY LIN AKEO**, **PAUL K. AKEO**, and Palace Elite agree as follows:

1. **Consideration for Non-Disparagement and Confidentiality**. As consideration for **CHRISTY AKEO**'s and **PAUL AKEO**'s promises and covenants contained herein, Palace Elite will pay **CHRISTY LIN AKEO** the total sum of $10.00 U.S. Dollars and **PAUL K. AKEO** the total sum of $10.00 U.S. Dollars. It is expressly acknowledged by **CHRISTY LIN AKEO** and **PAUL K. AKEO** that these amounts represent good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein.

2. **Non-Disparagement**. I, **CHRISTY LIN AKEO**, represent and warrant, on behalf of myself, agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns (referred to as "**CHRISTY AKEO**"), that I shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any disparaging, derogatory, or negative comments about **PALACE ELITE RESORTS, S.A. DE C.V.**, together with its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, and legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements or video releases, articles, commentaries, written, audio or visual (e.g., YouTube, Facebook, Instagram, X, Threads, or the like, advertising or marketing materials, blogs, chat-rooms, etc.) (each and any of the foregoing, "Disparaging Statements"). Disparaging Statements shall also include, but is not limited to, any instructions to other individuals or entities on how to purportedly "terminate" their respective agreements with Palace Elite, including methods involving the false reporting to credit card companies that the credit card used to make monthly payments to Palace Elite was lost or stolen in order to stop having to make payments towards their contract with Palace Elite, even though the credit card was not actually "lost or stolen", or that the acquired services, memberships or products were not provided or supplied or properly provided or supplied even if they had actually been provided or supplied. **CHRISTY AKEO** expressly acknowledges that the Disparaging Statements have damaged, and continue to damage, Palace Elite causing damages in excess of SEVEN MILLION U.S. Dollars ($7,000,000.00). I further covenant and agree that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of **CHRISTY AKEO**, shall be removed within seven (7) days of the Effective Date, and shall provide written confirmation and proof of such removal to Palace Elite, at its complete satisfaction.

I, **PAUL K. AKEO**, represent and warrant, on behalf of myself, agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns (referred to as "**PAUL AKEO**"), that I shall refrain from publishing, in writing or verbally, any disparaging, derogatory, or negative comments about **PALACE ELITE RESORTS, S.A. DE C.V.**, together with its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, and legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements or video releases, articles, commentaries, written, audio or visual (e.g., YouTube, Facebook, Instagram, X, Threads or the like, advertising or marketing materials, blogs, chat-rooms, etc.) ("Disparaging Statements"). Disparaging Statements shall also include, but is not limited to, any instructions to other individuals or entities on how to purportedly "terminate" their respective agreements with Palace Elite, including methods involving the false reporting to credit card companies that the credit card used to make monthly payments to Palace Elite was lost or stolen in order to stop having to make payments towards their contract with Palace Elite, even though the credit card was not actually "lost or stolen" or that the acquired services, memberships or products were not provided or supplied or properly provided or supplied even if they had actually been provided or supplied. **PAUL AKEO** expressly acknowledges that the Disparaging Statements have damaged, and continue to damage, Palace Elite causing damages in excess of SEVEN MILLION U.S. Dollars ($7,000,000.00).. I further covenant and agree that any and all Disparaging Statements currently posted on any website, webpage, weblog and/or otherwise accessible on the internet and made by or on behalf of **PAUL AKEO**, shall be removed within seven (7) days of the Effective Date, and shall provide written confirmation and proof of such removal to Palace Elite, at its complete satisfaction.

3. **Non-Inducement**. From and after the Effective Date, each of **CHRISTY AKEO** and **PAUL AKEO** represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

4. **Capacity to Execute**. **CHRISTY AKEO** and **PAUL AKEO** represent and warrant that they are of sound mind, appropriate legal, physical, and mental capacity, are not under duress or undue influence, and are legally authorized to execute this Agreement. In entering into the Agreement, **CHRISTY AKEO** and **PAUL AKEO** rely wholly upon their own judgment, belief and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and do not rely upon any statement or representation of Palace Elite or its representatives. Each of **CHRISTY AKEO** and **PAUL AKEO** have read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing.

