**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23733-ALTMAN**

PAUL AKEO and CHRISTY AKEO,

      Plaintiffs,

v.

PR GLOBAL RESERVATIONS, LLC,
PALACE ELITE RESORTS S.A. de C.V., *a Mexican corporation,*
JOSE GIBRAN CHAPUR DAJER, CHDB HOLDINGS, S.A. de
C.V., CONTROLADORA IHC, S.A.P.I de C.V., and
OPERADORA PALACE RESORTS JA LTD.

      Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION**
**FOR LEAVE TO FILE UNDER SEAL**

On April 6, 2026, the Court granted Defendants' Motion for Leave to File Under Seal in full. [ECF No. 57]. The Court did so with the benefit of Defendants' motion, which expressly disclosed that Plaintiffs opposed it. [ECF No. 53 at 3]. Three weeks after the Court's ruling, Plaintiffs have filed an "opposition" to a motion the Court has already granted. [ECF No. 61].

Plaintiffs' filing is, in substance, a motion for reconsideration of the Court's sealing order. It is procedurally defective for that reason alone. Plaintiffs do not invoke the reconsideration standard, and do not attempt to satisfy it. They identify no change in controlling law, point to no new evidence, and allege no clear error in the Court's analysis. Instead, Plaintiffs attempt to avoid the standard by characterizing their filing as a request for a "further order" under language drawn from the sealing order itself. That language preserves the Court's prospective authority to revisit sealing if circumstances change; it does not authorize a losing party to relitigate the merits of an already-entered ruling under a different label.

1

Even if the Court reaches the merits, good cause supports continued sealing for the reasons set forth in Defendants' motion and developed further below. The exhibits at issue, which include two declarations submitted in a confidential ICC arbitration and the Emergency Arbitrator's order issued in that proceeding, are protected by the parties' Mutual Release and Non-Disparagement Agreement, by the strong federal policy favoring arbitral confidentiality, and by this Court's prior rulings, including its order at ECF No. 43 sealing arbitration briefs in this very case and its decision in *Bakhai v. BDO USA, P.C.*, No. 24-CV-23896, 2024 WL 5373876 (S.D. Fla. Dec. 3, 2024). Plaintiffs' attempt to override those interests through a public-officials theory rests on mischaracterization rather than the actual content of the exhibits, and on a private accommodation made in a different procedural posture nearly seven months ago that, by its own terms, was expressly non-waiving.

A final note about what this sealing dispute is and is not. Plaintiffs frame their unsealing request as a vindication of public interest in official conduct. It is not.  The rhetoric of the opposition ("hostage-like," "secret arbitration," "gag," "forced"), and its repeated invocation of public officials is at best is incidental to the specific documents at issue, which suggest a very different purpose. The parties bargained for confidentiality and a non-disparagement clause precisely to remove the dynamic in which arbitration materials might become leverage in a public dispute. The Court should not allow Plaintiffs' effort to re-trade on these essential elements of the parties' bargain.

The Court should deny Plaintiffs' request and confirm its order at ECF No. 57.

## I.      PLAINTIFFS' OPPOSITION IS A PROCEDURALLY DEFECTIVE MOTION FOR RECONSIDERATION

### A.      Plaintiffs Improperly Seek to Undo this Court's Ruling Without Meeting the Reconsideration Standard

The procedural sequence is dispositive. On March 30, 2026, Defendants filed the Motion to Seal. [ECF No. 53]. The motion included a Local Rule 7.1(a)(3) certification expressly stating that "Plaintiffs oppose the relief requested in this motion," and consented only "to the temporary filing of

the exhibits under seal pending the Court's resolution of this motion." *Id.* at 3. On April 6, 2026, the Court granted the Motion to Seal in full. [ECF No. 57].