5. **Confidentiality**. **CHRISTY AKEO** and **PAUL AKEO** understand and agree that, in consideration of the promises, covenants, and undertakings contained herein, and in consideration of the amounts to be paid by Palace Elite to each respectively, they shall keep the terms and

conditions of this Agreement, and any and all communications, negotiations, and circumstances leading to this Agreement, completely confidential, except to the extent expressly required by final, non-appealable court order or valid subpoena, and in such case shall provide Palace Elite with immediate written notice and an opportunity to object before any disclosure, including but not limited to any conversations, correspondence, and/or other documents, which culminated in this Agreement, whether or not directly involving **PALACE ELITE RESORTS, S.A. DE C.V.**, together with its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, and legal representatives.

6. **Liquidated Damages**. In the event of a breach of the terms of this Agreement, **CHRISTY AKEO** and **PAUL AKEO** agree that Palace Elite will suffer damages, but by their nature such damages are difficult to ascertain. Therefore, it being impracticable or impossible to determine the amount of actual damage suffered by Palace Elite due to a breach of this Agreement, **CHRISTY AKEO** and **PAUL AKEO** agree that should either of them breach any term of this Agreement, each of **CHRISTY AKEO** and **PAUL AKEO** shall immediately pay individually as fixed and liquidated damages a sum of $1,000,000.00 U.S. Dollars to Palace Elite. Such liquidated damages in the amount of $1,000,000.00 U.S. Dollars for each of **CHRISTY AKEO** and **PAUL AKEO** are not intended to be a penalty and are solely intended to compensate Palace Elite for damages. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

7. **Injunctive Relief**. In the event of a breach or a threatened breach by **CHRISTY AKEO** and **PAUL AKEO** of any provisions contained in this Agreement, Palace Elite will be entitled to seek an injunction restraining **CHRISTY AKEO** and **PAUL AKEO** from such breach or threatened breach (without the necessity of proving the inadequacy as a remedy of money damages or the posting of bond, and CHRISTY AKEO and PAUL AKEO hereby waive any defense or objection to such injunctive relief (if permitted under applicable law)); provided, however, that the right to injunctive relief will not be construed as prohibiting Palace Elite from pursuing any other available remedies, whether at law or in equity, for such breach or threatened breach.

8. **Execution of Palace Elite Not Required**. **CHRISTY AKEO** and **PAUL AKEO** specifically agree, acknowledge and represent that: (i) this document constitutes a unilateral and irrevocable obligation that does not need to be executed by Palace Elite or its representatives in order for it to be fully binding upon **CHRISTY AKEO** and **PAUL AKEO**, and their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns; and (ii) they waive any defense or claim related to lack of mutuality or consideration.

9. **Enforcement of this Agreement**. Each party shall pay their own respective attorneys' fees and costs relating to this Agreement. In the event of a legal action or other proceeding arising under or relating to this Agreement, or a dispute regarding any alleged breach, default, claim, or

misrepresentation arising out of or relating to this Agreement, whether or not a lawsuit is filed, the prevailing party shall be entitled to recover his/her/its reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

10. **Service of Process**. In the event any proceeding is brought in any court of competent jurisdiction to enforce the terms of this Agreement, or to enforce any award, relief or decision issued by any court of competent jurisdiction, **CHRISTY AKEO** and **PAUL AKEO** irrevocably consent to personal jurisdiction and to the service of process in any action by any method permitted by applicable law, including but not limited to (a) e-mailing copies of the process to **CHRISTY AKEO** and **PAUL AKEO** at _____ and/or _____; or (b) mailing copies of the process to **CHRISTY AKEO** and **PAUL AKEO** at: _____.

Service effected as provided in this manner will be deemed complete and become effective five (5) days after the e-mailing, or mailing of the process, as applicable.

11. **Severability**. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any court may modify any invalid or unenforceable provision to the maximum extent permitted by law while preserving the intended effect of such provision.

12. **Governing Law**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules. The venue for any action arising from or relating to this Agreement shall exclusively lie in the appropriate state or federal court having jurisdiction over the State of Michigan. CHRISTY AKEO and PAUL AKEO hereby irrevocably waive any objection to such jurisdiction and venue, including any claim of forum non conveniens.