That ruling was entered with awareness of Plaintiffs' opposition and constitutes a decision on the merits. Plaintiffs have not moved for reconsideration of that order but still ask the Court to undo it.  That is reconsideration at its core, regardless of how Plaintiffs caption their filing. A party cannot avoid the standard governing reconsideration motions simply by relabeling its filing as an "opposition" to a motion the Court already granted, or by seeking a loophole in the language of the order where none exists.

The standard for reconsideration is well-settled. A party seeking reconsideration of an order must demonstrate "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). It is "an extraordinary remedy to be employed sparingly." *Id.* at 1370.

Plaintiffs make no attempt to satisfy that standard. They identify no change in controlling law, no newly discovered evidence, and no clear error in the Court's analysis. Instead, they simply disagree with the Court's result and ask for a different one. That is not a proper basis for reconsideration. *See Britt v. IEC Corp.*, No. 20-CV-60814, 2022 WL 3370216, at *3 (S.D. Fla. Aug. 16, 2022) (Altman, J.) (denying motion for consideration where plaintiffs were "really just looking for a 'second bite at the apple'"); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp. 2d 1322, 1324 (S.D. Fla. 2009) ("A motion for reconsideration should not be used to reiterate arguments already made or to ask the Court to 'rethink what the Court ... already thought through.'") (quoting *Z.K. Marine, Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992)).

### B.      The "Further Order" Language Does Not Authorize Collateral Attack

Plaintiffs invoke the phrase "until further order from this Court" in ECF No. 57 as authority for their filing. [ECF No. 61 at 2]. Plaintiffs' reliance on that language is misplaced.

The phrase is preservatory language. It exists to preserve the Court's authority to revisit sealing if circumstances change, not to authorize the losing party to relitigate the merits without some intervening change in circumstances or law. If that boilerplate language alone could trigger collateral attack on the merits, free of the constraints that apply to motions for reconsideration, the reconsideration standard would mean nothing in any case where the language appears. Plaintiffs cite no authority suggesting it does.

Plaintiffs' procedural defect is reason enough to deny their request, and the Court should decline to revisit ECF No. 57.

## II.      ON THE MERITS, GOOD CAUSE SUPPORTS CONTINUED SEALING

Even if the Court reaches the merits, Plaintiffs' arguments fail. The need to seal the exhibits at issue derives from a confidential ICC arbitration governed by the parties' Mutual Release and Non-Disparagement Agreement, the strong federal policy favoring arbitral confidentiality, and this Court's prior rulings recognizing those interests in this very case.

### A.      The Court's Prior Rulings in This Case Establish the Framework

Two prior rulings of the Court control the analysis.

*First*, at ECF No. 48, the Court determined that the parties' arbitration agreement falls within the New York Convention as incorporated under the Federal Arbitration Act, and on that basis denied remand. That determination confirms the federal forum and the FAA framework under which arbitral confidentiality interests are properly considered.

*Second*, at ECF No. 43, the Court previously sealed arbitration briefs in this very case based on the parties' confidentiality agreement. Plaintiffs argue that ECF No. 43 "addressed a different set of

materials and was entered on a joint request," [ECF No. 61 at 6], but the analytical question, whether arbitral confidentiality plus a binding non-disclosure agreement constitutes good cause, is the same. The Court has now answered that question in the affirmative twice in this litigation.

*Bakhai* reinforces this conclusion. There, this Court acknowledged that arbitration proceedings are not presumptively confidential, but nonetheless sealed arbitration materials after balancing the public's interest in access against the parties' legitimate privacy interests. 2024 WL 5373876, at *1–2. Plaintiffs attempt to distinguish *Bakhai* on the ground that it involved a joint request to seal. [ECF No. 61 at 6]. That distinction misses the point. The Court's reasoning turned on the parties' agreement to treat the arbitration award as confidential and the resulting privacy interests that warranted protection. Here, the parties expressly agreed in their Mutual Release and Non-Disparagement Agreement (the "<u>NDA</u>") that the "contents" of any arbitration would remain confidential. [ECF No. 40-1]. That bargained-for expectation of confidentiality was an essential element of the parties' settlement and supports the Court's prior determination that good cause exists to maintain the materials under seal.