[SIGNATURES ON NEXT PAGE]

**THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS**

**CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE, (v) IS OF SOUND MIND AND UNDER NO DURESS OR UNDUE INFLUENCE, AND (vi) FREELY AND VOLUNTARILY SIGNS THE AGREEMENT.**

_____

**CHRISTY LIN AKEO**

_____

Date

[INSERT NOTARY TEMPLATE]

**THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE, AND (v) FREELY, VOLUNTARILY AND WITHOUT DURESS SIGNS THE AGREEMENT.**

_____

**PAUL K. AKEO**

_____

Date

[INSERT NOTARY TEMPLATE]

# EXHIBIT 2

## NO-DISPARAGEMENT AGREEMENT

This NON-DISPARAGEMENT AGREEMENT (this "Agreement") is entered into as of the _____ day of _____, 2025 (the "Effective Date"), by and among CHRISTY LIN AKEO and PAUL K. AKEO, on one hand, and PALACE ELITE RESORTS, S.A. DE C.V. ("PALACE ELITE"), on the other hand.

WHEREAS, PALACE ELITE and CHRISTY LIN AKEO and PAUL K. AKEO have had a long-standing commercial relationship since at least February 1, 2016 pursuant to a series of contracts and ancillary agreements entered into on or about February 1, 2016, February 3, 2016, April 28, 2016, May 19, 2016, September 25, 2016, November 22, 2016, May 6, 2017, July 26, 2017, January 4, 2018, September 21, 2018, December 21, 2018, February 17, 2019, April 27, 2019, September 29, 2019, July 4, 2020, October 25, 2020, February 12, 2021, May 24, 2021, and November 21, 2021 (collectively, the "Membership Agreements").

WHEREAS, PALACE ELITE has asserted that CHRISTY LIN AKEO and PAUL K. AKEO have acted wrongfully in its dealings with PALACE ELITE.

WHEREAS, CHRISTY LIN AKEO and PAUL K. AKEO have asserted that PALACE ELITE has acted wrongfully in its dealings with CHRISTY LIN AKEO and PAUL K. AKEO.

1. Consideration for Non-Disparagement

   a. CHRISTY LIN AKEO and PAUL K. AKEO expressly acknowledge and agree that PALACE ELITE's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 3 through 11 of this Agreement.

   b. PALACE ELITE expressly acknowledges and agrees that CHRISTY LIN AKEO's and PAUL K. AKEO's promises and covenants set forth herein, including but not limited to as set forth in Paragraph 2, are good, valuable, and sufficient consideration for the promises, covenants, and terms contained herein, including but not limited to the terms of Paragraphs 3 through 10 of this Agreement.

2. Non-Disparagement.

   a. CHRISTY LIN AKEO represents and warrants, on behalf of herself and her agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that she shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any statements made about PALACE ELITE or its ownership, managers, shareholders, attorneys,

1

employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).

b.    PAUL K. AKEO represents and warrants, on behalf of himself and his agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, that he shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any statements made about PALACE ELITE or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).

c.    PALACE ELITE represents and warrants, on behalf of itself and its agents, representatives, ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, and assigns, that it shall refrain from making or publishing, in writing or verbally, directly or indirectly, by word, statement, or gesture, any statements about CHRISTY LIN AKEO and PAUL K. AKEO or their agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, including, but not limited to, in or on websites, interviews, press releases, news releases, media releases, press statements, video releases, articles, commentaries, written, audio or visual means (e.g., YouTube, Facebook, Instagram, X, Threads, advertising or marketing materials, blogs, chat-rooms, etc.).

3. Mutual Covenants Not to Sue. Other than the Released Claims, Palace Elite does not know of any claims that Palace Elite might have against either CHRISTY LIN

2

AKEO or PAUL K. AKEO. PALACE ELITE, on behalf of itself and its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, covenants and agrees that it will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against CHRISTY LIN AKEO and PAUL K. AKEO, or their respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, on account of the Released Claims.

Other than the Released Claims, CHRISTY LIN AKEO does not know of any claims that CHRISTY LIN AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. CHRISTY LIN AKEO, on behalf of herself as well as her respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that she will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

Other than the Released Claims, PAUL K. AKEO does not know of any claims that PAUL K. AKEO might have against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives. PAUL K. AKEO , on behalf of himself as well as his respective agents, representatives, legal guardians, heirs, executors, administrators, successors, and assigns, covenants and agrees that he will not bring any lawsuit, arbitration, or other proceeding, in Mexico or any state or other constituent jurisdiction thereof, in the United States or any state or other constituent jurisdiction thereof, or in any other jurisdiction, against Palace Elite or its ownership, managers, shareholders, attorneys, employees, agents, directors, officers, servants, subsidiaries, affiliates, related entities, parent corporations, stockholders or stockholding entities, insurers, reinsurers, successors, assigns, third party administrators, or legal representatives, on account of the Released Claims.