The Second Circuit's decisions in *In re IBM Arbitration Agreement Litigation*, 76 F.4th 74 (2d Cir. 2023), and *Stafford v. IBM*, 78 F.4th 62 (2d Cir. 2023), provide additional persuasive support. Those courts recognized the FAA's "strong policy in favor of enforcing arbitral confidentiality provisions," *IBM*, 76 F.4th at 78, and held that confidentiality is "a paradigmatic aspect of arbitration," *Stafford*, 78 F.4th at 71. While not binding, they reflect a coherent federal interpretive framework that complements this Court's existing approach.

### B. <u>Defendants Have Demonstrated Legitimate Privacy Interests in Each Exhibit And Resulting Harm Based On Public Disclosure</u>

All three exhibits at issue derive directly from the confidential ICC arbitration. Exhibits A and B are declarations of Mr. Chapur and Mr. Salgado submitted in support of Defendants' Application for ICC Emergency Measures and recounting the particulars and history of the parties' dispute that

led to the execution of the NDA. Exhibit D is the Emergency Arbitrator's order granting that relief. The parties' NDA expressly precludes disclosure of the "contents" of any arbitration requested thereunder. ECF No. 40-1. The filings in support of the Emergency Arbitration procedure invoked by Defendants and the Emergency Arbitrator's order are, by definition, contents of the ongoing arbitration.

Disclosure of these materials would therefore directly breach that contractual obligation, resulting in various particularized harms to the Defendants. For one, overturning this legitimate privacy interest would repudiate and essentially nullify the parties' well-documented time and efforts spent negotiating a confidential resolution of their prior disputes in Mexico. Furthermore, the Parties also bargained in the NDA for a non-disparagement clause (ECF 40-1, at 5-6), which Plaintiffs have consistently violated, including through the exhibits they are asking not be sealed. The confidentiality and non-disparagement clauses were essential elements to the resolution of the parties' prior (and now settled) disputes, especially when one considers the very active public disparagement campaign on which the Plaintiffs previously embarked. Unsealing the documents prematurely thus exacerbates the already existing reputational harm to Defendants by Plaintiffs, as they continue to publicly echo their inflammatory rhetoric against Defendants.

Crucially, disclosure at this stage would further expose the particulars of the parties' dispute and the arbitrator's reasoning and findings publicly, **before this Court has even decided whether the dispute belongs in arbitration**. Unsealing the arbitration filings would thus make public documents that would be otherwise be permanently confidential should the Court grant the motion to compel and the arbitration moves forward. Defendants initiated the arbitration in reliance on the parties' bargained-for confidentiality and agreement to arbitrate any disputes, and that reliance interest is at its strongest with respect to each of the exhibits, including Exhibit D. The toothpaste cannot be put back in the tube should sealing not be granted. Sealing should remain in place at least until the

Court rules on the pending motion to compel arbitration and beyond that should the Court agree that confidential arbitration must ensue.

Plaintiffs' reliance on *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) is misplaced. ECF No. 61 at 6. As the Eleventh Circuit emphasized, that case involved "unusual circumstances" where the case had already proceeded to a public trial, "the transcript of that trial was part of the public record," and the case had been submitted, at least in part, to a jury. *Id.* at 1571. In that posture, the court's order addressed sealing materials which had already been exposed through an open judicial proceeding. This case presents none of those circumstances. Defendants do not seek to seal materials aired at a public trial or documents already embedded in the public record. The interest at stake here is the parties' bargained-for confidentiality with respect to dispute and set of circumstances that the parties settled and agreed would only be subject to confidential arbitration proceedings.