4. Non-Inducement. From and after the Effective Date, each of CHRISTY AKEO, PAUL AKEO, and PALACE ELITE represent and warrant that they shall not, whether directly or indirectly, induce or attempt to induce or encourage others to induce or attempt

3

to induce, any person to use fraudulent means under applicable law or any means whatsoever to terminate any agreement or relationship with Palace Elite.

5. <u>Liquidated Damages</u>. In the event of a breach of this Agreement, CHRISTY AKEO, PAUL AKEO  and PALACE ELITE agree that a should either of them breach this Agreement, each any of them shall immediately pay individually as fixed and liquidated damages a sum of $50,000.00 U.S. Dollars per breach to the other party, as well as $1,000 U.S. Dollars per breach, per calendar date, until each and every breach is cured. Such liquidated damages in the amount of $50,000.00 U.S. Dollars. The payment of such liquidated damages will not affect the continued enforcement of this Agreement.

6. <u>Enforcement of this Agreement</u>. Each party shall pay their own respective attorneys' fees and costs relating to this Agreement. In the event of a legal action or other proceeding arising out of an alleged breach of this Agreement or to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party also shall be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including but not limited to costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

7. <u>Capacity to Execute</u>. Each signatory to this Agreement represents and warrants that they are of appropriate legal, physical, and mental capacity, has read this Agreement thoroughly and had an opportunity to have this Agreement fully explained by independent counsel and other advisor(s) of their choosing, and is legally authorized to execute this Agreement. In entering into the Agreement, each party to this Agreement relies wholly upon their own judgment, belief, and knowledge of their respective obligations related to the terms, considerations, covenants, and promises contained herein, and does not rely upon any statement or representation of any other party or any other party's representatives.

8. <u>Severability</u>. Should any provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full force and effect. The parties agree that any tribunal may modify any invalid or unenforceable provision to the maximum extent permitted by law while preserving the intended effect of such provision.

9. <u>Contract.</u>  The terms of this Agreement are contractual and the parties to this Agreement represent and warrant that they intend to be bound by them.

4

10. <u>Construction.</u>   Any rule of construction to the effect that ambiguities are resolved against the drafting party will not apply to the interpretation and construction of this Agreement.

11. <u>Headings.</u>  The paragraph headings in this Agreement are intended solely for reference and shall not by themselves determine the construction or interpretation of this Agreement.

12. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal law of the State of Delaware and/or the State of Michigan, without giving effect to any choice of law or conflict of law provisions or rules.

13. <u>Counterparts.</u>  This Agreement may be executed in counterparts, each of which will be deemed an original, and such counterparts will together constitute a single Agreement.  Faxed, e-mailed, or electronic signatures will be deemed originals.

[SIGNATURE PAGES FOLLOW]
<u>THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.</u>


_____
CHRISTY LIN AKEO


_____
Date



[INSERT NOTARY TEMPLATE]

5

6

<u>THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.</u>

_____

PAUL K. AKEO


_____

Date



[INSERT NOTARY TEMPLATE]

THE PERSON SIGNING THIS AGREEMENT REPRESENTS AND WARRANTS AS FOLLOWS: (i) HE/SHE HAS READ THE AGREEMENT IN ITS ENTIRETY, (ii) FULLY UNDERSTANDS AND ACCEPTS ALL TERMS OF THE AGREEMENT, (iii) HAS CONSULTED WITH INDEPENDENT LEGAL COUNSEL REGARDING THE MEANING AND CONSEQUENCES OF THE AGREEMENT OR VOLUNTARILY WAIVED SUCH RIGHT, (iv) ACKNOWLEDGES THAT THIS AGREEMENT IS BINDING AND ENFORCEABLE.

PALACE ELITE RESORTS, S.A. DE C.V.

By:     _____
        [INSERT NAME OF SIGNATORY]
        Its: [INSERT TITLE OF SIGNATORY]


_____
Date

[INSERT NOTARY TEMPLATE]

8

# EXHIBIT 3

**TB**

Tom ›

Santa Ana Ca. Out of SNA John Wayne airport

Trying to call you

Please call me ASAP

Landing rights approved

I am convinced that the only way Paul and Christy can leave is if they sign the NDA under the terms that Palace had demanded.

It appears they have no choice but to sign or stay in prison. Thx for all your efforts.



**N345LC Flight Tracking and History 03-Apr-2025 (KSNA-CUN / MMUN)**

flightaware.com

Thu, Apr 3 at 2:33 PM

Court started

iMessage