That distinction is even more pronounced in this context, where Defendants did not choose this public forum and instead initiated confidential arbitration proceedings to determine the issues in dispute. It is Plaintiffs who have attempted to, at all turns, publicly air their dispute with Defendants, including by filing this action, in direct contravention of the parties' agreement. Defendants' pending motion to compel arbitration seeks only to enforce that agreement and place this dispute in the agreed, confidential forum.

This stands in sharp contrast to cases where a party affirmatively invokes the judicial process to challenge or confirm an arbitration award. In *Jackson v. Sleek Audio, LLC*, the court declined to seal an arbitration award where the plaintiff sought to set it aside in federal court, emphasizing the public's interest in evaluating the correctness of a judicial decision disturbing the award. 2013 WL 12384284, at *2. That rationale does not apply here. Defendants are not seeking judicial review of an arbitration award or any merits determination; they seek only to enforce the parties' agreement to arbitrate their

7

disputes confidentially and to maintain the confidentiality that accompanies it.   Under these circumstances, the parties' bargained-for privacy interest outweighs the public interest in access.

### C.   No Less Restrictive Alternative Adequately Protects the Confidentiality Interests at Stake

Plaintiffs gesture toward "targeted redaction" as a less restrictive alternative. [ECF No. 61 at 7]. But targeted redaction is not workable here.

The exhibits are not declarations and orders that happen to contain a few discrete confidential references; they are documents drafted *for* the confidential arbitration, *about* the matters arbitrated and which the parties agreed to keep confidential, and grounded in the arbitral record. The parties did not contract for partial confidentiality, with redacted public versions of arbitration materials available on the federal docket. They contracted that the contents of any arbitration would be confidential. [ECF No. 40-1].  They contracted to keep Plaintiffs' damaging, inflammatory (and false) rhetoric out of the public eye.

Targeted redaction is therefore not a less restrictive alternative to sealing; it is a different, inadequate, and not bargained-for, form of partial disclosure. Sealing gives effect to what the parties actually agreed.

### III.   PLAINTIFFS' "PUBLIC OFFICIALS" THEORY DOES NOT OVERRIDE THE GOOD CAUSE FOR SEALING

Plaintiffs' principal argument is that the exhibits implicate the conduct of public officials, specifically Special Presidential Envoy Adam Boehler and Representative Tom Barrett, such that the public-concerns factor from *Romero v. Drummond Co., Inc.*, 480 F.3d 1234 (11th Cir. 2007) overrides the parties' confidentiality interests. The argument fails for three independent reasons.

### A.   The *Romero* Public-Concerns Factor Is Not a Categorical Override

The *Romero* public-concerns factor is one of several non-exclusive considerations under a good-cause balancing test. *Romero*, 480 F.3d at 1246. The factor's weight depends on the connection

between the documents and the public-official conduct at issue. It is one consideration among several, not a categorical override.

*Romero* explains that the factor reflects "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government." *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The factor thus reaches its full force where the documents at issue concern the inner workings of public agencies or governmental operations.  None of those are at issue here. Rather, this *Romero* factor is inapplicable where, as here, the connection to public officials is not inherent to the existence of the documents at issue or to the private dispute. The Chapur and Salgado declarations are not records of Special Envoy Boehler's or Representative Barrett's conduct in any official capacity. That those declarations describe a chain of events that included incidental contact with public officials does not transform them into records of public-official conduct.

Plaintiffs' broader theory, that the involvement of any public official in any aspect of an underlying matter strips the parties of contractual confidentiality protections in subsequent litigation, has no support in *Romero* or in any case Plaintiffs cite. Private parties routinely interact with public officials in matters that later give rise to disputes without raising public access interests.

Plaintiffs' own framing illustrates the point. They argue that the exhibits "directly relate to and reference" interactions with Congressman Barrett and Special Presidential Envoy Boehler. [ECF No. 61 at 5]. But reference to public officials in the course of describing private commercial events is not the same as government records of public-official conduct. A private individual's declaration about a private business dispute does not become a public record because it mentions a public official, any more than a private contract becomes a public record because it was negotiated in the presence of a member of Congress.  Companies negotiate with regulators; individuals communicate with members of Congress; parties to international transactions deal with government envoys. If those interactions

9

stripped private parties of the right to contract for confidentiality, or to seal confidential materials when they later appear in litigation, the FAA's recognition of arbitral confidentiality would be a dead letter in any case touching the public sphere. That is not the law.

Moreover, Plaintiffs' position also cannot be squared with the current record. They have repeatedly placed these same alleged interactions with Congressman Barrett and Special Presidential Envoy Boehler in the public filings in this case. *See*, *e.g.*, [ECF Nos. 11, 31, 61, 64]. Unsealing these confidential arbitration materials would not meaningfully advance public understanding; at most, it would duplicate what is already in the record while stripping the remaining materials of the confidentiality the parties agreed to preserve and allowing Plaintiffs to violate the confidentiality and non-disparagement provisions of their settlement disputes.

### B.    Plaintiffs Mischaracterize the Exhibits

Plaintiffs' brief is dominated by *characterizations* of the exhibits rather than their actual content. Plaintiffs describe the Akeos' underlying experience as a "hostage-like situation," [ECF No. 61 at 6], allege "ex parte communications between the CEO of Palace Resorts and the President of the Quintana Roo judicial system," *id.* at 2, and assert that the arbitration agreement was "forced" upon the Akeos as a condition of release, *id.* at 5. Those characterizations are a disguised attempt to breach the non-disparagement provisions to which Plaintiffs agreed in the NDA and are rhetoric, not facts established by the exhibits. They do not change the legal status or confidential origins of the documents at issue, and they do not transform private commercial declarations into matters of "profound public importance."

Plaintiffs also invoke *United States v. Noriega*, 752 F. Supp. 1037 (S.D. Fla. 1990), for the proposition that information involving foreign officials is of "profound public importance." [ECF No. 61 at 2]. Their invocation of *Noriega* is misplaced. There, the court considered whether to release transcripts of audiotapes of an incarcerated criminal defendant's conversations, prepared by court-

employed translators at public expense, on which the court itself had relied in adjudicating a prior restraint motion in a federal criminal prosecution of a former head of state. *Id.* at 1038–39, 1042.

The court applied the presumption of public access that attaches to judicial records under *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983), and balanced that presumption against the competing interest advanced by the party resisting disclosure. 752 F. Supp. at 1040. The "profound public importance" language Plaintiffs quote was the court's description of why the balance tipped toward access on those particular facts. It was not a categorical standard.

Three features of *Noriega* make it a poor fit for Plaintiffs' argument.

*First*, the records at issue were created by the court itself, by court-employed staff, at public expense. *Id.* at 1039, 1040. The exhibits here are not court-created records of judicial proceedings; they are private parties' submissions that were initially created for, or within, a confidential arbitration proceeding, and later used by Plaintiffs to support their opposition to Defendants' motion to compel.

*Second*, *Noriega* involved no contractual confidentiality bargain. The party resisting disclosure (CNN) was a non-party media organization asserting a proprietary interest in tape content it had not created. *Id.* at 1040–41. Here, the parties to the litigation specifically contracted that the contents of any arbitration would be confidential. ECF No. 40-1.

*Third*, *Noriega* arose in the federal criminal prosecution of a former head of state of a foreign government, which the court described as a case "which may very well pose a strong test to the fairness of this country's judicial system." *Id.* at 1043. That extraordinary context shaped the court's view of the public-access calculus. This case is a private commercial dispute. The balance *Noriega* struck on its facts cannot be applied to a case with such materially different facts and a contract that requires confidentiality.

**IV.     THE SEPTEMBER 2025 EMAIL DOES NOT WAIVE DEFENDANTS'
SEALING RIGHTS**

Plaintiffs lean heavily on a September 19, 2025 email in which Defendants' counsel proposed a procedural accommodation. [ECF No. 61-1, Ex. 1]. Plaintiffs frame the email as if Defendants "previously acknowledg[ed] that two of the documents should not be filed under seal." ECF No. 61 at 3. The email does not bear that characterization.

**A.     The Email Contains an Express Non-Waiver Reservation**

Plaintiffs' brief omits the operative reservation: the email expressly stated that the proposed accommodation "**does not constitute a waiver of any of our clients' rights to continue to insist on the complete confidentiality of the arbitration proceedings, nor [is it] a waiver of any aspect of the claims it has filed, or remedies it has sought, in that proceeding**." [ECF No. 61-1, Ex. 1] (email of David Orta dated September 19, 2025). That language is dispositive. Defendants expressly refused to waive their confidentiality rights in the very communication Plaintiffs claim is a waiver.

**B.     The Accommodation Was a Conditional Offer, Not a Concession or
Admission, Which Plaintiffs Accepted But Did Not Act Upon**

The September 19 email from Defendants is plain and is not a concession as Plaintiffs wrongly claim. It was a proposed framework, offered in exchange for Plaintiffs' agreement to a broader interim sealing regime pending resolution of the motion to compel arbitration. The email proposed "that any arbitration pleadings you intend to file be sealed until disposition of the motion to compel arbitration, assuming the motion to remand is denied," with the materials to be unsealed if Plaintiffs ultimately prevailed on their challenge to the NDA, and to remain sealed if the Court found the NDA enforceable. ECF No. 61-1, Ex. 1.  Plaintiffs accepted this offer by Defendants.

Defendants' willingness to allow the Chapur and Salgado declarations to be filed on the public docket as part of that framework was offered only "[i]n the interest of facilitating the Court's consideration of the pending motions and avoiding unnecessary motion practice regarding sealing."

*Id.* Regardless, Plaintiffs did not take Defendants up on that part of the offer, as they ultimately did not reference the declarations in their reply, or file the declarations on the public docket or under seal. Furthermore, nowhere in the framework proposal was there an offer to file the Emergency Arbitrator's order on the public docket. The email thus reflects only a proposed bargain which while accepted by Plaintiffs was not executed on it by them.  It was not, under any reasonable reading, a free-standing concession or admission as to the public nature of the documents at issue.

## V.      CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request to unseal Exhibits A, B, and D and confirm its order at ECF No. 57.

DATE: May 4, 2026                              Respectfully submitted,

**QUINN EMANUEL URQUHART &**         **MARK FERRER & HAYDEN**
**SULLIVAN LLP**                                   80 S.W. 8th Street, Suite 1999
2601 S. Bayshore Drive                         Miami, Florida 33130
Miami, Florida 33133                           Telephone: (305) 374-0440
305-402-4880

By: *s/ Jose M. Ferrer*
By: */s/ David M. Orta*                          Jose M. Ferrer, Esq.
David M. Orta                                    Florida Bar No. 173746
FL Bar Number 35750                           Desiree Fernandez, Esq.
davidorta@quinnemanuel.com                Florida Bar No. 119518
                                                        jose@mfh.law
*Co-counsel for Defendants*                     desiree@mfh.law
                                                        eservice@mfh.law

                                                        *Co-counsel for Defendants*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served via the

CM/ECF portal on this 4th day of May 2026 upon all individuals listed on the service list below.

Peter Kaufman
pkaufman@panish.law
Jesse Creed (pro hac vice pending)
jcreed@panish.law
Hunter Norton (pro hac vice pending)
hnorton@panish.law
PANISH I SHEA I RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700

Jennifer D. Bennett
GUPTA WESSLER LLP
235 Mongomery Street, Suite 629
San Francisco, CA 94101
jennifer@guptawessler.com

*/s/ Jose M. Ferrer*
Jose M. Ferrer